**HANRATTY LAW GROUP**
Kevin M. Hanratty, Esq.
Nevada Bar No. 007734
1815 Village Center Circle, Suite 140
Las Vegas, Nevada 89134
Telephone:  (702) 821-1379
Facsimile:  (702) 870-1846
Email: kevinh@hanrattylawgroup.com

**JEFFER MANGELS BUTLER & MITCHELL LLP**
Jon A. Weininger (*Pro Hac Vice Petition Pending*)
3 Park Plaza, Suite 1100
Irvine, California 92614-2592
Telephone: (949) 623-7200
Facsimile: (949) 623-7202
Email: jweininger@jmbm.com

Attorneys for Defendants ALL NET LAND
DEVELOPMENT, LLC and DAVID G.
LOWDEN

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| TACSIS APC, a California corporation; and KENT LIMSON, and individual,<br><br>Plaintiffs,<br><br>v.<br><br>JACKIE ROBINSON, an individual; ALL NET LAND DEVELOPMENT, LLC, a Nevada Limited Liability Company; ALL NET, LLC, a Nevada Limited Liability Company; DRIBBLE DUNK, LLC, a Nevada Limited Liability Company; AGS ASSURETY, LLC, a Nevada Limited Liability Company; TIMOTHY J. ARELLANO, an individual; DAVID LOWDEN, an individual; MESSNER REEVES LLP, a Colorado Limited Liability Partnership; TORBEN WELCH, an individual; LORING JACOBS, an individual, and DOES 1 THROUGH 100 INCLUSIVE,<br><br>Defendants. | Case No. 2:24-cv-02284-RFB-EJY<br><br>**DEFENDANTS' ALL NET LAND DEVELOPMENT, LLC'S AND DAVID LOWDEN'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT, OR ALTERNATIVELY FOR *COLORADO RIVER* STAY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**[HEARING REQUESTED]**<br><br>[*Request for Judicial Notice filed concurrently*]<br><br>Date:  TBD<br>Time: TBD<br>Place: TBD |

TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

COMES NOW Defendants ALL NET LAND DEVELOPMENT, LLC and DAVID G. LOWDEN by and through their Counsel, Kevin M. Hanratty, Esq. of HANRATTY LAW GROUP and JON A. WEININGER. Esq. (*Pro Hac Vice Petition Pending*) of JEFFER MANGELS BUTLER & MITCHELL LLP, and submits their *Motion to Dismiss Plaintiffs' Complaint, or Alternatively for Colorado River Stay; Memorandum of Points and Authorities in Support*.

The Motion is made on the following grounds:

1.      Plaintiffs' sole Claim for Relief in the RICO Complaint against the ANLD Defendants – for purported violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO") – is barred by the four-year statute of limitations established by *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 156 (1987).  The RICO Complaint reveals on its face that Plaintiffs' RICO claim is time-barred because Plaintiffs did not file the RICO Complaint until December 13, 2024, more than four years after Plaintiffs had actual and/or constructive knowledge of the facts and circumstances giving rise to their purported RICO injury.  Plaintiffs' knowledge is evidenced by allegations in the RICO Complaint, allegations in Plaintiffs' LASC Action filed on November 2, 2020, and by allegations in an even earlier action filed by Plaintiffs on February 19, 2020 in the United States District Court, Central District of California, Case No. 2:20-cv-01626-GW-AS ("California Federal Action"), which was dismissed for lack of subject matter jurisdiction.  Concurrently with the Motion, the ANLD Defendants are filing a Request for Judicial Notice pursuant to which they request that the Court take judicial notice of these earlier filed pleadings in the LASC Action and California Federal Action, which the Court may do without converting this Motion into a motion for summary judgment; and

2.      In the alternative, if the Court does not dismiss the RICO Complaint on the grounds it is time-barred, the ANLD Defendants request that the Court issue an Order dismissing or staying the RICO Complaint until Plaintiffs' pending LASC Action is concluded.  Under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), the Court has discretion to dismiss or stay proceedings before it in deference to an earlier filed, pending state court proceeding that is substantially similar to the federal action, as is the case here.

This Motion is based on this Notice of Motion and Motion, the appended Memorandum of

1  Points and Authorities in support, the concurrently filed Request for Judicial Notice and exhibits

2  thereto, all pleadings and records on file herein, and any further oral or documentary information or

3  evidence that may be submitted prior to or at the hearing on the motion.

4        DATED this 17th day of January, 2025.

5                              **HANRATTY LAW GROUP**

6

7                        By:  **_/s/ Kevin M. Hanratty, Esq._**
                              Kevin M. Hanratty, Esq.

8                              Nevada Bar No. 007734
                              1815 Village Center Circle, Suite 140

9                              Las Vegas, Nevada 89134
                              Attorneys for Defendants *All Net Land*

10                             *Development, LLC and David G.*
                              *Lowden*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ................................................................................7

II.    FACTS AND PROCEDURAL HISTORY ...........................................8

    A.    The RICO Complaint Alleges a Purported RICO Injury, in the Nature of Unpaid Loans, that Occurred in 2019 ...............................8

    B.    Plaintiffs' Two Prior Lawsuits to Collect on the Loans, One of Which Was Dismissed and the Other Remains Pending ...............10

         1.    *The First Federal Court Lawsuit Filed on February 19, 2020* ...................10

         2.    *The LASC Action Filed on November 2, 2020.* ...........11

III.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS' RICO CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS .......................................12

    A.    Fed. R. Civ. P. Rule 12(b) Standards and Judicial Notice .........12

    B.    The Statute of Limitations on Plaintiffs' RICO Claim Is Four Years....................13

    C.    Plaintiffs' RICO Claim Accrued More Than Four Years Before Plaintiffs Filed Their RICO Complaint....................14

         1.    *The California Federal Complaint Established Plaintiffs' Knowledge of Their Alleged RICO Injury.* ...................14

         2.    *By No Later than the Filing of the LASC Action, Plaintiffs Had Knowledge of Their Alleged RICO Injury.* ...................16

IV.    IN THE ALTERNATIVE, THE COURT SHOULD DISMISS OR STAY THIS ACTION UNDER THE COLORADO RIVER DOCTRINE....................18

    A.    First and Fourth Factors: First Court to Assume Jurisdiction, and the Order of Obtaining Jurisdiction....................19

    B.    Second Factor: Inconvenience of Federal Forum ....................19

    C.    Third Factor: Avoidance of Piecemeal Litigation ....................19

    D.    Fifth, Sixth, and Eighth Factors: State Law Provides the Rule of Decision; State Court is Adequate to Protect Rights; and State Court Will Likely Resolve All Issues....................20

    E.    Seventh Factor: Avoidance of Forum Shopping ....................21

V.    CONCLUSION ...................................................................................21

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Agency Holding Corp. v. Malley-Duff & Associates, Inc.*,
    483 U.S. 143 (1987) ................................................................................................ 14, 18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................... 13

*Colorado River Water Conservation District v. United States*,
    424 U.S. 800 (1976) ................................................................................................*passim*

*Gonzalez v. Planned Parenthood of Los Angeles*,
    759 F.3d 1112 (9th Cir. 2014) ...................................................................................... 14

*Grimmett v. Brown*,
    75 F.3d 506 (9th Cir. 1996).............................................................................. 14, 15, 16, 17

*Huynh v. Chase Manhattan Bank*,
    465 F.3d 992 (9th Cir. 2006) ........................................................................................ 14

*Intri-Plex Technologies, Inc. v. Crest Group, Inc.*,
    499 F.3d 1049 (9th Cir. 2007) ...................................................................................... 14

*Nakash v. Marciano*,
    882 F.2d 1411 (9th Cir. 1989)................................................................................ 20, 22, 23

*Pincay v. Andrews*,
    238 F.3d 1106 (9th Cir. 2001) ................................................................................ 14, 15, 17

*R.R. Street Co. v. Transp. Ins. Co.*,
    656 F.3d 966 (9th Cir. 2011) ........................................................................................ 20

*Rotella v. Wood*,
    528 U.S. 549 (2000) ................................................................................................ 14, 15

*Supermail Cargo, Inc. v. U.S.*,
    68 F.3d 1204 (9th Cir. 1995) ........................................................................................ 14

*Tatung Co. Ltd. v. Shu Tze Hsu*,
    2178 F.Supp.3d 1130 (C.D. Cal. 2016) ........................................................................ 15

**Statutes**

California Business and Professions Code, § 17200 .................................................................... 11

RICO ................................................................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 11(b)(3) ........................................................................................................ 17

Fed. R. Civ. P. Rule 12(b) ................................................................................................... 13

Fed. R. Civ. P. Rule 12(b)(6) .......................................................................................... 13, 14

Fed. R. Evid. 201 ................................................................................................................ 14

### <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    <u>INTRODUCTION</u>

This action, filed on ***December 10, 2024***, is a disguised collection action dressed-up as a RICO claim that was brought by Plaintiffs in their ongoing attempt to recover on unpaid commercial loans made in 2018 and 2019 to Defendant All Net, LLC ("All Net").  This is the third lawsuit that Plaintiffs have filed to collect on the loans.  Plaintiffs filed the first lawsuit on ***February 19, 2020*** in the United States District Court, Central District of California ("California Federal Action"), which was later dismissed for a lack of subject matter jurisdiction.  On ***November 2, 2020***, Plaintiffs filed their second lawsuit in the Los Angeles Superior Court ("LASC Action"), an action expressly referenced in Plaintiffs' RICO Complaint.  The LASC Action is pending and scheduled for trial on October 20, 2025.  In all three of Plaintiffs' lawsuits, Plaintiffs allege substantially the same allegations and underlying purported injury caused by certain of the Defendants' alleged misconduct, namely their failure to repay, with interest, loans issued to them by Plaintiffs.

The statute of limitations on a civil RICO claim is four years.  The statute accrues when a plaintiff has actual or constructive knowledge of the injury underlying its RICO claim.  Here, Plaintiffs had the requisite actual and/or constructive knowledge to trigger accrual of the four-year statute of limitations applicable to their RICO claim when they filed the California Federal Action on February 19, 2020, or at the very latest by November 2, 2020, when they filed the LASC Action.  Indeed, in the LASC Action, Plaintiffs alleged in their original Complaint ("LASC Complaint") that they had discovered the fraud that caused their alleged RICO injury (i.e., nonpayment of the loans), which prompted Plaintiffs to file the LASC Action.  As a matter of law, Plaintiffs' prior pleadings and allegations therein establish that Plaintiffs had the requisite knowledge to trigger accrual of their RICO claim no later than November 2, 2020, if not earlier.  As a result, the four-year statute of limitations on Plaintiffs' RICO claim expired before Plaintiffs filed their RICO Complaint on December 10, 2024.  For these reasons, and as further explained below, the Court should grant this Motion and dismiss the RICO Complaint as time-barred under the RICO statute of limitations.

In the alternative, the ANLD Defendants request that the Court dismiss or stay the RICO Complaint under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976)

("*Colorado River*").  Under *Colorado River*, the Court has and should exercise its discretion to dismiss or stay the RICO Complaint in deference to the earlier-filed, still-pending LASC Action that involves allegations substantially similar to those alleged by Plaintiffs in their RICO Complaint.

## II.    FACTS AND PROCEDURAL HISTORY

### A.    The RICO Complaint Alleges a Purported RICO Injury, in the Nature of Unpaid Loans, that Occurred in 2019

On December 10, 2024, Plaintiffs filed their RICO Complaint.  [ECF No. 1.] The thrust of Plaintiffs' RICO claim is not stated until Paragraph 33, where Plaintiffs first allege that they "provided a series of seven (7) loans [collectively, the "Loans"] to the ALL NET PROJECT."  [ECF No. 1, *Complaint*, ¶ 33.]  Plaintiffs define the "ALL NET PROJECT" as "an alleged lucrative project which was to be built on the Las Vegas strip called the All Net Resort and Arena…."  [ECF No. 1, *Complaint*, ¶ 20.]  In Paragraph 54 of the Complaint, Plaintiffs identify Defendant All Net, LLC ("All Net") as the alleged borrower to whom they wired the funds that were the subject of the seven loans.  [ECF No. 1, *Complaint*, ¶ 54.]

Plaintiffs allege that the Loans to All Net "were embodied in seven similar written contract agreements … totaled $2,144,200 and were made over the course of six months in late 2018 through early 2019."  [ECF No. 1, *Complaint*, ¶ 33.]  Plaintiffs allege that the seven loans were funded between November 13, 2018 to July 12, 2019 in a table that summarizes each loan, the date of funding, the amount of the loan, the payee (All Net), and the depository bank.  [ECF No. 1, *Complaint*, ¶ 54.]  Plaintiffs allege that they "received performance bonds as security for the loans, which PLAINTIFFS would later learn through discovery were fraudulent forgeries."  [ECF No. 1, *Complaint*, ¶ 31.]  Plaintiffs allege that each of the seven loans to All Net constitutes an act of "wire fraud," and that the seven loans constitute the entire alleged pattern of racketeering upon which their RICO claim is based, the last act of which occurred on July 12, 2019.  [ECF No. 1, *Complaint*, ¶ 54.]

Plaintiffs do not allege that the ANLD Defendants borrowed any money from Plaintiffs or that Plaintiffs wired any money to the ANLD Defendants.  Instead, Plaintiffs allege that Defendant Jackie Robinson ("Robinson"), was "[a]t the center of this fraudulent scheme … [in which he] lured

individuals into loaning money to his entity for the project with the promise of high interest, quick repayment and foolproof lending." [ECF No. 1, *Complaint*, ¶ 22.]  Plaintiffs allege that Robinson's scheme involved "no less than $800,000,000 in 'short term' loans which were never paid as promised." [ECF No. 1, *Complaint*, ¶ 23.]  Of the alleged $800 million, only about $2.1 million was provided by Plaintiffs.  [ECF No. 1, *Complaint*, ¶ 33.]

According to Plaintiffs, Robinson's "scheme ran like this:  a. The funds were initially loaned to [ALL NET], and were to be personally guaranteed by ROBINSON, individually and concurrently backed by 'performance bonds' issued by AGS [Defendant AGS Assurety, LLC] and by ARELLANO [Defendant Timothy J. Arellano] …."  [ECF No. 1, *Complaint*, ¶ 22a.]  Next, "[i]mmediately after receipt of the funds in [All Net's] account, most, if not all, the funds were transferred into DD's [Defendant Dribble Dunk, LLC] account, an account controlled by ROBINSON." [ECF No. 1, *Complaint*, ¶ 22b.]  "ROBINSON would then pay out portions of the funds to ARELLANO …; pay out large sums of money to ANLD … ; pay funds to WELCH [Defendant Torben Welch] for his services, pay out monies to ROBINSON and ROBINSON's spouse; and pay out monies to ROBINSON's various friends and family …." [ECF No. 1, *Complaint*, ¶ 22c.]

The only pre-loan allegations involving Lowden are in Paragraph 29 of the RICO Complaint, where Plaintiffs allege a "three-way telephone call" with Limson, Lowden, and an unidentified third party, in which Lowden allegedly made statements that "[gave] the appearance to LIMSON that the LOWDENS were, in fact, a party of the entity structure."  [ECF No. 1, *Complaint*, ¶ 29.]

According to Plaintiffs, "… as a further inducement to obtain additional funds from PLAINTIFFS, ROBINSON would make small and inconsistent payments towards the existing LOANS and even went so far as to enter into extension agreements and a Memorandum of Understanding as a showing of good faith that ROBINSON and [ALL NET] intended to pay the balance due under the LOANS with full interest although neither ROBINSON nor any of the DEFENDANTS ever intended to repay the LOANS." [ECF No. 1, *Complaint*, ¶ 32.]

Plaintiffs allege that "[f]ollowing DEFENDANTS' breach of the LOANS and surety agreements, and failed agreement to pay and further stall the inevitable, PLAINTIFFS initiated their

lawsuit in the Los Angeles County Superior Court, case number 20STCV41938….”  [ECF No. 1, *Complaint*, ¶ 34.]  The LASC Action[1], filed by Plaintiffs on November 2, 2020, is addressed below.

Based on the foregoing principal allegations, Plaintiffs seek by the RICO Complaint to recover damages against Defendants in amount of approximately $2.1 million that is alleged to be due on the LOANS, which Plaintiffs seek to treble under the RICO statute.  [ECF No. 1, *Complaint*, p. 16:15-16.]

**B.**    **Plaintiffs' Two Prior Lawsuits to Collect on the Loans, One of Which Was Dismissed and the Other Remains Pending**

**1.**    ***The First Federal Court Lawsuit Filed on February 19, 2020***

On February 19, 2020, more than four years before Plaintiffs filed their RICO Complaint, Plaintiffs filed their Complaint in the California Federal Action ("California Federal Complaint") against Defendants Robinson, All Net, AGS, and Arellano (the "Loan Defendants") only, alleging claims for, among other things, breach of loan agreements, breach of the Memorandum of Understanding ("MOU"), intentional and negligent misrepresentation, and violation of California Business and Professions Code, § 17200 *et sq.* ("17200 Claim").[2]  [*RJN*, Ex. 1.]  Plaintiffs attached copies of the loan agreements, default notices that they sent on September 16, 2019 to Robinson, All Net, AGS, and Arellano, and the MOU, as Exhibits A, C, and E, respectively, to the California Federal Complaint.  [*RJN*, Ex. 1 (Exs. A, C, and E).]  None of these exhibits were attached to the RICO Complaint.

Like the RICO Complaint, Plaintiffs' claims in the California Federal Complaint were based on the same seven loans to All Net.  [*RJN*, Ex. 2, ¶¶ 17, 18.]  And like the RICO Complaint, Plaintiffs alleged that the seven loans were secured by bonds issued by AGS and Arellano, that All Net failed to repay the loans, that Plaintiffs and Loan Defendants executed the MOU under which the Loan Defendants agreed to repay the loans with interest, and that the Loan Defendants failed to repay the loans.  [*Id.*, ¶¶ 19, 20, 25, 26.]  Plaintiffs also alleged a default in the bonds issued by AGS and

---

[1] *See* ANLD Defendants' Request for Judicial Notice ("*RJN*"), Ex. 2.

[2] Besides Plaintiffs, a trust and several other individuals were named as plaintiffs in the California Federal Action, none of whom are parties to the RICO Complaint.

Arellano to secure the loans.  [*Id.*, ¶¶ 35, 36.]

In support of their intentional and negligent misrepresentation claims, Plaintiffs alleged that, "… Defendants misrepresented a pending investment that Defendant All Net anticipated receiving in order to induce Plaintiff into the [MOU] … [and] that Defendants misrepresented the liquidity of Defendant AGS in order to induce Plaintiff into entering the [MOU]."  [*RJN*, Ex. 1, ¶¶ 58, 67.]  In support of the 17200 Claim, Plaintiffs alleged that "Defendants unlawfully induced Plaintiff to enter into the [MOU] for the sole benefit of Defendants," that "Defendants intentionally misrepresented current and anticipated financial status for their sole benefit," and that "Defendants intentionally induced Plaintiff to enter into the [MOU] with false representations and with no intention of abiding by the terms of the [MOU]."  [*RJN*, Ex. 1, ¶¶ 76, 77, and 79.]

Based on these allegations, Plaintiffs sought to recover damages against the named Defendants in the nature of repayment on the loans.  [*RJN*, Ex. 1, pgs. 13-15.]

On June 24, 2020, the Central District of California dismissed the California Federal Action for lack of subject matter jurisdiction.  [*RJN*, Ex. 2.]

### 2.    *The LASC Action Filed on November 2, 2020.*

On November 2, 2020, Plaintiffs filed the LASC Action.  [*RJN*, Ex. 3.]  Like the California Federal Complaint, Plaintiffs' original Complaint in the LASC Action ("LASC Complaint") alleged claims against the Loan Defendants only, for breach of the loans, breach of the MOU, and fraud, among other things.  [*Id.*]  Plaintiffs' claims in the LASC Complaint were based on the same allegations as their claims in the California Federal Complaint and RICO Complaint, namely default in payment of the loans to All Net, breach of the MOU, and alleged fraud by Defendants to induce Plaintiffs into making the loans.  [*Id.*, ¶¶ 10-23.]

In particular, in the LASC Complaint, Plaintiffs alleged that, "[i]n order to induce [Plaintiffs] to make the loans … ROBINSON, ALL NET, ARELLANO and AGS all represented to [Plaintiffs] that ROBINSON and ALL NET were the owners of a project to build an NBA stadium in Las Vegas, Nevada and that over 1 billion dollars in funding had been secured for the project by ROBINSON and ALL NET."  [*RJN*, Ex. 3, ¶ 58.]  Plaintiffs alleged that it was represented to them that the loans "were only short-term funding needed to 'keep the project going' until these funds were available

and that as soon as the funds (which had already been secured) were available, the loans … would be immediately paid back." [*Id.*] Also, "to induce [Plaintiffs] into making the loans … performance and repayment of each loan was secured by a performance bond issued by ARELLANO, as an individual surety, together with AGS." [*Id.*] Plaintiffs allege that all of these allegations were false, and that as a result, Plaintiffs were damaged in the amounts of the loans that they made to All Net that were not repaid. [*Id.*, ¶¶ 62-66; 72-73.] Based on these allegations, Plaintiffs sought to recover damages against the named Loan Defendants in the nature of repayment on the loans. [*Id.*, pgs. 16-20.]

On May 6, 2022, Plaintiffs filed a First Amended Complaint ("LASC FAC") in the LASC Action. [*RJN*, Ex. 4.] In the LASC FAC, Plaintiffs for the first time named ANLD as a defendant based on allegations that ROBINSON was the ostensible agent of ANLD and/or that ANLD was Robinson's alter ego. [*Id.*, ¶¶ 13, 14, 30.] In all other material respects, the FAC was virtually identical to Plaintiffs' LASC Complaint. Thereafter, Plaintiffs sought and were twice granted to leave to amend in the LASC Action. On October 31, 2024, Plaintiffs filed their now operative Third Amended Complaint, which also is based on the same principal allegations that have permeated all of Plaintiffs' prior pleadings since they filed their California Federal Complaint on February 19, 2020. [*RJN*, Ex. 5.] Trial in the LASC Action is scheduled to commence on October 20, 2025. [*RJN*, Ex. 6.]

## III.  THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS' RICO CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS

### A.  Fed. R. Civ. P. Rule 12(b) Standards and Judicial Notice

Fed. R. Civ. P. Rule 12(b)(6) allows the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting, *Bell Atlantic Corp. v. Twombly*, 550 US 544, 570 (2007)). While the Court must accept all factual allegations in the complaint as true, "conclusory statements" should not be credited. *See Ashcroft*, 556 U.S. at 678. The Court also "need not … accept as true allegations that contradict matters properly subject to

judicial notice or by exhibit." *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014) (quoting, *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see also Intri-Plex Technologies, Inc. v. Crest Group, Inc.*, 499 F.3d 1049, 1052 (9th Cir. 2007) ("'[a] court may take judicial notice of "matters of public record" without converting a motion to dismiss into a motion for summary judgment,' as long as the facts noticed are not 'subject to reasonable dispute.'") (quoting, *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)); Fed. R. Evid. 201.

A claim may be dismissed under Fed. R. Civ. P. Rule 12(b)(6) on the ground it is barred by the applicable statute of limitations when "the running of the statute is apparent on the face of the complaint." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006). "[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1206 (9th Cir. 1995).

### B.    The Statute of Limitations on Plaintiffs' RICO Claim Is Four Years

The statute of limitations for a civil RICO claim is four years. *See Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 156 (1987); *Rotella v. Wood*, 528 U.S. 549, 552 (2000). In the Ninth Circuit, the accrual date for civil RICO claims is determined by the "injury discovery" rule. *See Pincay v. Andrews*, 238 F.3d 1106, 1109 (9th Cir. 2001). "Under this rule, 'the civil RICO limitations period begins to run when a plaintiff knows or should know of the injury that underlies his cause of action.'" *Id.*, at 1109 (quoting, *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996). "The plaintiff need not discover that the injury is part of a 'pattern of racketeering' for the period to begin to run." *Grimmett*, 75 F.3d at 510 (quoting, *McCool v. Strata Oil Co.*, 972 F.2d 1452, 1465 (7th Cir. 1992)). Further, "[o]nce the injury is discovered, a RICO plaintiff is responsible for determining within the limitations period whether their injury was caused by a RICO scheme." *Tatung Co. Ltd. v. Shu Tze Hsu*, 2178 F.Supp.3d 1130, 1157 (C.D. Cal. 2016); *see also Rotella*, 528 U.S. at 558 (observing that RICO's treble damages are "justified by the expected benefit of suppressing racketeering activity, an object pursued the sooner the better").

"The 'injury discovery' rule creates a disjunctive two-prong test of actual or constructive

notice, under which the statute begins running under either prong." *Pincay*, 239 F.3d at 1109. A plaintiff "is deemed to have had constructive knowledge if it had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the fraud." *Id.* at 1110 (quoting, *Beneficial Standard Life Ins. Co. v. Madariaga*, 851 F.2d 271, 276 (9th Cir. 1988).

In *Grimmett v. Brown*, 75 F.3d 506, the Ninth Circuit affirmed the dismissal of plaintiffs' RICO complaint on the ground it was filed more than four years after plaintiffs had knowledge of their injury underlying the RICO claim. *Id.* at 508-09. Plaintiffs' actual or constructive knowledge was established by their filing of a complaint in bankruptcy court more than four years before they filed their RICO claim that alleged similar facts and purported harm on which their RICO claim was based, namely loss of plaintiffs' interest in a medical practice as result of an alleged fraudulent reorganization scheme. *Id.* at 510, 512. Because the RICO Complaint was filed more than four years after plaintiffs had filed their complaint in the bankruptcy court, the RICO complaint was time-barred and properly dismissed. *Id.*

Applying these authorities here demonstrates that Plaintiffs' RICO Complaint is time-barred and should be dismissed, because Plaintiffs did not file the RICO Complaint until December 10, 2024, more than four years after Plaintiffs filed the California Federal Action on February 19, 2020 and the LASC Action on November 2, 2020. As shown below, in both of those pleadings filed more than four years before the RICO Complaint, Plaintiffs demonstrated their indisputable actual and/or constructive knowledge of the injury underlying their RICO Complaint.

**C.    Plaintiffs' RICO Claim Accrued More Than Four Years Before Plaintiffs Filed Their RICO Complaint**

**1.    *The California Federal Complaint Established Plaintiffs' Knowledge of Their Alleged RICO Injury.***

The Court should find that Plaintiffs' RICO claim accrued as early as ***February 19, 2020***, the date that Plaintiffs filed the California Federal Complaint. Like the plaintiffs in *Grimmett*, Plaintiffs' California Federal Complaint alleged claims, including fraud, to recover damages for their alleged injury of not being repaid on the seven loans to All Net. The purported cause of Plaintiffs' alleged injury in the California Federal Complaint was that Robinson fraudulently

induced Plaintiffs into making the loans to All Net based on misrepresentations by Robinson, Arellano, and AGS that the loaned funds would be repaid with interest by other funds to be borrowed by Robinson and/or by the performance bonds issued by AGS and Arellano. As shown below, this is the exact same injury that underlies Plaintiffs' RICO Complaint.

For instance, in the California Federal Complaint, Plaintiffs alleged that, "Defendants mispresented a pending investment that Defendant All Net anticipated receiving in order to induce Plaintiffs into entering the [MOU] which would provide an extension of time for Defendants to make the outstanding payments [due on the loans]." [*RJN*, Ex. 1, ¶ 23.] Echoing those allegations in the RICO Complaint, Plaintiffs allege that, "[ROBINSON] … went so far as to enter into extension agreements and a [MOU] as a showing of good faith that ROBINSON and AN intended to pay the balances due under the LOANS with full interest although neither ROBINSON nor any of the DEFENDANTS ever intended to repay the LOANS." [ECF No. 1, *Complaint*, ¶ 32.] In the same paragraph of their RICO Complaint, Plaintiffs further allege that, "[t]hese acts were nothing more than means to an end in DEFENDANTS' elaborate Ponzi scheme." [ECF No. 1, *Complaint*, ¶ 32.] With that allegation, Plaintiffs admit that the same alleged misrepresentations by Robinson and All Net, which underlie Plaintiffs' claims in the California Federal Action and are now asserted to constitute the "Ponzi scheme" upon which the RICO claim is based, were known to them and had evidentiary support sufficient for Plaintiffs to file their California Federal Complaint as of February 19, 2020. *See, e.g.*, Fed. R. Civ. P. 11(b)(3). As such, by that date, Plaintiffs had actual and/or constructive knowledge of their alleged RICO injury that triggered accrual of the four-year statute. *See Grimmett*, 75 F.3d at 510, 512; *Pincay*, 239 F.3d at 1109.

Another identical thread between Plaintiffs' California Federal Action and this RICO action involves the nature of Plaintiffs' alleged injury. In both pleadings, Plaintiffs' alleged injury is the same – non-repayment of the Loans by All Net. In the California Federal Complaint, Plaintiffs sought to recover damages based on that purported injury. [*RJN*, Ex. 1, ¶¶ 29-32, 42-36; 58-64.] In the RICO Complaint, Plaintiffs seek the same relief. For instance, in Paragraph 54 of the RICO Complaint, Plaintiffs allege that the seven loans to All Net that were not repaid constitute the *entirety* of the alleged pattern of racketeering by Defendants upon which the RICO claim is based, the last

predicate act of which occurred on July 12, 2019.  [ECF No. 1, *Complaint*, ¶ 54.]  Plaintiffs then allege in their Prayer for Relief that the remedy they seek to redress their RICO injury is recovery of the total unpaid amount due on the Loans, *trebled*, plus "prejudgment interest according to contract value until the date of entry of judgment."  [ECF No. 1., *Complaint*, p. 16:15-18.]  The injury alleged by Plaintiffs in both pleadings is the same, and thus the earlier filed pleading established Plaintiffs' contemporaneous knowledge of that injury, triggering accrual of the four-year RICO statute of limitations.

It makes no difference whether Plaintiffs knew when they filed the California Federal Complaint that their alleged injury was part of a "pattern of racketeering" for the statutory period to begin to run.  *See Grimmett*, 75 F.3d at 510.  All that is required is that Plaintiffs "had enough information to warrant an investigation which, if reasonably diligent, would have led to discovery of the fraud." *Pincay*, 239 F.3d at 1109.  Plaintiffs passed this threshold by February 19, 2020, based on information then known and available to them, when they hired counsel to prepare and file their California Federal Complaint.  Because the RICO Complaint was not filed until December 10, 2024 – well over four years later – it is time barred by the statute of limitations.  *See Agency Holding Corp.*, 483 U.S. at 156.

### 2. *By No Later than the Filing of the LASC Action, Plaintiffs Had Knowledge of Their Alleged RICO Injury.*

Even if Plaintiffs were to argue that their state of knowledge on February 19, 2020 was insufficient to commence the running of the RICO statute at that time, which would be meritless in light of their allegations summarized above, Plaintiffs cannot escape the indisputable actual and/or constructive knowledge they had when they filed the LASC Complaint on November 20, 2020, also more than four years before they filed their RICO Complaint.  As shown in Section II.B.2. above and summarized below, Plaintiffs alleged all of the same underlying principal charging allegations in their LASC Complaint that form the basis for their RICO claim:

- Plaintiffs made seven loans to All Net. [*RJN*, Ex. 3, ¶ 10; *Cf*. ECF No. 1, *Complaint*, ¶¶ 33, 54.]

- Plaintiffs were fraudulently induced to make the loans to All Net by the

misrepresentations of the Loan Defendants, which included that the loans "***were only short-term funding, and were needed to 'keep the project going'*** ... and that as soon as the funds (which had already been secured) were available, the loans … would be immediately paid back." [*RJN,* Ex. 3, ¶ 11 (emphasis added); *Cf.* ECF No. 1, *Complaint,* ¶ 22 ("ROBINSON … lured individuals into loaning funds to his entity for the project with the promise of high interest, quick repayment and foolproof lending"); ¶ 23 ("Such loans were obtained on the basis of the same material misrepresentations to encourage and solicit the loans, usually, the story being a great return on investment, quick returns on the money and fool proof repayment backed by multiple sureties"); ¶ 24 ("due to the delay in receiving billions of dollars in previously approved building funds … that ***smaller short-term 'bridging loans' were needed in the interim to keep the [project] afloat***….") (emphasis added).]

- "[T]o induce [Plaintiffs] into making the loans," AGS and Arellano issued performance bonds to secure repayment of the loans. [*RJN*, Ex. 3, ¶ 15; *Cf.* ECF No. 1, *Complaint*, ¶¶ 30, 31 ("PLAINTIFFS received performance bonds as security for the loans….").]

- The representations "that funding had been secured by the project was false; in fact no funding for the project had been secured but was only speculative." [*RJN,* Ex. 3, ¶ 19; *Cf.* ECF No. 1, *Complaint,* ¶ 22c (ROBINSON knew that "the ALL NET PROJECT … had no serious commitment building loans needed to properly fund the project").]

- The representations that the performance bonds were backed by sufficient liquidity was false, and there "is no money or assets held in trust to secure the performance of these defendants." [*RJN*, Ex. 3, ¶ 20; *Cf.* ECF No. 1, *Complaint*, ¶ 34e ("… the surety bonds, which were to be guaranteed by AGS and ARELLANO were fraudulent and/or forged").]

- The parties entered the MOU, in which the Loan Defendants agreed to repay the principal amounts due on the loans plus accrued interest, which agreement they breached. [*RJN,* Ex. 3, ¶¶ 22, 23; *Cf.* ECF No. 1, *Complaint,* ¶ 32 (discussing execution of the MOU, which Plaintiffs allege was "nothing more than [a] means to end in DEFENDANTS' elaborate Ponzi scheme.").]

If there could be any remaining doubt about Plaintiffs' actual and/or constructive knowledge of the injury that underlies their RICO Complaint when they filed the LASC Complaint on

November 2, 2020, Plaintiffs removed it when they alleged as follows:  "***Plaintiffs did not discover the falsity of the statements and representations above until months after Plaintiffs had executed the contracts and made the payment to Defendants***."  [*RJN,* Ex. 3, ¶ 66 (emphasis added).]  This is a clear, unequivocal judicial admission by Plaintiffs that they had discovered the alleged fraud that underlies the injury in their RICO Complaint no later than November 2, 2020, when they filed the LASC Complaint. And, like their California Federal Complaint, which mirrors their claims and allegations in the RICO Complaint, Plaintiffs sought redress for that identical injury by seeking money damages reflecting full repayment of the loans, plus interest and attorneys' fees.  [*Id.*, Ex. 3, pgs. 16:25-19:4.]

For these reasons, Plaintiffs' RICO Complaint, filed on December 10, 2024, is time barred and should be dismissed.

## IV.    IN THE ALTERNATIVE, THE COURT SHOULD DISMISS OR STAY THIS ACTION UNDER THE COLORADO RIVER DOCTRINE

While federal courts have a "virtually unflagging obligation … to exercise the jurisdiction given them," (*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)) "in certain circumstances, a federal court may stay its proceedings in deference to pending state proceedings." *Nakash v. Marciano*, 882 F.2d 1411, 1415 (9th Cir. 1989).  "This doctrine 'rest[s] on considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."'"  *Id.* at 1415 (quoting, *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 193 (1952).

A stay or dismissal of a federal action that parallels an earlier state court action may be appropriate under *Colorado River*. "To decide whether a particular case presents the exceptional circumstances that warrant a *Colorado River* stay or dismissal, the district court must carefully consider 'both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise.'" *R.R. Street Co. v. Transp. Ins. Co.*, 656 F.3d 966, 978 (9th Cir. 2011).

Courts have identified eight factors to determine whether a *Colorado River* stay or dismissal is appropriate: (1) which court first assumed jurisdiction over any property at issue; (2) inconvenience of the federal forum; (3) desire to avoid piecemeal litigation; (4) order in which the forums obtained

jurisdiction; (5) whether federal law or state law provides the rule of decision; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court. *Id.* at 978-79 (footnote omitted). "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Colorado River*, 424 U.S. at 818-19. Consideration of these factors to the circumstances here supports the dismissal or stay of this action until the LASC Action has concluded.

A.    **First and Fourth Factors: First Court to Assume Jurisdiction, and the Order of Obtaining Jurisdiction**

As shown above, the first court to assume jurisdiction over the subject matter involved in Plaintiffs' RICO Complaint is the Los Angeles Superior Court in the LASC Action, in which trial is scheduled to commence on October 20, 2025. While Plaintiffs' first action was filed in the Central District of California, that court did not assume jurisdiction over the matter but dismissed the matter due to a lack of subject matter jurisdiction. [*RJN*, Ex. 2.] As such, both of these factors favor dismissal or a stay.

B.    **Second Factor: Inconvenience of Federal Forum**

While this factor appears neutral, the facts are that this forum would be inconvenient to the ANLD Defendants, and all other parties involved in the LASC Action, including Plaintiffs, because of the extensive litigation activities that have occurred and continue to occur in the LASC Action, as shown from the docket sheet in that case. [*RJN*, Ex. 6.] As such, this factor is neutral or slightly favors dismissal or a stay of this action.

C.    **Third Factor: Avoidance of Piecemeal Litigation**

Permitting Plaintiffs' RICO Complaint to continue in this Court would result in piecemeal litigation. *See Nakash*, 882 F.2d at 1415. The LASC Action has been pending since November 2020, and as shown in the docket report for that action (*RJN* Ex. 6), substantial activity has taken place in that case, including numerous discovery issues that have been resolved with the assistance of a discovery referee. If the RICO Complaint is not dismissed or stayed pending completion of the LASC Action, the risks of duplicative discovery, inconsistent rulings, the possibility of Plaintiffs' obtaining an impermissible double

1    recovery, and other inefficiencies, is manifest.  This factor weighs heavily in favor of dismissal or a stay

2    of this action.

3        **D.**    **Fifth, Sixth, and Eighth Factors: State Law Provides the Rule of Decision; State**

4        **Court is Adequate to Protect Rights; and State Court Will Likely Resolve All**

5        **Issues**

6        As a practical matter, California state law will provide the rule of decision on Plaintiffs'

7    claim here and in the LASC Action, particularly as they concern the ANLD Defendants.  In the

8    LASC Action, Plaintiffs allege that ANLD (but not Lowden, whom Plaintiffs only first sued in their

9    RICO Complaint) had an agency relationship with Robinson and/or was the alter ego of Robinson.

10   This is substantially similar to Plaintiffs' allegations here that the ANLD Defendants were part of

11   an alleged RICO enterprise.  If ANLD defeats those theories of the liability in the LASC Action,

12   Plaintiffs will have no sound legal basis for establishing any liability against ANLD or Lowden, to

13   repay their loans to All Net, whether framed as a common law fraud claim (as in the LASC Action)

14   or a RICO claim, as here.  *See Nakash*, 882 F.2d at 1413, 1416-17 (affirming stay of plaintiffs'

15   federal RICO complaint filed almost five years after plaintiffs filed "substantially similar" state

16   court action involving common allegations and claims; finding the later filed RICO case to be "spin-

17   off" federal litigation which warranted a *Colorado River* stay).

18       While the parties named by Plaintiffs in the LASC Action and in their RICO Complaint are

19   not identical, that alone does not preclude a *Colorado River* stay.  *See Nakash*, 882 F.3d at 1416

20   ("exact parallelism" between state and federal actions "is not required. It is enough if the two

21   proceedings are 'substantially identical'").    Indeed, in *Nakash*, the court imposed a stay

22   notwithstanding "the absence of all of the corporate entities owned and operated by the parties."

23   *Nakash*, 882 F.3d at 1417.  Moreover, while Plaintiffs' RICO Complaint names Messner Reeves,

24   LLP, Torben Welch, and Loring Jacobs as Defendants who are not named in the LASC Action,

25   there are no allegations in the RICO Complaint that tie any of those Defendants to Plaintiffs' alleged

26   injury or its purported cause.

27       Further, in this circuit, state courts have concurrent jurisdiction over RICO claims and

28   therefore these claims should be resolved, if at all, in the LASC Action, which is already four years in

1  the making. *See Nakash*, 882 F.2d at 1416. "If the state and federal courts have concurrent jurisdiction

2  over a claim, this factor becomes less significant." *Id.* (citing, *Moses H. Cone Memorial Hosp. v.*

3  *Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983)). These factors therefore support dismissal or a stay of

4  this action.

5     **E.    Seventh Factor: Avoidance of Forum Shopping**

6     This factor considers whether the "second suit … is an attempt to forum shop or avoid adverse

7  rulings by the state court." *Nakash*, 882 F.2d at 1417. This factor weighs in favor of dismissal or a

8  stay because, after more than four years of active litigation in the LASC Action, Plaintiffs apparently

9  have become dissatisfied with the state court and/or rulings made by the trial judge in that case, and

10  are now seeking a new forum to re-litigate their claims. The Court should not encourage such a

11  practice.

12  **V.    CONCLUSION**

13     For the foregoing reasons, the ANLD Defendants respectfully request that the Court enter

14  an Order dismissing the RICO Complaint as time-barred under the applicable four-year statute of

15  limitations, or, in the alternative, dismiss or stay the RICO Complaint under the *Colorado River*

16  doctrine until Plaintiffs' pending LASC Action has concluded.

17     DATED this 17th day of January, 2025.

18                    **HANRATTY LAW GROUP**

19

20     By:  **_/s/ Kevin M. Hanratty, Esq._**
           Kevin M. Hanratty, Esq.
21           Nevada Bar No. 007734
           1815 Village Center Circle, Suite 140
22           Las Vegas, Nevada 89134
           Attorneys for Defendants *All Net Land*
23           *Development, LLC and David G.*
           *Lowden*

24

25

26

27

28

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ P. 5 and LR 5-1, I certify that I am an employee of HANRATTY LAW GROUP, and that on 17th day of January, 2025, the foregoing Defendant's *All Net Land Development, LLC and David G. Lowden Motion to Dismiss Plaintiffs' Complaint, or Alternatively for Colorado River Stay; Memorandum of Points and Authorities in Support,* was served upon the following respective parties via CM/ECF system as follows:

LAW OFFICE OF SHAWN R. PEREZ
Shawn R. Perez (NV SBN: 10421)
7121 W. Craig Rd, #113-38
Las Vegas, NV 89129

TACSIS LAW APC
Pro Hac Vice (pending application)
John S. Manzano, Esq. (CA SBN: 170546)
3424 W. Carson Street, Suite 600
Torrance, CA 90503

Attorneys for Plaintiffs
TACSIS APC and KENT LIMSON

By:  */s/: Carmen Lozano*
An Employee of Hanratty Law Group