1
2
3
4
5

LAW OFFICE OF SHAWN R. PEREZ
Shawn R. Perez (NV SBN: 10421)
Shawn711@msn.com
7121 W. Craig Rd, #113-38
Las Vegas, NV 89129
T: 702-485-3977
F: 702-442-7095

6
7
8
9

TACSIS LAW APC
John S. Manzano, Esq. (CA SBN: 170546)
law@tacsis.com
3424 W. Carson Street, Suite 600
Torrance, CA 90503
T/F: 424-234-5200

10

*Attorneys for Plaintiffs*
TACSIS APC and KENT LIMSON

11

12    **UNITED STATES DISTRICT COURT**

13    **DISTRICT OF NEVADA**

14
15

TACSIS APC, a California corporation;
and KENT LIMSON, an individual,

16                          Plaintiffs
17              v.

18
19
20
21
22
23
24
25
26
27

JACKIE ROBINSON, an individual; ALL
NET LAND DEVELOPMENT, LLC, a
Nevada Limited Liability Company; ALL
NET, LLC, a Nevada Limited Liability
Company; DRIBBLE DUNK, LLC, a
Nevada Limited Liability Company; AGS
ASSURETY, LLC, a Nevada Limited
Liability Company; TIMOTHY J.
ARELLANO, an individual; DAVID
LOWDEN, an individual; MESSNER
REEVES LLP, a Colorado Limited
Liability Partnership; TORBEN WELCH,
an individual; LORING JACOBS, an
individual, and DOES 1 THROUGH 100
INCLUSIVE,

                          Defendants.

Case No:   2:24-cv-02284-RFB-EJY

**REQUEST FOR JUDICIAL NOTICE IN
SUPPORT OF PLAINTIFFS TACSIS APC'S
AND KENT LIMSON'S OPPOSITION TO
DEFENDANTS ALL NET LAND
DEVELOPMENT, LLC'S AND DAVID
LOWDEN'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT, OR
ALTERNATIVELY FOR *COLORADO RIVER*
STAY**

28

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

Pursuant to Fed. R. Evid. 201, Plaintiffs TACSIS APC, a California corporation and KENT LIMSON, an individual (collectively hereinafter, "PLAINTIFFS") request that this Honorable Court take Judicial Notice of the existence of the following documents, which are of public record and readily accessible to the public, and which constitute evidence in support of PLAINTIFFS' Opposition to Defendants All Net Land Development, LLC, and David Lowden's (collectively hereinafter, "DEFENDANTS") Motion to Dismiss PLAINTIFFS' Complaint, or Alternatively for *Colorado River* stay:

1.      Exhibit 1: Memorandum of Lease with Option to Purchase between Sahara Las Vegas Corp., a Nevada Corporation, and All Net Development, Inc., a Nevada Corporation, recorded by the Clark County Recorder on February 11, 2015, document number 20150211-0001771;

2.      Exhibit 2: Termination of Memorandum of Lease with Option to Purchase between Sahara Las Vegas Corp., a Nevada Corporation, and All Net Development, Inc., a Nevada Corporation, recorded by the Clark County Recorder on November 2, 2023, document number 20231102-0000958;  and

3.      Exhibit 3:  Clark County Board of Commissioners Zoning Minutes, dated November 21, 2023, which may be found at:

https://clark.legistar.com/View.ashx?M=M&ID=1136483&GUID=43FDDC62-3AD3-4FAE-B508-1634B56251D1.

DATE: January 31, 2025                    **LAW OFFICES OF SHAWN R. PEREZ**

                              By:    /s/ Shawn R. Perez
                                     Shawn R. Perez, Esq.
                                     Attorneys for Plaintiffs

DATE: January 31, 2025                    **TACSIS LAW APC**

                              By:    /s/ John S. Manzano
                                     John S. Manzano, Esq.
                                     Attorneys for Plaintiffs

# EXHIBIT 1

## Memorandum of Lease with Option to Purchase between Sahara Las Vegas Corp., a Nevada Corporation, and All Net Development, Inc., a Nevada Corporation, recorded by the Clark County Recorder on February 11, 2015, document number 20150211-0001771

Inst #: 20150211-0001771
Fees: $19.00
N/C Fee: $25.00
02/11/2015 02:35:54 PM
Receipt #: 2311876
Requestor:
ALL NET DEVELOPMENT INC
Recorded By: SOL   Pgs: 3
DEBBIE CONWAY
CLARK COUNTY RECORDER

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

ALL NET DEVELOPMENT, INC.
2300 West Sahara Avenue
Suite 800
Las Vegas, NV 89102
Attention: Nina Jordan

APN No(s). : 162-09-602-001
             162-09-602-005

## MEMORANDUM OF LEASE
## WITH OPTION TO PURCHASE

THIS MEMORANDUM OF LEASE WITH OPTION TO PURCHASE, dated February 11, 2015, is by and between Sahara Las Vegas Corp., a Nevada corporation ("Landlord") and All Net Development, Inc., a Nevada corporation ("Tenant").

### RECITALS

A.   Landlord, as landlord, and Tenant, as tenant, have entered into that certain Lease with Option to Purchase dated February 9, 2015 (the "Lease"), relating to certain real property (the "Property") located at 2601 Las Vegas Boulevard South and 2737 Paradise Road, Las Vegas, Clark County, Nevada, consisting of approximately 26.87 acres of unimproved land, and more particularly described on Exhibit "A" attached hereto.

B.   Landlord and Tenant now wish to memorialize of record the existence of the Lease and certain specific terms of the same.

C.   All terms defined in the Lease shall have the same meanings when used herein as when used in the Lease.

NOW, THEREFORE, in consideration of the Lease and other good and valuable consideration, Landlord and Tenant agree as follows:

1.   Landlord hereby demises and leases to Tenant, and Tenant hereby takes and leases from Landlord, the Property upon the terms and conditions more particularly set forth in the Lease.

2.   The Term of the Lease shall be a term of four (4) years, commencing February 9, 2015, and terminating on February 8, 2019, (subject to the provisions of the Lease), and contains ten (10) five-year Optional Periods permitting extension of the Term to February 8, 2069.

 

**EXHIBIT 1 - 0001**

ANLDLLC000054

3. During the initial four-year lease term, the Lease grants the Tenant the option to purchase the Property on the terms and conditions contained in the Lease.

4. Reference is made to the Lease for a full statement of the terms and conditions of the Lease, all of which are hereby incorporated by reference.

5. Nothing in this Memorandum of Lease with Option to Purchase shall be construed to amend, modify, change, alter, amplify, interpret or supersede any of terms and provisions of the Lease, which shall in all things control.

IN WITNESS WHEREOF, Landlord and Tenant have executed and delivered this Memorandum of Lease with Option to Purchase as of February 11, 2015.

Landlord:
Sahara Las Vegas Corp., a Nevada corporation

By: _____
    David G. Lowden, President

Tenant:
All Net Development, Inc., a Nevada corporation

By: _____
    Jackie L. Robinson, President

State of Nevada
County of _____Clark_____

This instrument was acknowledged before me on

__2/11/15____ by _David G. Lowden_

__2/11/15____ by _Jackie L. Robinson_

(Notary Stamp)

_____
(Signature of notary office)

THENNIE NINA JORDAN
NOTARY PUBLIC
STATE OF NEVADA
My Commission Expires: 10-17-18
Certificate No: 98-2338-1

**EXHIBIT 1 - 0002**

**EXHIBIT "A"**

**TO MEMORANDUM OF LEASE**

**WITH OPTION TO PURCHASE**


**LEGAL DESCRIPTION OF THE PROPERTY**


BEING A PORTION OF THE NORTHEAST QUARTER (NE ¼) OF SECTION 9 AND A PORTION OF THE NORTHWEST QUARTER (NW ¼) OF THE NORTHWEST QUARTER (NW ¼) OF SECTION 10, TOWNSHIP 21 SOUTH, RANGE 61 EAST, M.D.B.&M., CLARK COUNTY, NEVADA, DESCRIBED AS FOLLOWS;


COMMENCING AT THE NORTHEAST CORNER (NE COR.) OF THE NORTHEAST QUARTER (NE ¼) OF SAID SECTION 9; THENCE SOUTH 04°43'06" EAST ALONG THE EAST LINE OF SAID SECTION 9 A DISTANCE OF 896.80 FEET TO A POINT, SAID POINT BEING THE NORTHEAST CORNER (NE COR.) OF THAT CERTAIN PARCEL OF LAND CONVEYED BY HOTEL SECURITIES C. TO EL RANCHO VEGAS BY CORPORATION DEED RECORDED MARCH 20, 1945 SHOWN AS DOCUMENT NO. 194417, CLARK COUNTY, NEVADA OFFICIAL RECORDS, SAID POINT ALSO BEING THE POINT OF BEGINNING; THENCE SOUTH 87°12'23" EAST PARALLEL TO THE NORTH LINE OF SAID SECTION 9 A DISTANCE OF 342.86 FEET TO THE WEST LINE OF PARADISE ROAD; THENCE SOUTH 00°14'47" WEST ALONG SAID WEST LINE OF PARADISE ROAD A DISTANCE OF 868.44 FEET; THENCE NORTH 87°12'23" WEST PARALLEL TO THE NORTH LINE OF SAID SECTION 9 A DISTANCE OF 1572.55 FEET TO THE EAST LINE OF LAS VEGAS BOULEVARD SOUTH; THENCE NORTH 28°00'00" EAST ALONG SAID EAST LINE OF LAS VEGAS BOULEVARD SOUTH A DISTANCE OF 958.89 FEET; THENCE SOUTH 87°12'23" EAST PARALLEL TO THE NORTH LINE OF SAID SECTION 9 A DISTANCE OF 782.72 FEET TO THE POINT OF BEGINNING.



**EXHIBIT 1 - 0003**

# EXHIBIT 2

**Termination of Memorandum of Lease with Option to Purchase between Sahara Las Vegas Corp., a Nevada Corporation, and All Net Development, Inc., a Nevada Corporation, recorded by the Clark County Recorder on November 2, 2023, document number 20231102-0000958**

Inst #: 20231102-0000958
Fees: $42.00
11/02/2023 09:03:08 AM
Receipt #: 5430394
Requestor:
FNTG NCS Las Vegas
Recorded By: WIHD   Pgs: 2
**Debbie Conway**
CLARK COUNTY RECORDER
Src: ERECORD
Ofc: ERECORD

APN : 162-09-602-001, 162-09-602-005

**WHEN RECORDED MAIL TO
SAHARA LAS VEGAS CORP.,
A NEVADA CORPORATION**

**3221 S. Torrey Pines
Las Vegas NV 89146**

42050653-DM/ BP

# TERMINATION OF MEMORANDUM OF LEASE WITH OPTION TO PURCHASE

THIS TERMINATION of Memorandum of Lease with Option to Purchase made as of _October 31,_ 2023   by

All Net Development, Inc., a Nevada corporation,  Lessee, with address:

_2300 W. Sahara Ave., Ste 800, Las Vegas, NV 89102_ and Sahara Las Vegas Corp., a Nevada corporation, Lessor

with address: _3221 S. Torrey Pines, Las Vegas, NV 89146._

### Statement of Purpose

A.  Pursuant to that certain Memorandum of Lease with Option to Purchase dated February 11, 2015, and recorded February 11, 2015, under recording No.: 20150211-0001771 of Official Records of Clark County, NV

B.  Said Lease expired February 8, 2019. The term of the lease (and the option to purchase contained therein) was not extended.  Neither the lease nor the option to purchase contained therein were assigned, sold, or otherwise transferred to any third party by either Landlord or Tenant.  Landlord and Tenant herewith terminate the lease and the Memorandum of Lease with Option to Purchase with all the Optional Periods, as set forth in the Official records by the recorded Memorandum of Lease set forth above.



**EXHIBIT 2 - 0001**

IN WITNESS WHEREOF, the undersigned has executed this Termination by authority duly given effective as of the day and year listed firs above

**LESSOR**

**Sahara Las Vegas Corp.,**
**a Nevada corporation**

By _~David G. Lowden~_

Name: _DAVID G. LOWDEN_

Its: _PRESIDENT_

David G. Lowden

**LESSEE:**

**All Net Development, Inc.,**
**a Nevada corporation**

By: _~Jackie L Robinson~_

Name: _JACKIE L ROBINSON_

Its: _CEO_

Jackie Lee Robinson

STATE OF NEVADA

COUNTY OF CLARK

On _October 31, 2023_ before me a Notary Public, personally appeared _David George Lowden_, personally, known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

_~Alisa J Steinhauer~_
Signature

My Commission Expires: _July 06, 2025_

ALISA J. STEINHAUER
Notary Public, State of Nevada
No. 13-11996-1
My Appt. Exp. July 6, 2025

STATE OF NEVADA

COUNTY OF CLARK

On _October 31, 2023_ before me a Notary Public, personally appeared _Jackie Lee Robinson_, personally, known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

_~Alisa J Steinhauer~_
Signature

My Commission Expires: _July 06, 2025_

ALISA J. STEINHAUER
Notary Public, State of Nevada
No. 13-11996-1
My Appt. Exp. July 6, 2025

**EXHIBIT 2 - 0002**




# EXHIBIT 3

# Clark County Board of Commissioners Zoning Minutes, dated November 21, 2023

# Board of County Commissioners

CLARK COUNTY, NEVADA

JAMES B. GIBSON
Chair
TICK SEGERBLOM
Vice Chair
JUSTIN JONES
MARILYN K. KIRKPATRICK
WILLIAM MCCURDY II
ROSS MILLER
MICHAEL NAFT

---

COMMISSION CHAMBERS, GOVERNMENT CENTER
500 SOUTH GRAND CENTRAL PARKWAY
LAS VEGAS, NEVADA 89106
TUESDAY, NOVEMBER 21, 2023

The Board of County Commissioners of Clark County, Nevada met in recessed regular session in full conformity with law and bylaws of said Board at the regular place of meeting in the Commission Chambers, Government Center, Las Vegas, Clark County, Nevada on Tuesday, the 21st day of November 2023, at the hour of 1:00 p.m. The meeting was called to order at 1:03 p.m. by Chair Gibson, and on roll call, the following members were present, constituting all the members:

## CALL TO ORDER

CHAIR AND COMMISSIONERS:
Jim Gibson
Tick Segerblom
Justin Jones
Marilyn K. Kirkpatrick
William McCurdy II
Ross Miller
Michael Naft

Absent:
None

Also Present:
Lisa Logsdon, Deputy District Attorney
Sami Real, Director, Comprehensive Planning
Antonio Papazian, Manager, Development Review
JaWaan Dodson, Assistant Manager, Development Review
Tammy McMahan, Office Services Supervisor
Robin Delaney, Deputy Clerk

**EXHIBIT 3 - 0001**

**ITEM NO. 1** Public Comments

| | |
|---|---|
| JIM GIBSON | Good afternoon, we welcome you to our Zoning meeting today. The meeting will come to order. The first item of business is public comment. Would invite anyone who wishes to speak on any item on this agenda. Let me just take a look at one thing before I say what I'm about to say. |
| | Sami? I don't remember. Alright. So, on any item of the agenda, if you have a comment that you wish to make, you can make it now. If it is not on an agenda item, there is a second public comment period during which you're invited to make comment. We'd invite you forward if you wish to make public comment now on any such item. You have three minutes. Please give us your name and spell your last name and indicate to us which item you're here addressing. |
| JUSTIN JONES | I thought it was getting pulled off consent. |
| GIBSON | Okay, so Item 20, 21 and 22 are going to be pulled off of consent, and we're going to have a separate public hearing on them. So, if you want to wait, you'll have an opportunity to deal with that at that time. |
| | And 17 to 19 will likewise be pulled off for a separate consideration, and you'll have an opportunity to speak at that time. |
| SHARON SAMPSEL | Did you say Item 23 also? I'm sorry. |
| GIBSON | I did not. |
| SAMPSEL | Would you pull that off consent agenda? |
| SAMI REAL | Commissioner, we have requests to hold Item 23 and 24 from the applicant until the January 17th, 2024 Zoning meeting. |
| GIBSON | So, 23 and 24 are, Commissioner Naft, to hold those? Would that be your inclination? |
| MICHAEL NAFT | Yeah. 23 and 24 have been held by the applicant, but you all are here, I believe, for 17 to 19. |
| GIBSON | Does anybody else want to say anything about anything? Alright. There being no public comment, we'll now move to Item Number 2, Miss Real. |
| **ACTION:** | No action was taken by the Board. |

**ITEM NO. 2** Approval of the Agenda After Considering Requests to Add, Hold, or Delete Items. (For possible action)

| | |
|---|---|
| REAL | The second item is the approval of the agenda after considering any additions or deletions of items. Staff has the following request, which may require renotification fees of 85 days has passed since initial notification, or there are modifications to the application. |
| | Hold to the December 6th, 2023 Zoning meeting Item 31, UC-23-0637, and then hold to the January 17th, 2024 Zoning meeting Item 23, ZC-23-0665 and Item 24, |

**EXHIBIT 3 - 0002**

| | |
|---|---|
| REAL | VS-23-0666. |
| | The above public hearing items are going to be opened as a public hearing and immediately recessed until the dates as previously stated. With these deletions, which are Items 23, 24 and 31, the Zoning agenda stands ready for your approval. |
| GIBSON | Thank you. If there are no other changes? |
| TICK SEGERBLOM | Move to approve subject to the changes. |
| GIBSON | Thank you. There's a motion for approval of the agenda, subject to the changes noted. Any discussion? Please cast your votes. And the motion carries. |
| **ACTION:** | It was moved by Commissioner Tick Segerblom, and carried by unanimous vote, that the agenda be approved. |

**ITEM NO. 3** Approval of minutes. (For possible action)

| | |
|---|---|
| REAL | The third item on the agenda is the approval of the minutes. The minutes of the October 18th, 2023 Zoning meeting are ready for approval. |
| SEGERBLOM | Move to approve. |
| GIBSON | There's a motion for approval of those minutes. Please cast your votes. And motion carries. |
| **ACTION:** | It was moved by Commissioner Tick Segerblom, and carried by unanimous vote, that the minutes be approved. |

**ROUTINE ACTION ITEMS** (4-27):

| | |
|---|---|
| REAL | Next are the routine action items which consist of Items 4 through 27, except those items previously deleted and Items 17, 18, 19, 20, 21 and 22, which will be pulled and heard separately. |
| | Additionally, staff has the following requests. Item 7, WS-23-0320, the applicant has submitted revised plans and request waivers of development standards 1C and 1D to be withdrawn without prejudice. |
| | And Item 16, WS-23-0683, add a Public Works condition to read, "Install No Parking signs to prevent street parking". If there are no objections from the audience, the public hearing is now open, and the routine action portion of the agenda stands ready for approval. |
| GIBSON | Thank you. |
| SEGERBLOM | Motion to approve. |
| GIBSON | There's a - excuse me. |
| SEGERBLOM | Motion to approve the routine action. |

**EXHIBIT 3 - 0003**

GIBSON                          There's a motion to approve the items under Routine Action Items, except for those
                                that have been indicated that will be heard afterwards. If there's no discussion on the
                                motion, please cast your votes. The motion carries.

**ACTION:**                     It was moved by Commissioner Tick Segerblom, and carried by unanimous vote,
                                that the Routine Action Items be approved.

**ITEM NO. 4** DR-23-0474-NEVADA INVESTMENT ASSN GRP, LLC:
DESIGN REVIEW for finished grade in conjunction with an approved mini-warehouse facility on 2.0 acres in a C-1
(Local Business) Zone. Generally located on the north side of Warm Springs Road and the west side of La Cienega Street
within Enterprise. MN/rp/syp (For possible action)

**ACTION:**                     It was moved by Commissioner Tick Segerblom, and carried by unanimous vote,
                                that the application be approved subject to staff conditions.

CONDITIONS OF APPROVAL –
Comprehensive Planning
        • Applicant is advised that the County has adopted a rewrite to Title 30 effective January 1, 2024, and future land
        use applications, including applications for extensions of time, will be reviewed for conformance with the
        regulations in place at the time of application; a substantial change in circumstances or regulations may warrant
        denial or added conditions to an extension of time; the extension of time may be denied if the project has not
        commenced or there has been no substantial work towards completion within the time specified; and that this
        application must commence within 2 years of approval date or it will expire.

Public Works - Development Review
        • Comply with approved drainage study PW22-19884;
        • Drainage study must demonstrate that the proposed grade elevation differences outside that allowed by Section
        30.32.040(a)(9) are needed to mitigate drainage through the site.
        • Applicant is advised that approval of this application will not prevent Public Works from requiring an alternate
        design to meet Clark County Code, Title 30, or previous land use approvals.

Clark County Water Reclamation District (CCWRD)
        • Applicant is advised that a Point of Connection (POC) request has been completed for this project; to email
        sewerlocation@cleanwaterteam.com and reference POC Tracking #0222-2023 to obtain your POC exhibit; and
        that flow contributions exceeding CCWRD estimates may require another POC analysis.

**ITEM NO. 5** DR-23-0651-TRAN, DEVIN ETAL & NGUYEN, THOMAS T.:
DESIGN REVIEW for finished grade in conjunction with a proposed single family residential development on 2.5 acres
in an R-E (Rural Estates Residential) (RNP-I) (AE-65) Zone in the CMA Design Overlay District. Generally located on
the north side of Post Road, 280 feet east of Jones Boulevard within Spring Valley. MN/nai/syp (For possible action)

**ACTION:**                     It was moved by Commissioner Tick Segerblom, and carried by unanimous vote,
                                that the application be approved subject to staff conditions.

CONDITIONS OF APPROVAL –
Comprehensive Planning
        • Applicant is advised that the County has adopted a rewrite to Title 30 effective January 1, 2024, and future land
        use applications, including applications for extensions of time, will be reviewed for conformance with the
        regulations in place at the time of application; a substantial change in circumstances or regulations may warrant
        denial or added conditions to an extension of time; the extension of time may be denied if the project has not
        commenced or there has been no substantial work towards completion within the time specified; and that this

**EXHIBIT 3 - 0004**

application must commence within 2 years of approval date or it will expire.

Public Works - Development Review
    • Comply with approved drainage study PW23-12271;
    • Drainage study must demonstrate that the proposed grade elevation differences outside that allowed by Section 30.32.040(a)(9) are needed to mitigate drainage through the site;
    • Right-of-way dedication to include 30 feet for Post Road.
    • Applicant is advised that approval of this application will not prevent Public Works from requiring an alternate design to meet Clark County Code, Title 30, or previous land use approvals.

Department of Aviation
    • Applicant must record a stand-alone noise disclosure form against the land, and provide a copy of the recorded document to the Department of Aviation Noise Office at landuse@lasairport.com;
    • Applicant must provide a copy of the recorded noise disclosure form to future buyers/renters, separate from other escrow documents, and provide a copy of the document to the Department of Aviation Noise Office at landuse@lasairport.com;
    • Applicant must provide a map to future buyers/renters, as part of the noise disclosure notice, that highlights the project location and associated flight tracks, provided by the Department of Aviation Noise Office when property sales/leases commence;
    • Incorporate an exterior to interior noise level reduction of 35 decibels into the building construction for the habitable space that exceeds 35 feet in height or 25 decibels into the building construction for the habitable space that is less than 35 feet in height.
    • Applicant is advised that the Federal Aviation Administration will no longer approve remedial noise mitigation measures for incompatible development impacted by aircraft operations which was constructed after October 1, 1998; and that funds will not be available in the future should the residents wish to have their buildings purchased or soundproofed.

Clark County Water Reclamation District (CCWRD)
    • Applicant is advised that a Point of Connection (POC) request has been completed for this project; to email sewerlocation@cleanwaterteam.com and reference POC Tracking #0358-2023 to obtain your POC exhibit; and that flow contributions exceeding CCWRD estimates may require another POC analysis.

**ITEM NO. 6** ET-23-400138 (ZC-0827-17)-LMC KAKTUSLIFE PROPERTY OWNER, LLC:
ZONE CHANGE THIRD EXTENSION OF TIME to reclassify 16.1 acres from a C-2 (General Commercial) Zone to a U-V (Urban Village - Mixed-Use) Zone.
USE PERMITS for the following: 1) High Impact Project; 2) increase density; and 3) increase height.
DESIGN REVIEW for a proposed mixed-use development in the CMA Design Overlay District. Generally located on the north side of Maule Avenue, 750 feet east of Cimarron Road within Spring Valley (description on file). MN/mh/syp (For possible action)

**ACTION:**                  It was moved by Commissioner Tick Segerblom, and carried by unanimous vote, that the application be approved subject to staff conditions.

CONDITIONS OF APPROVAL –
Comprehensive Planning
    • Until December 20, 2027 to complete.
    • Applicant is advised that the County has adopted a rewrite to Title 30 effective January 1, 2024, and future land use applications, including applications for extensions of time, will be reviewed for conformance with the regulations in place at the time of application; a substantial change in circumstances or regulations may warrant denial or added conditions to an extension of time; and that the extension of time may be denied if the project has not commenced or there has been no substantial work towards completion within the time specified.

**EXHIBIT 3 - 0005**

Public Works **-** Development Review
    • Compliance with previous conditions.

**ITEM NO. 7** WS-23-0320-LMC KAKTUSLIFE PROPERTY OWNER, LLC:
WAIVER OF DEVELOPMENT STANDARDS for lighting standards.
DESIGN REVIEWS for the following: 1) lighting; and 2) signage in conjunction with a previously approved mixed-use development on 16.1 acres in a U-V (Urban Village **-** Mixed-Use) Zone in the CMA Design Overlay District. Generally located on the north side of Maule Avenue, 750 feet east of Cimarron Road within Spring Valley. MN/jor/syp (For possible action)

ACTION:                         It was moved by Commissioner Tick Segerblom, and carried by unanimous vote, that the application be approved subject to staff conditions.

CONDITIONS OF APPROVAL –
Comprehensive Planning
    • Applicant is advised that approval of this application does not constitute or imply approval of any other County issued permit, license or approval; the County is currently rewriting Title 30 and future land use applications, including applications for extensions of time, will be reviewed for conformance with the regulations in place at the time of application; a substantial change in circumstances or regulations may warrant denial or added conditions to an extension of time; the extension of time may be denied if the project has not commenced or there has been no substantial work towards completion within the time specified; and that this application must commence within 2 years of approval date or it will expire.

WAIVER OF DEVELOPMENT STANDARDS #1C AND #1D WERE WITHDRAWN WITHOUT PREJUDICE.

**ITEM NO. 8** ET-23-400140 (ZC-21-0396)-DIAMOND TORINO, LLC:
WAIVER OF DEVELOPMENT STANDARDS FIRST EXTENSION OF TIME to allow modified driveway design standards.
DESIGN REVIEWS for the following: 1) single family residential development; 2) hammerhead street design; and 3) finished grade on 1.4 acres in an R-E (Rural Estates Residential) Zone. Generally located 350 feet east of Decatur Boulevard, 300 feet south of Ford Avenue within Enterprise (description on file). JJ/tpd/syp (For possible action)
ACTION:                         It was moved by Commissioner Tick Segerblom, and carried by the following vote, that the application be approved subject to staff conditions.

CONDITIONS OF APPROVAL –
Comprehensive Planning
    • Until April 19, 2026 to commence.
    • Applicant is advised that the County has adopted a rewrite to Title 30, effective January 1, 2024, and future land use applications, including applications for extensions of time, will be reviewed for conformance with the regulations in place at the time of application; a substantial change in circumstances or regulations may warrant denial or added conditions to an extension of time; and that the extension of time may be denied if the project has not commenced or there has been no substantial work towards completion within the time specified.

Public Works **-** Development Review
    • Compliance with previous conditions.

**ITEM NO. 9** ET-23-400146 (NZC-21-0285)-RAINBOW BADURA LAND OWNER, LLC:
ZONE CHANGE FIRST EXTENSION OF TIME to reclassify 14.0 acres from an R-E (Rural Estates Residential) Zone and a C-2 (General Commercial) Zone to an R-4 (Multiple Family Residential **-** High Density) Zone.
WAIVERS OF DEVELOPMENT STANDARDS for the following: 1) increase building height; 2) reduce parking; 3) increase sign area; 4) increase sign height; and 5) allow an alternative security gate design and geometrics.

**EXHIBIT 3 - 0006**

DESIGN REVIEWS for the following: 1) multiple family development; and 2) comprehensive sign plan in the CMA Design Overlay District. Generally located on the south side of Badura Avenue and the west side of Redwood Street within Enterprise (description on file). MN/rp/syp (For possible action)

**ACTION:**                              It was moved by Commissioner Tick Segerblom, and carried by unanimous vote, that the application be approved subject to staff conditions.

CONDITIONS OF APPROVAL –
Comprehensive Planning
        • Until August 18, 2027 to complete.
        • Applicant is advised that VS-22-0243 will expire on June 21, 2024; the County has adopted a rewrite to Title 30, effective January 1, 2024, and future land use applications, including applications for extensions of time, will be reviewed for conformance with the regulations in place at the time of application; a substantial change in circumstances or regulations may warrant denial or added conditions to an extension of time; and that the extension of time may be denied if the project has not commenced or there has been no substantial work towards completion within the time specified.

Public Works - Development Review
        • Compliance with previous conditions.

**ITEM NO. 10** UC-23-0604-UNCOMMONS LIVING BLDG 2, LLC:
USE PERMITS for the following: 1) modification to pedestrian realm; and 2) allow alternative design for pedestrian realm in conjunction with a previously approved mixed-use project on an 8.4 acre portion of 32.5 acres in a U-V (Urban Village - Mixed-Use) Zone in the CMA Design Overlay District. Generally located on the northwest corner of Gagnier Boulevard and Badura Avenue within Spring Valley. MN/rr/syp (For possible action)

**ACTION:**                              It was moved by Commissioner Tick Segerblom, and carried by the following vote, that the application be approved subject to staff conditions.

CONDITIONS OF APPROVAL –
Comprehensive Planning
        • Certificate of Occupancy and/or business license shall not be issued without final zoning inspection.
        • Applicant is advised that the County has adopted a rewrite to Title 30 effective January 1, 2024, and future land use applications, including applications for extensions of time, will be reviewed for conformance with the regulations in place at the time of application; a substantial change in circumstances or regulations may warrant denial or added conditions to an extension of time; the extension of time may be denied if the project has not commenced or there has been no substantial work towards completion within the time specified; and that this application must commence within 2 years of approval date or it will expire.

**ITEM NO. 11** UC-23-0655-RW LV FUTURE LAND, LLC:
USE PERMITS for the following: 1) a recreational facility; 2) fairgrounds; and 3) live entertainment in conjunction with an existing resort hotel (Resorts World) on a portion of 86.9 acres in an H-1 (Limited Resort and Apartment) Zone. Generally located on the west side of Las Vegas Boulevard South, the east side of Sammy Davis Jr. Drive, and the north side of Genting Boulevard within Winchester. TS/jor/syp (For possible action)

**ACTION:**                              It was moved by Commissioner Tick Segerblom, and carried by unanimous vote, that the application be approved subject to staff conditions.

CONDITIONS OF APPROVAL –
Comprehensive Planning
        • 1 year to review to determine if the use of the property pursuant to this application warrants an amendment to

**EXHIBIT 3 - 0007**

the Resorts World Development Agreement.
• Applicant is advised that the County has adopted a rewrite to Title 30 effective January 1, 2024, and future land use applications, including applications for extensions of time, will be reviewed for conformance with the regulations in place at the time of application; a substantial change in circumstances or regulations may warrant denial or added conditions to an extension of time and application for review; the extension of time may be denied if the project has not commenced or there has been no substantial work towards completion within the time specified; and that this application must commence within 2 years of approval date or it will expire.

Clark County Water Reclamation District (CCWRD)
• Applicant is advised that the property is already connected to the CCWRD sewer system; and that if any existing plumbing fixtures are modified in the future, then additional capacity and connection fees will need to be addressed.

**ITEM NO. 12** UC-23-0656-HARSCH INVEST PPTYS-NV II, LLC:
USE PERMIT for a minor training facility (cosplay) in conjunction with an approved office/warehouse on a portion of 28.2 acres in an M-1 (Light Manufacturing) Zone. Generally located on the south side of Sirius Avenue, 630 feet east of Wynn Road within Winchester. JJ/rp/syp (For possible action)

**ACTION:**                    It was moved by Commissioner Tick Segerblom, and carried by unanimous vote, that the application be approved subject to staff conditions.

CONDITIONS OF APPROVAL –
Comprehensive Planning
• Applicant is advised that the County has adopted a rewrite to Title 30 effective January 1, 2024, and future land use applications, including applications for extensions of time, will be reviewed for conformance with the regulations in place at the time of application; a substantial change in circumstances or regulations may warrant denial or added conditions to an extension of time; the extension of time may be denied if the project has not commenced or there has been no substantial work towards completion within the time specified; and that this application must commence within 2 years of approval date or it will expire.

Clark County Water Reclamation District (CCWRD)
• Applicant is advised that the property is already connected to the CCWRD sewer system; and that if any existing plumbing fixtures are modified in the future, then additional capacity and connection fees will need to be addressed.

**ITEM NO. 13** UC-23-0660-TOPACHIKYAN VERONICA:
USE PERMIT for proposed vehicle sales in conjunction with an existing vehicle dismantling yard on 2.0 acres in an M-2 (Industrial) Zone. Generally located on the north side of Smiley Road, 210 feet east of Novak Street within Sunrise Manor. MK/lm/syp (For possible action)

**ACTION:**                    It was moved by Commissioner Tick Segerblom, and carried by unanimous vote, that the application be approved subject to staff conditions.

CONDITIONS OF APPROVAL –
Comprehensive Planning
• Work with the Las Vegas Metropolitan Police Department for the installation and use of security cameras and surveillance operation.
• Applicant is advised that approval of this application does not constitute or imply approval of any other County issued permit, license, or approval; the County has adopted a rewrite to Title 30 effective January 1, 2024, and future land use applications, including applications for extensions of time, will be reviewed for conformance with the regulations in place at the time of application; a substantial change in circumstances or regulations may

warrant denial or added conditions to an extension of time; the extension of time may be denied if the project has not commenced or there has been no substantial work towards completion within the time specified; and that this application must commence within 2 years of approval date or it will expire.

Southern Nevada Health District (SNHD) - Engineering
• Applicant is advised to contact the SNHD Environmental Health Division at septics@snhd.org or (702) 759-0660 to obtain written approval for a Tenant Improvement, so that SNHD may review the impact of the proposed use on the existing Individual Sewage Disposal (Septic) System.

Clark County Water Reclamation District (CCWRD)
• Applicant is advised that the property appears to have an existing septic system; and to contact the Southern Nevada Health District when modifying existing plumbing fixtures

**ITEM NO. 14** UC-23-0675-KCP CONCRETE PUMPS:
USE PERMIT to allow commercial vehicle sales and repair (semi-trucks) in an (APZ-2) Zone.
WAIVER OF DEVELOPMENT STANDARDS to reduce parking in conjunction with a proposed commercial vehicle sales and repair and construction equipment sales and service facility on a 4.1 acre portion of an 8.7 acre site in an M-1 (Light Manufacturing) (AE-75 & APZ-2) Zone. Generally located on the east side of Lamb Boulevard and the north side of Alto Avenue within Sunrise Manor. MK/lm/syp (For possible action)

ACTION:                              It was moved by Commissioner Tick Segerblom, and carried by unanimous vote, that the application be approved subject to staff conditions.

CONDITIONS OF APPROVAL –
Comprehensive Planning
• No gathering of individuals in an area that would result in an average density of greater than 25 persons per acre per hour during a 24-hour period, not to exceed 50 persons per acre at any time;
• Work with the Las Vegas Metropolitan Police Department for the installation of security cameras and surveillance operations;
• Certificate of Occupancy and/or business license shall not be issued without final zoning inspection.
• Applicant is advised that the County has adopted a rewrite to Title 30 effective January 1, 2024, and future land use applications, including applications for extensions of time, will be reviewed for conformance with the regulations in place at the time of application; a substantial change in circumstances or regulations may warrant denial or added conditions to an extension of time; the extension of time may be denied if the project has not commenced or there has been no substantial work towards completion within the time specified; and that this application must commence within 2 years of approval date or it will expire.

Clark County Water Reclamation District (CCWRD)
• Applicant is advised that the property is already connected to the CCWRD sewer system; and that if any existing plumbing fixtures are modified in the future, then additional capacity and connection fees will need to be addressed.

**ITEM NO. 15** WS-23-0674-COUNTY OF CLARK (PUBLIC WORKS):
WAIVERS OF DEVELOPMENT STANDARDS for the following: 1) eliminate sidewalk and street landscaping; 2) waive full off-site improvements; and 3) waive requirement for a County approved turnaround on Sur Este Avenue in conjunction with a minor subdivision map on 11.9 acres in an R-E (Rural Estates Residential) Zone and a P-F (Public Facility) Zone. Generally located on the northeast corner of Paradise Road and Sur Este Avenue within Paradise. MN/bb/syp (For possible action)

ACTION:                              It was moved by Commissioner Tick Segerblom, and carried by unanimous vote, that the application be approved subject to staff conditions.

**EXHIBIT 3 - 0009**

CONDITIONS OF APPROVAL –
Comprehensive Planning
     • Applicant is advised that the subject request applies to MSM-22-600101 only and all future development shall comply with Title 30; the County has adopted a rewrite to Title 30 effective January 1, 2024, and future land use applications, including applications for extensions of time, will be reviewed for conformance with the regulations in place at the time of application; and that the extension of time may be denied if the project has not commenced or there has been no substantial work towards completion within the time specified.

Public Works - Development Review
     • Right-of-way dedications, technical studies, and off-site improvements will be required at the time of development.

Clark County Water Reclamation District (CCWRD)
     • Applicant is advised that the property is already connected to the CCWRD sewer system; and that if any existing plumbing fixtures are modified in the future, then additional capacity and connection fees will need to be addressed.

**ITEM NO. 16** WS-23-0683-LMG NEVADA LAND EXPANSION, LLC:
WAIVER OF DEVELOPMENT STANDARDS to reduce parking.
DESIGN REVIEWS for the following: 1) an office/warehouse building; and 2) increase finished grade in conjunction with a previously approved office/warehouse on 2.4 acres in an M-D (Designed Manufacturing) (AE-65) Zone. Generally located on the northwest corner of Capovilla Avenue and Windy Street within Enterprise. MN/jud/syp (For possible action)

**ACTION:**                  It was moved by Commissioner Tick Segerblom, and carried by unanimous vote, that the application be approved subject to staff conditions.

CONDITIONS OF APPROVAL –
Comprehensive Planning
     • Applicant is advised that the County has adopted a rewrite to Title 30 effective January 1, 2024, and future land use applications, including applications for extensions of time, will be reviewed for conformance with the regulations in place at the time of application; a substantial change in circumstances or regulations may warrant denial or added conditions to an extension of time; the extension of time may be denied if the project has not commenced or there has been no substantial work towards completion within the time specified; and that this application must commence within 2 years of approval date or it will expire.

Public Works - Development Review
     • Install "No Parking" signs to prevent street parking;
     • Comply with approved drainage study PW23-13973;
     • Drainage study must demonstrate that the proposed grade elevation differences outside that allowed by Section 30.32.040(a)(9) are needed to mitigate drainage through the site.
     • Applicant is advised that approval of this application will not prevent Public Works from requiring an alternate design to meet Clark County Code, Title 30, or previous land use approvals.

Clark County Water Reclamation District (CCWRD)
     • Applicant is advised that a Point of Connection (POC) request has been completed for this project; to email sewerlocation@cleanwaterteam.com and reference POC Tracking #0106-2023 to obtain your POC exhibit; and that flow contributions exceeding CCWRD estimates may require another POC analysis.

**EXHIBIT 3 - 0010**

**ITEM NO. 17** PA-23-700027-COUNTY OF CLARK (AVIATION):
PLAN AMENDMENT to redesignate the existing land use category from Neighborhood Commercial (NC) to Business Employment (BE) on 19.3 acres. Generally located on the south side of Patrick Lane, 300 feet east of Tenaya Way within Spring Valley. MN/rk (For possible action)

| | |
|---|---|
| REAL | The next item on the agenda is 17, 18 and 19, which are companion items that will be heard together. |
| | Item 17, PA-23-700027, plan amendment to redesignate the existing land use category from Neighborhood Commercial (NC) to Business Employment (BE) on 19.3 acres, generally located on the south side of Patrick Lane, 300 feet east of Tenaya Way, within Spring Valley. |
| | Item 18, ZC-23-0574, amended zone change to reclassify 19.3 acres from an R-E Real Estates Residential (AE-60) Zone to an M-D Design Manufacturing (AE-60) Zone. Waivers of development standards for the following: reduced throat depth, increase driveway width, modifications to CMA Design Overlay District standards, and decorative buffer wall adjacent to a less intensive use which is no longer needed. Design reviews for the following: office warehouse complex and finished grade, and alternative parking lot landscaping, which is no longer needed, in the CMA Design Overlay District for an office warehouse facility, generally located on the south side of Patrick Lane, 300 feet east of Tenaya Way within Spring Valley. |
| | And then Item 19, VS-23-0575, vacate and abandon easements of interest to Clark County located between Rainbow Boulevard and Tenaya Way, and between Post Road and Patrick Lane, and a portion of right-of-way being Patrick Lane located between Rainbow Boulevard and Tenaya Way, and a portion of right-of-way being Belcastro Street located between Patrick Lane and Sobb Avenue alignment within Spring Valley. |
| GIBSON | Thank you. Good afternoon. |
| JENNIFER LAZOVICH | I'm used to saying good morning. Good afternoon, Jennifer Lazovich, 1980 Festival Plaza Drive, here today on behalf of the applicant. If it's okay with you, Mister Chairman, I believe there are some neighbors here that asked for this to be pulled, but perhaps I could give a brief presentation and then turn it over to them, if that's okay with you? |
| GIBSON | Yes, go ahead and make your brief presentation. |
| LAZOVICH | Understood. So, this is the location of the site. It's important to note as I walk through what this is, this is a plan amendment for and a zone change to go to M-D. The property was at one point in the past owned by the Department of Aviation. So, there is a deeded restriction on the property that would mean it cannot be used for anything residential. The same owner built this M-D office warehouse project just to the south of us. Again, similar situation where the property at one point in time was owned by the Department of Aviation, had a deeded restriction, and so this came through with an M-D zoning district. And when we did that design review, there were a number of conditions that we worked on with particularly the adjacent neighbors, one of whom is here today. And then now, this piece is what we're calling phase two, and that is immediately to the north of that. |

**EXHIBIT 3 - 0011**

LAZOVICH

The property right now is master planned for Neighborhood Commercial. Here's the phase one that we were talking about before, but the property to the north of us and the one we're talking about right now is master planned Neighborhood Commercial.

This is the site plan that we filed with the application, and I want to point this out because there are a number of conditions that we agreed to at the Planning Commission and we continue to agree to today. But some of the conditions that we did on the phase one are actually not written condition, and that's because when we turned this plan in initially, we did some of the buffer things that we did for the neighbors to the south, we did when we filed the application. So, there's five buildings. The buildings in orange are the buildings itself. The three homes that we back up to are here on the west boundary. Right here is a vacant piece of property.

To the north of us is Patrick, and this building is the building that we were the most sensitive to. We call that Building Number Five. It's the building that's closest to the neighbors. As you can see on the site plan, none of the loading docks are facing west. Everything either faces east or faces internally. Over here, facing east, we don't have any docks of any kind facing west. So essentially the west face of this Building Number Five would be the front door or the part of the building with the more glass look. In addition, part of one of the things that we agreed to on phase one is that for the area that's right adjacent to the homes, we did an extended landscape buffer. We will put 36-inch box trees in there. The other thing that we agreed to is that we wouldn't have any parking spaces that run along this length, so it would be the extra landscaping and no parking spaces.

We also, at this line right here, and again here are the three homes. This portion of Building Number Five will be reduced in height to 30 feet. The remainder of the building will be 35 feet. Again, that's something staying consistent with what we did with phase one that we brought forward here. So, this north half of Building Number Five will be 30 feet, and it's right across the driveway from the additional landscape area.

I'd like to go through a couple of the conditions or several of the conditions that we agreed to. I'll summarize them, I won't read them in, but they're under, in the staff report, they're under what the Planning Commission approved on this. It was based upon some of the things that I talked to with the neighbors that are here today, and then a few other things that came up during the hearing.

So, the second bullet talks about adding additional trees on the northeast corner of Building Five and the southeast corner of Building Eight. That was just to help with the screening of the loading docks.

One of the things that came up at the Planning Commission is an ask that we put external security cameras in all of the buildings. We agreed to that. Next is to construct an eight-foot block wall adjacent to what is the vacant land to the west of us. So, what will happen is essentially, there is a neighbor who lives right here where that block wall ends. We will start and we will build an eight-foot block wall all along the border of this - of our property to the vacant land, and then it will tie into the existing six-foot block wall that sits where the homes right here are. So, there'll be a continuous now block wall along our western boundary.

**EXHIBIT 3 - 0012**

| | |
|---|---|
| LAZOVICH | We'll put striping and signs to make sure that trucks can't get into this western parking area where Building Five is. All wall lights on the west and south elevations and pole lights in the parking lot will be shielded and directed downward. No windows to be located on the west and south elevations of Building Five only above 20 feet in height. Trash enclosures to be a minimum of 120 feet away from the western boundary. We actually always had that, but to give the neighbors some comfort, we again added that condition. Trucks shall not use the loading docks for Building Number Five between 12:00 a.m. to 5:00 a.m. That condition is limited to Building Five only. Building Five actually then acts as a buffer to some of the other buildings as you move west on the site. |
| | Signage on the western and southern faces of Building Five shall not be illuminated. We actually don't anticipate there to be any doors or anything on the southern face, but because we have some residents kitty-corner to the south of us, we added that. But it is the side of the building, not the front of the building. |
| | Landscaping on the western property line adjacent to the existing residences will have 36-inch box trees. And construction of the project is limited to daytime hours as defined in Title 30. |
| | So, that's summarizing the conditions that we agreed to at the Planning Commission, many of which I worked with the neighbor on. And then, I'm sure they're here to talk about some other things. But I will, with your approval, just respond to any of the comments that come up. |
| GIBSON | Thank you. This is a public hearing, and I'd invite anyone who wishes to speak on these items to step forward, please. State your name, spell your last name, and please keep your comments to three minutes. |
| SAMPSEL | Oh, thanks. Is this live? Yes, it is. My name is Sharon Sampsel, 7302 Sundown Glen Avenue, Las Vegas, 89113. We are one of the most impacted houses that is close to the first phase of the development, and so we have seen a lot of stuff. And we've worked nicely with Jennifer to try to blend this incongruous kind of zoning that we have been forced to live behind. |
| | If you don't mind, I'd like to show you this. This is a view from the corner of my backyard, and a couple of things I wanted to point out is that the way the block wall that surrounds this neighborhood stair steps up. |
| GIBSON | Rotate that picture - |
| SAMPSEL | Sure. |
| GIBSON | - so it's the other way. Yeah. There you go. |
| SAMPSEL | It's stair steps up, and we've had people trespass into our backyard from the development, just because of the way the wall builders built. And that's a personal thing, so I'm just asking that maybe they remedy that when they build their new walls for the new cul-de-sac. |

**EXHIBIT 3 - 0013**

| | |
|---|---|
| SAMPSEL | The next thing I want to talk about is, I am on the HOA Board for these hundred houses that are rural estate, and the biggest complaint I'm hearing at an alarming rate is the traffic. And I have a neighbor here who has taken some videos, but I'll show you this. And our traffic problem from the schools on Patrick is dangerous condition. We've had, there was a death on Patrick a couple years ago. The school, every day, three times a day, has a line of traffic about between Buffalo and all the way to Rainbow, of parents trying to pick up their kids. The people that are not happy with the traffic and waiting behind parent pictures are jumping out into oncoming traffic. Parents sometimes don't let us out of our own neighborhood. We are in a real problem, and the school has, I guess, tried to remedy from what Commissioner Naft has told me, tried to remedy something with the developers, but an agreement could not be - come to on this. And so, we would love for traffic to get involved in this and solve this before approval. It is a dangerous condition for the afternoon, even in the morning when the kids are being dropped off. It's just changed the face of the neighborhood. |
| | The other thing that my neighbors are coming to me about - May I have- |
| GIBSON | If you could wrap it up please. |
| SAMPSEL | - Okay. The other thing is keeping Tenaya closed to keep a harmonious rural estate neighborhood, a rural estate neighborhood. And right now, we can see people try to come down Tenaya all the time, and we can just see that industrial traffic running through our neighborhood and changing the face of our rural estate neighborhood in a drastic way. |
| GIBSON | Thank you. |
| SAMPSEL | That's all I have to say. I appreciate your time. Thank you. |
| GIBSON | Thank you. |
| DON BAUGH | Good afternoon, Commissioners and staff. My name's Don Baugh. I live at 6104 Sundown Crest Street. I want to show, first, I'm going to show you a little example of an aerial view of what we're looking at. And let me zoom in a little bit. Okay. Alright. We're looking at, here's Rainbow here, Patrick. We got some office spaces. We had this school that's we're talking about with all the issues. The subject property for the zone change. I live right here, right at Patrick and Sundown Crest. You can see, basically, this entire section here is residential. The only thing difference is - the only different piece is the school and a couple office complexes here. You have residential, all here, here, here, here, all the way down past here. This new place Evora is going to have 1,300 apartments or more. This is still aviation property, subject to whatever, I assume, I would hope that it's going to be residential. |
| | So, my feeling is, the warehouses are going to directly affect the functionality of our neighborhood, our residential neighborhood. Bringing in trucks here, the only trucks we get right now are FedEx, Amazon, things like that. So, bringing in semis, coming down this road, I don't see anything good happening there. Basically, this is my house. Just looking out at the street. I'm going to buzz through these because I have a video here. I know I don't have a lot of time so I'm going to try to zip |

**EXHIBIT 3 - 0014**

| | |
|---|---|
| BAUGH | through here. This is constant. You could take this video any day of the school is letting out, okay? It's not a one of a kind happening. So, here's these people making U-turns all the time. I personally saw the aftermath of an accident here. You know what, let me back up just a second. What I want to show you, I got pictures right here by the school. I got pictures coming up the other way from Buffalo, and then the ones you just saw from my house. So, get back to this. So, this is basically the first round of cars picking up kids. Okay? No big deal except that half of them are doing, sorry, I hope I don't get you dizzy here. I'm going to kind of zip. Oh, shoot. |
| | Anyways. I personally saw a truck sitting on top of a motorcycle right here from doing a U-turn, okay? This is a dangerous neighborhood. I don't see anything good coming out of adding some truck traffic. We have - |
| GIBSON | Thank you, sir. |
| BAUGH | I know I'm at the end, but there's an example of the pile of cars. |
| GIBSON | Thank you, sir. |
| GREG PRESTON | Hello, Greg Preston, 7302 Sundown Glen Avenue. |
| GIBSON | We're going to give you another crack at that. |
| PRESTON | Okay. Thank you so much. |
| GIBSON | Also, I'd take that microphone and straighten it up, that way you don't have to bend over so far. |
| PRESTON | Thank you, sir. |
| GIBSON | There you go. |
| PRESTON | Alright. Thank you. 7302 Sundown Glen Avenue. I have a letter to read from one of my other neighbors who couldn't be here because they're at the dentist, so if you don't mind, it'll be quick. |
| | Dear Commission members, Bruce and I are original owners and have lived for over 20 years in the Big Sky Ranch community directly adjacent to the west of this proposed commercial project. Over the years, several other similar commercial developments have been approved and built along the perimeter of our neighborhood and nearby, and we have been told repeatedly that the Clark County Department of Aviation will not allow residential development, which is what we would like to be built on these property partials of land. Accordingly, we have been repeatedly forced to put up with the steady erosion of our quality of life. If possible, we request that the proposed development not be constructed and that the Clark County allow residential development on the land. |
| | If this is not possible, we at least request that the semi-truck traffic associated with the development be restricted to Sobb Avenue driveway and not be allowed to access Patrick Lane to the north. Every school day, cars line up for hundreds of yards on Patrick Lane along the north side of the proposed development. To add |

**EXHIBIT 3 - 0015**

| | |
|---|---|
| PRESTON | additional truck traffic to Patrick Lane would cause more traffic interference with parents picking up and dropping off students and threatening the safety of our school children. |
| | Additionally, we request that Tenaya Way, which runs through our Big Sky Ranch development, continue to be closed to through traffic as it has been for over 20 years between Patrick Lane and Sunset Avenue. To open Tenaya Way would severely compromise the safety of our residents and contribute to increased noise, air pollution, and overall disturbance that more traffic brings. This is from Tris and Bruce Bowman at 7389 Sundown Glen Avenue, 89113. Thank you. |
| GIBSON | Thank you. Is there any other comment? There being none, Commissioner Naft. |
| MICHAEL NAFT | Thank you, Mister Chairman. Miss Lazovich, I don't know if there's any specific issues that were pointed out that you want to respond to? |
| LAZOVICH | There's just a few. So, one thing to note about Patrick is that it is an 80-foot-wide street, and the school that was discussed was, or sits here, Patrick in front of this particular site hasn't been widened at all with any improvements of any kind. So, once it is widened, that will mean that Patrick, where we end here, it's one lane in each direction now and it will go to two lanes in each direction. So, I think that it's just important to remember that half of that road hasn't been improved, which I think contributes to some of the congestion that you see when that school is taking kids in the morning and then letting kids go at night. |
| | From our perspective, we do have access points onto Patrick, but we also have this access point onto Sobb, and then we do have driveways that will go south, and when they go south, they'll go into where phase one is, and that ultimately picks up at Post Road. So, I point that out to say that there will be multiple opportunities for - if there are trucks coming out of here, to go somewhere else if this is backed up for the schools or if it's just not the right turning movement. There'd be zero reason for the trucks to turn and go west. There's obviously a light at Patrick and Rainbow here. Sobb doesn't have a light, but you could make a right because the beltway sits to the south, and then you could come down to Post Road or keep going farther south to Sunset. |
| | So, there's a number of ways for any kind of traffic that comes through here to move, not just use solely Patrick, which I think is important to point out. And then, I know it has been so hard for the neighbors and I'm always the bearer of bad news when I say it, but to the gentleman's point about this being a residential area, I completely understand what he's saying except that it is deed restricted and we have had that conversation with the airport, just like we did on phase one. We had it again on phase two, and there is no desire for the airport to remove that deed restriction, therefore there will never be residential built on this property. So, I'll stand by and answer any questions that you might have. |
| NAFT | Can you leave that up for a second? Thank you. Yeah, so I think there were a lot of things pointed out really eloquently, and I just want to acknowledge, Sharon, you've been working on this for a very, very, very long time. You guys have been a really strong champion for your HOA. And I appreciate that, and I think it's because of that, that there are so many conditions on this application already. |

**EXHIBIT 3 - 0016**

| | |
|---|---|
| NAFT | Since it came up a couple times in the conversation, I just have to point out, and we have talked ad nauseum about this, but the flow of traffic was mentioned a lot. And only because you're at the map, Miss Lazovich, can you point to Tenaya to your left and go down? Right there. So, that's the double-headed cul-de-sac, which blocks egress from your community to the left. You can only go out to Patrick. And I know, this developer I understand has no desire to open that up. But at a certain point, if you want to talk about flow out of your neighborhood, there's only two ways. Right now, there's only one way, and we can thoughtfully have that conversation, but it's impossible to truly discuss flow out of your residential neighborhood without talking about Tenaya. So, always open to having a thoughtful conversation about that moving forward. |
| | This application comes to us with the support of the Town Advisory Board, the Planning Commission, and staff. I think some really important things that were put on the record from the Planning Commission will make it to this application, and my approval will be contingent on all of the conditions that have been read into the record. And we're unanimously supported by the Planning Commission. There's a lengthy list of them in this application. |
| | And then, I've also, I think it's really helpful that you put on notice the school. We have had ongoing, lengthy conversations. I know the representative of that school is watching this hearing right now, and I'll again put them on notice that this continues to be a problem for the County and for everybody in that area, and it is a safety issue. We'll also look at, Don, you pointed out the video you showed. It's illegal to make a U-turn in a school zone. We'll work with Public Works to make sure that's posted there. I know it being illegal and stopping people from doing it are two different things, but at least we can make sure it's properly posted. |
| | And then, subsequently, our Director of Traffic Safety is going to meet you at the back door. He wanted to talk to you a little bit about some of our work with charter schools and some of the hopefully positive movement we're making with them. So, if there are no questions, I'm going to move for approval of Item 17, 18, and 19 per Planning Commission. |
| GIBSON | If there's a motion for approval as indicated, any discussion on the motion, please cast your votes. The motion carries. |
| LAZOVICH | Thank you. |
| GIBSON | Thank you. Thank you all for being here. |
| **ACTION:** | It was moved by Commissioner Michael Naft, and carried by unanimous vote, that the recommendation (including the approval of Resolution No. R-11-21-23-24) for Agenda Item No. 17 be adopted, and the applications for Item Nos. 18 and 19 be approved subject to staff and Planning Commission conditions. |

**ITEM NO. 18** ZC-23-0574-COUNTY OF CLARK (AVIATION):
AMENDED ZONE CHANGE to reclassify 19.3 acres from an R-E (Rural Estates Residential) (AE-60) Zone to an M-D (Designed Manufacturing) (AE-60) Zone.
WAIVERS OF DEVELOPMENT STANDARDS for the following: 1) reduce throat depth; 2) increase driveway width; 3) modifications to CMA Design Overlay District standards; and 4) decorative buffer wall adjacent to a less intensive use

**EXHIBIT 3 - 0017**

(no longer needed).
DESIGN REVIEWS for the following: 1) office/warehouse complex; 2) finished grade; and 3) alternative parking lot landscaping (no longer needed) in the CMA Design Overlay District for an office/warehouse facility. Generally located on the south side of Patrick Lane, 300 feet east of Tenaya Way within Spring Valley (description on file). MN/rr/syp (For possible action)

ACTION:    It was moved by Commissioner Michael Naft, and carried by unanimous vote, that the recommendation (including the approval of Resolution No. R-11-21-23-24) for Agenda Item No. 17 be adopted, and the applications for Item Nos. 18 and 19 be approved subject to staff and Planning Commission conditions.

CONDITIONS OF APPROVAL –
Comprehensive Planning
• No Resolution of Intent and staff to prepare an ordinance to adopt the zoning;
• Additional trees to be added on the northeast corner of Building 5 and southeast corner of Building 8 to obscure the loading docks from the streets;
• Install external security cameras on the buildings;
• Construct an 8 foot high block wall adjacent to APN 163-34-701-008;
• Striping and/or signs to be used in vehicular parking lot area adjacent to Building 5 so trucks do not use the drive aisle on the western boundary of site;
• All wall lights on the west and south elevations of Building 5 and all pole lights within the western and southern parking lot of Building 5 to be fully shielded so the light source is not visible from the existing residential lots;
• No windows to be located on the west and south elevations of Building 5 above 20 feet in height;
• Trash enclosures to be a minimum of 120 feet away from the western boundary;
• Trucks shall not use the loading docks for Building 5 between 12:00 a.m. and 5:00 a.m.;
• Signage on the western and southern faces of Building 5 shall not be illuminated;
• Landscaping on the western property line adjacent to existing residences to be planted with 36 inch box trees to adequately buffer existing residences;
• Construction of the project limited to daytime hours as defined by Title 30;
• Enter into a standard development agreement prior to any permits or subdivision mapping in order to provide fair-share contribution toward public infrastructure necessary to provide service because of the lack of necessary public services in the area;
• Certificate of Occupancy and/or business license shall not be issued without final zoning inspection.
• Applicant is advised that the installation and use of cooling systems that consumptively use water will be prohibited; the County has adopted a rewrite to Title 30 effective January 1, 2024, and future land use applications, including applications for extensions of time, will be reviewed for conformance with the regulations in place at the time of application; a substantial change in circumstances or regulations may warrant denial or added conditions to an extension of time; the extension of time may be denied if the project has not commenced or there has been no substantial work towards completion within the time specified; and that the waivers of development standards and design reviews must commence within 2 years of approval date or they will expire.

Public Works - Development Review
• Drainage study and compliance;
• Drainage study must demonstrate that the proposed grade elevation differences outside that allowed by Section 30.32.040(a)(9) are needed to mitigate drainage through the site;
• Traffic study and compliance;
• Full off-site improvements;
• Coordinate with Public Works – Development Review for the installation of "No U-Turn" sign.
• Applicant is advised that approval of this application will not prevent Public Works from requiring an alternate design to meet Clark County Code, Title 30, or previous land use approvals; and that the installation of detached sidewalks will require the vacation of excess right-of-way and granting necessary easements for utilities,

pedestrian access, streetlights, and traffic control or execute a License and Maintenance Agreement for non-standard improvements in the right-of-way.

Clark County Water Reclamation District (CCWRD)
  • Applicant is advised that a Point of Connection (POC) request has been completed for this project; to email sewerlocation@cleanwaterteam.com and reference POC Tracking #0305-2023 to obtain your POC exhibit; and that flow contributions exceeding CCWRD estimates may require another POC analysis.

**ITEM NO. 19** VS-23-0575-COUNTY OF CLARK (AVIATION):
VACATE AND ABANDON easements of interest to Clark County located between Rainbow Boulevard and Tenaya Way, and between Post Road and Patrick Lane, a portion of right-of-way being Patrick Lane located between Rainbow Boulevard and Tenaya Way, and a portion of right-of-way being Belcastro Street located between Patrick Lane and Sobb Avenue (alignment) within Spring Valley (description on file). MN/rr/syp (For possible action)

| | |
|---|---|
| **ACTION:** | It was moved by Commissioner Michael Naft, and carried by unanimous vote, that the recommendation (including the approval of Resolution No. R-11-21-23-24) for Agenda Item No. 17 be adopted, and the applications for Item Nos. 18 and 19 be approved subject to staff and Planning Commission conditions. |

CONDITIONS OF APPROVAL –
Comprehensive Planning
  • Satisfy utility companies' requirements.
  • Applicant is advised that the County has adopted a rewrite to Title 30 effective January 1, 2024, and future land use applications, including applications for extensions of time, will be reviewed for conformance with the regulations in place at the time of application; a substantial change in circumstances or regulations may warrant denial or added conditions to an extension of time; the extension of time may be denied if the project has not commenced or there has been no substantial work towards completion within the time specified; and that the recording of the order of vacation in the Office of the County Recorder must be completed within 2 years of the approval date or the application will expire.

Public Works - Development Review
  • Vacation to be recordable prior to building permit issuance or applicable map submittal;
  • Revise legal description, if necessary, prior to recording.
  • Applicant is advised that the installation of detached sidewalks will require the recordation of this vacation of excess right-of-way and granting necessary easements for utilities, pedestrian access, streetlights, and traffic control.

**ITEM NO. 20** ZC-23-0571-I15 MOUNTAIN, LLC:
HOLDOVER ZONE CHANGE to reclassify 49.9 acres from an R-E (Rural Estates Residential) and an R-E (Rural Estates Residential) (AE-60) Zone to an M-D (Designed Manufacturing) and an M-D (Designed Manufacturing) (AE-60) Zone.
WAIVERS OF DEVELOPMENT STANDARDS for the following: 1) modified driveway design; 2) waive street dedication; and 3) retaining wall height.
DESIGN REVIEWS for the following: 1) office/warehouses and distribution centers; and 2) finished grade. Generally located on the south side of Serene Avenue and the east side of Decatur Boulevard within Enterprise (description on file). JJ/bb/syp (For possible action) (held from November 8, 2023)

| | |
|---|---|
| REAL | Next are Items 20, 21 and 22, which will be heard together. |
| | Item 20 ZC-23-0571: holdover zone change to reclassify 49.9 acres from an R-E Rural Estates Residential Zone and an R-E (Rural Estates Residential) (AE-60) |

**EXHIBIT 3 - 0019**

| | |
|---|---|
| REAL | Zone to an M-D Designed Manufacturing and a M-D Designed Manufacturing (AE-60) Zone. Waivers of development standards for the following: modified driveway design, waive street dedication and retaining wall height. Design reviews for the following: office warehouses and distribution centers and finished grade. Generally located on the south side of Serene Avenue the east side of Decatur Boulevard within Enterprise. |

Item 21 VS-23-0572: holdover, vacate and abandon easements of interest to Clark County located between Serene Avenue and Silverado Ranch Boulevard, in between Decatur Boulevard and Arville Street. A portion of right-of-way being Meranto Avenue and located between Decatur Boulevard and Arville Street. A portion of right-of-way being Ullom Drive located between Gary Avenue and Richmar Avenue. A portion of right-of-way being Decatur Boulevard located between Richmar Avenue and Serene Avenue. A portion of right-of-way being Serene Avenue located between Decatur Boulevard and Arville Street. Then a portion of right-of-way being Gary Avenue between Decatur Boulevard and Arville Street and a portion of right-of-way being Richmar Avenue located between Decatur Boulevard and Arville Street within Enterprise.

Item 22 TM-23-500121: holdover tentative map consisting of one industrial lot on 49.9 acres in a M-D Designed Manufacturing and a M-D Designed Manufacturing (AE-60) Zone. Generally located on the south side of Serene Avenue and the east side of Decatur Boulevard within Enterprise.

| | |
|---|---|
| GIBSON | Good afternoon, Mister Gronauer. |
| BOB GRONAUER | Good afternoon, Mister Chairman and Commissioners. My name's Bob Gronauer, 1980 Festival Plaza Drive. I'm here representing the property owners on these three matters. I'd like to get your attention to the overhead so I can explain where the property is located, and I can get into the application itself. As you can see here where it's highlighted in site, we have approximately 50 acres of property that was purchased through the Department of Aviation and the auction. The property is deed restricted for non-residential uses. Up to the north here is Serene Avenue. Over here on the west side is Decatur Boulevard. Further down on the site here is Silverado Ranch Boulevard and this green area here just to get you a little bit more familiar with the area is the Armory location, which is right here off of Arville and Serene. This green area is the existing armory. |

This whole area here highlighted in blue is for business employment uses, which we are coming in with a conforming zone change to your land plan. We want to thank your staff for recommending approval. They've worked really hard with our consultants.

This was on the consent agenda recommended for approval, but I'll highlight a few other things here. I know there's some neighbors that want to speak on the matter. Just to give you a little bit of an idea of what we're proposing here. We have 10 industrial buildings. It's approximately 748,000 square feet spread across the 10 buildings. One of the unique things about representing this industrial project and working with your staff, we've doubled the amount of trees that are actually required by code on the property. What's required is supposed to be approximately 541 trees. We're proposing over 1,083 trees on the property that we're proposing

**EXHIBIT 3 - 0020**

GRONAUER

here.

Working with staff, we've worked on the throat depths. They're recommending approval of all the throat depths. We've worked very hard with them to make sure they're in support of them. We do have a vacation of an application of some of the roadways and patent easements. There are some neighbors here who want to speak about the vacation application. I'll get into a little bit more after they speak, but generally speaking we are asking to vacate. There's Cameron alignment that's located in this area that goes north and south and Ullom in this area that goes north and south. Both roadways are not needed. We've worked with Public Works on that as far as right-of-ways in the area here and they're recommending approval.

One thing that I want to focus on before I turn this over to some of the neighbors. We've been working with a group of neighbors that live up on Serene Avenue. The neighbors are located up here. This is a northern part of our development. The reason why I want to focus on that is I'd like to propose some conditions, sent them over to your staff and to the neighbors so they're aware of the conditions. There's one clarification though on a condition working with Sami last night. I got to make a change on a condition, but the first thing that I want to point out that's important with the neighbors because I want to thank Mark Ulrich and TJ Lavin. They've worked not only with me but with my clients also they've met. We've had numerous of conversations and yesterday we met again to try to make sure we could shore up all the conditions.

The first condition that we'd like to add is, it states that the developer will work with the northern property owners on Serene Avenue for the placement of evergreen trees along the northern boundary of the property to be placed on two rows staggered, 10 feet on center. This is this area here of the development that we're discussing. Mister Ulrich lives in here and Mister Lavin and some of the neighbors live in these areas here, so I want to make sure that it's known on the record that our clients will be working with them on the placement of trees that back up to the property there.

The second condition is a low-level lighting condition and working with Sami, I had to rewrite that and basically, actually it is coming out of your code but I want to make sure we put that in writing, so the neighbors are comfortable. It states that all onsite lighting shall be designed to prevent light from shining directly onto abutting residential uses. We have wall pack lighting on the industrial buildings. Those are low level lightings that are going to be in compliance with the code, so I want to make sure I put that in there and working with the neighbors. That was one of their concerns.

Another concern that we had a lot of discussion is, this is the northwestern driveway onto Serene, right near Mister Ulrich's house. Working with the neighbors and staff, we are going to remove that driveway going onto Serene, so it's the northwestern driveway on the Serene will be removed, which is the third condition that I wanted to read in.

I have two more conditions. The other one is we will keep the ingress and egress up here on Serene Avenue, however, Condition Number 4 is going to state that the developer will place a sign on a northeastern driveway onto Serene Avenue

GRONAUER

prohibiting truck traffic from making left-hand turns, so it'll be the right-hand turns coming out onto Serene.

Finally, the last condition which was requested by Mister Ulrich is that the developer shall stub utilities and box for the future light closest to the existing residential home on Serene. There will be a streetlight over here somewhere, so we're going to at least stub it and have the box there for future whenever the County would put in a streetlight in that area.

That's pretty much it with respect to the conditions if you're going to approve the application. I know there's some neighbors and I know Mister Ulrich is here to make some additional comments, but overall we were proposing the industrial development as I mentioned earlier, it conforms to the land plan and we wanted to add those conditions in. We're trying to work with the neighbors up on Serene there.

GIBSON

Thank you. This is a public hearing. Anyone wishing to speak on this Item is 20, 21 and 22 is invited to come forward. Please state your name and spell your last name for our clerk and please keep your comments to three minutes.

MICHAEL RICCO

Michael Ricco, R-I-C-C-O. 6655 West Sahara Avenue. I'm a co-owner in the property on the south side of Richmar and the west of the Cameron alignment. I'm reading Colonel Green, Rocky Green. His parcels just in the north of ours. I'm reading his letters. He couldn't be here.

"To whom it may concern, my name is Rocky Green. My domicile is at 4620 West Richmar Avenue in Las Vegas at the northwest corner of Richmar Avenue and Cameron. I'm submitting this letter to present my opinions of the proposed development ZC-23-0571 I-15, concerning Items 20, 21, 22. I'm in favor of the project overall, as long as established development standards are maintained, the project is beneficial to all property holders in the affected area. I'm in favor of the requested zone change for those properties owned by and requested by the applicants. I'm opposed to granting the waivers of the established County development standards."

"According to Title 30, applicant has the burden of proof to establish that the area adjacent to the property being developed will not be adversely affected in a substantially adverse manner. This project has not done so and is currently presented. It's unsafe to the many hundreds of people that will be working, living within the project. Having only one way in and out for hundreds of vehicles including large trucks is a disaster waiting to happen. One distracted driver on cell phone or a truck driver going a little too fast can easily close the one proposed entry, exit point to the project, restricting access, exit to all traffic including emergency services. During my 32 plus years as a professional logistician planner and commanding officer in the U.S. Marine Corps, I authored the fire safety and casualty evacuation plan that the First Marine Expeditionary Force implemented for the port of Al Jubail, Saudi Arabia for operations Desert Shield, Desert Storm through all phases of what was Gulf War one from August 1993 to the conclusion and final retrograde. Authored over 30 such plans that were repaired for exercises or major operations around the world."

"Recently saw 115 people in Lahaina, Maui, Hawaii burned to death. Most were in

| | |
|---|---|
| RICCO | their vehicles trying to escape a fire there when they had two major exits and were trapped. This project needs a minimum of three points of entry exit that were public streets controlled and maintained by the County to ensure the safety of everyone that will be working or conducting business in the development. With the current proposed entrance exit being on Decatur, traffic will be exiting the development and turning left will be held up, creating a backlog of vehicles attempting to exit. There should be one controlled exit onto Decatur from Richmar Ave, one exit onto Silverado Ranch Boulevard from Ullom through to Richmar Avenue and Cameron should go through from Gary to Serene. This will provide people within the development with more means of exit during an emergency. It'll also reduce the traffic backlog exit to Decatur from Richmar." |
| | "The applicant stated to me that phase three of this project could be at least three to five years away or even as long as 10 years. Wiser emergency urgency to abandon the County's right of way to Cameron and Ullom now other than to provide the applicant guaranteed concessions for the political contributions they have made to some members of this Board. Please put the safety and lives of all the people that will be working or living inside this development above the financial gains of the applicants who will still make millions and millions of dollars every month, even with adherence to proper development and safety considerations in place. Thank you for your time. Thank you very much. Rocky Green." |
| TONY RICCO | Anything to say? |
| M. RICCO | I agree with Colonel Green per Title 30, the onus is on the applicant to provide burden of proof that none of the neighbors are being harmed even in a financial way and I'll leave it at that. |
| GIBSON | Thank you. |
| M. RICCO | Thank you. |
| T. RICCO | Tony Ricco, 6655 West Sahara. I co-own three parcels. This one here and these two at the end of Gary next to the Army base right here. I just want to read into the record, because we believe as property owners in this area that we are being, per Title 30, and I quote, "substantially adversely" end quote, affected. It says this, "The waiver of development standards, according to Title 30, the applicant shall have the burden of proof established to establish that the proposed request is appropriate for its existing location by showing that the uses of the area adjacent to the property included in the waiver of development standards request will not affect in a substantially adverse manner. The intent and purpose of a waiver of development standards is to modify a development standard where the provision of an alternative standard or other factors which mitigate the impact of the relaxed standard may justify an alternative." |
| | Now, we've been in discussions with Colonel Green of these three pieces to do a joint development. Similar uses, perhaps same tenant, possibly separate tenants, but what we need to have in this neighborhood is we need to have our ingress egress from these two pieces on Gary to these two pieces on Richmar along the west side of the alignment of Cameron Street. I've done the measurements; it is about 680 feet from this point to this point here. If I have to go from these properties out here that |

**EXHIBIT 3 - 0023**

RICCO

we're looking at developing at the same time by the way, I'd have to go down here to Gary, up here, up to Decatur, turn down Richmar and come down. That's about a 3,300-foot trip. That's 5/8 of a mile. If I go from here to here, it's 1/8th of a mile. I literally have to go 400% further, four times further going around this way, leaving the neighborhood, coming back into the neighborhood and then in order to get from here, I have to come out here to Decatur and Richmar. I don't know if there's going to be a controlled intersection. I didn't read that in the application, it should be addressed. Left-hand turn on Gary and then a left-hand turn onto Gary to come back to our properties down here. If we develop these at the same time, we're looking at going all the way around with our construction equipment and all this. We want to have Cameron fully dedicated, improved here and we're willing to dedicate on our eastern side. Colonel Green is willing to dedicate on his eastern side as well and as the letter, it had to be read that quickly because Colonel Green wanted everything stated in the record and we did that. He's with family for the holidays in Texas.

But what he wants is he's willing to go ahead and have this dedicated here and he wants the ingress and egress from three points from his standpoint, from his experience in the Marine Corps with logistics, this point of ingress egress, this point of ingress egress and this point of ingress egress for emergency purposes and what have you.

By the way, I challenge anyone of the applicant's team to show where I'm not burdened. If the tables were turned and I owned everything in pink and they owned these four parcels and they said what I just said, I'd be like, "That's a reasonable burden. You just demonstrated to us that you're adversely affected." So, if Bob wants to get up here and show me how I'm not adversely affected, you can have the rest of my time, Bob. Talking to you. Show me.

GIBSON

This is a time for you to address us, not anyone else.

T. RICCO

I'm done. Thank you.

GIBSON

Alright. Is there anyone else who wishes to speak on these items?

FRANK JAMES

Good afternoon, Frank James, 7441 South El Capitan Road, Windmill Development. I have been in negotiations with Tony Ricco and his partners for these three parcels. Looking to start negotiations with Rocky Green. Tony alluded to joining the three parcels. I am the representative of the purchase of these three parcels. As Tony, Mister Ricco explained by taking away Cameron, Ullom, it's creating a burden to get between the two parcels between the four parcels, three that we come to a mutual agreement on as far as a purchase. The group that I am with has expressly stated that if the Board here decides to not be concerned about private property owners and take away their access rights, then our offer is null and void. We will not purchase to develop because there'll be an unfair burden for our development to tie in those three, possibly four parcels.

Makes absolutely no sense and it's all just because the applicant wants to do a larger building of between 50 plus, 65 acres, plus or minus development, to be able to create as much more space as possible at the detriment to four parcels to the private sector. I request that you do not vacate and abandon Cameron or on Ullom. That

**EXHIBIT 3 - 0024**

| | |
|---|---|
| JAMES | you leave them as they're intended to service private property owners, not the greed and the need for the one self-serving development. Thank you. |
| GIBSON | Thank you. Is there anyone else who wishes to speak on these items? There being no one. You're coming down to speak? No. Okay. Commissioner Jones. |
| JONES | Thank you, Mister Gronauer. Did you want to address anything that was stated? |
| GRONAUER | Just quickly for clarification, the property owners, not the neighbors, the property owners that own this parcel, this parcel and this parcel that spoke in opposition. Respectfully, those are separated properties by about 330 feet. You're not going to build a cohesive development. That's when you have properties that are abutting. If anything, we are going to make improvements on Richmar Avenue to have access that comes in and out onto Decatur Boulevard. I did want to make that clarification, but at the end, again, we have worked very hard with your staff. We're putting a ton of landscaping in this area to meet your goals and policies for sustainability to make sure you remove that urban heat island effect. |
| | We've worked hard with our neighbors who are actually residents who live up here on Serene. We wanted to make sure we put those conditions in. We do have access on Serene, we have ample access on Decatur and we're going to also have access that's going to come through in this existing - these two buildings here on this property because the property owners that I represent here own this development right here, so they'll have cross access also coming out to Silverado Boulevard. So, there's any concerns with circulation in this area, I believe we've addressed it and we've been working with Public Works on that. |
| JONES | Thank you, Mister Gronauer. Mister Papazian, can you just comment on with regards to vacation on Ullom, it is only on the parcels that are on for application today. It is not for the stretch of Ullom from Gary to Silverado Ranch, correct? |
| ANTONIO PAPAZIAN | Thank you, Commissioner. That is correct. |
| JONES | Okay. So, if there's future development along Ullom, south of Gary, then certainly that could continue and there could be additional exits along Ullom to Silverado Ranch? |
| PAPAZIAN | Correct. |
| JONES | Okay. With regards to Cameron Street, do I understand it correctly that Cameron was already vacated where the building was built along Silverado Ranch to the south and also to the North? |
| PAPAZIAN | Commissioner, we've lost - we've never had Cameron. The alignment exists as the Cameron alignment. The only piece of dedication we had along Cameron was next to the private owner that vacated in 2010. |
| JONES | Okay. Colonel Green that was referenced - |
| PAPAZIAN | That is correct. |

**EXHIBIT 3 - 0025**

| | |
|---|---|
| JONES | - that he has not dedicated the right-of-way? |
| PAPAZIAN | He's the only one that we actually had the dedication from and he's the one who was the applicant to the vacation of Cameron Street in 2010. |
| JONES | Okay. Alright. I certainly understand the concerns that have been raised, however, there are more than sufficient access to the parcels that have identified and certainly with regards to one of the two parcels, it is surrounded on three sides by the National Guard Armory. I don't know how a developer would've ever thought that they would have exit other than to the west and there are non-contiguous parcels so you have no guarantee that there's going to be crow flies access between two non-contiguous parcels. With that, I'll go ahead and move for approval of Agenda Items Number 20, 21 and 22 with the additional conditions that have been stated by Mister Gronauer today. |
| GIBSON | There's a motion for approval with the additional conditions we've heard. Is there any discussion on the motion? Please cast your votes. Motion carries. Thank you. |
| GRONAUER | Thank you and have a good afternoon. |
| **ACTION:** | It was moved by Commissioner Justin Jones, and carried by unanimous vote, that the applications for Item Nos. 20, 21, and 22 be approved subject to staff and additional conditions. |

CONDITIONS OF APPROVAL –
Comprehensive Planning
• No Resolution of Intent and staff to prepare an ordinance to adopt the zoning;
• Developer will work with the northern property owners on Serene Avenue for the placement of Evergreen trees along the northern boundary of the property to be placed in 2 rows staggered 10 feet on center;
• All on-site lighting shall be designed to prevent light from shining directly onto abutting residential uses;
• Enter into a standard development agreement prior to any permits or subdivision mapping in order to provide fair-share contribution toward public infrastructure necessary to provide service because of the lack of necessary public services in the area;
• Certificate of Occupancy and/or business license shall not be issued without final zoning inspection.
• Applicant is advised that the installation and use of cooling systems that consumptively use water will be prohibited; the County has adopted a rewrite to Title 30 effective January 1, 2024, and future land use applications, including applications for extensions of time, will be reviewed for conformance with the regulations in place at the time of application; a substantial change in circumstances or regulations may warrant denial or added conditions to an extension of time; the extension of time may be denied if the project has not commenced or there has been no substantial work towards completion within the time specified; and that the waivers of development standards and design reviews must commence within 4 years of approval date or they will expire.

Public Works - Development Review
• Drainage study and compliance;
• Drainage study must demonstrate that the proposed grade elevation differences outside that allowed by Section 30.32.040(a)(9) are needed to mitigate drainage through the site;
• Traffic study and compliance;
• Full off-site improvements;
• The northwestern driveway onto Serene Avenue will be removed;
• Developer will place a sign at the northeastern driveway onto Serene Avenue prohibiting truck traffic from making left hand turns;

• Developer shall stub utilities and box for the future street light closest to the existing residential home (APN 177-19-302-003) on Serene Avenue;
• Right-of-way dedication to include 55 feet to the back of curb for Richmar Avenue and a County approved cul-de-sac;
• Right-of-way area on Richmar Avenue east of APN 177-19-499-018 is to be privately maintained;
• 30 days to coordinate with Public Works - Design Division and to dedicate any necessary right-of-way and easements for the Decatur Boulevard improvement project.
• Applicant is advised that approval of this application will not prevent Public Works from requiring an alternate design to meet Clark County Code, Title 30, or previous land use approvals; that the installation of detached sidewalks will require dedication to back of curb, the vacation of excess right-of-way and granting necessary easements for utilities, pedestrian access, streetlights, and traffic control; and that future Capital Improvement Project (CIP) will prohibit left in/ left out along the Richmar Avenue alignment.

Clark County Water Reclamation District (CCWRD)
• Applicant is advised that a Point of Connection (POC) request has been completed for this project; to email sewerlocation@cleanwaterteam.com and reference POC Tracking #0307-2023 to obtain your POC exhibit; and that flow contributions exceeding CCWRD estimates may require another POC analysis.

**ITEM NO. 21** VS-23-0572-I15 MOUNTAIN, LLC:
HOLDOVER VACATE AND ABANDON easements of interest to Clark County located between Serene Avenue and Silverado Ranch Boulevard, and between Decatur Boulevard and Arville Street; a portion of right-of-way being Meranto Avenue located between Decatur Boulevard and Arville Street; a portion of right-of-way being Ullom Drive located between Gary Avenue and Richmar Avenue; a portion of right-of-way being Decatur Boulevard located between Richmar Avenue and Serene Avenue; a portion of right-of-way being Serene Avenue located between Decatur Boulevard and Arville Street; a portion of right-of-way being Gary Avenue between Decatur Boulevard and Arville Street; and a portion of right-of-way being Richmar Avenue located between Decatur Boulevard and Arville Street within Enterprise (description on file). JJ/bb/syp (For possible action) (held from November 8, 2023)

**ACTION:**                          It was moved by Commissioner Justin Jones, and carried by unanimous vote, that the applications for Item Nos. 20, 21, and 22 be approved subject to staff and additional conditions.

CONDITIONS OF APPROVAL –
Comprehensive Planning
• Satisfy utility companies' requirements.
• Applicant is advised that the County has adopted a rewrite to Title 30 effective January 1, 2024, and future land use applications, including applications for extensions of time, will be reviewed for conformance with the regulations in place at the time of application; a substantial change in circumstances or regulations may warrant denial or added conditions to an extension of time; the extension of time may be denied if the project has not commenced or there has been no substantial work towards completion within the time specified; and that the recording of the order of vacation in the Office of the County Recorder must be completed within 2 years of the approval date or the application will expire.

Public Works - Development Review
• Right-of-way dedication to include 55 feet to the back of curb for Richmar Avenue and a county approved cul-de-sac;
• Right-of-way area on Richmar Avenue east of APN 177-19-499-018 is to be privately maintained;
• Vacation to be recordable prior to building permit issuance or applicable map submittal;
• Revise legal description, if necessary, prior to recording.
• Applicant is advised that approval of this application will not prevent Public Works from requiring an alternate design to meet Clark County Code, Title 30, or previous land use approvals; and that the installation of detached

**EXHIBIT 3 - 0027**

sidewalks will require dedication to back of curb, recordation of the vacation of excess right-of-way and granting necessary easements for utilities, pedestrian access, streetlights, and traffic control.

**ITEM NO. 22** TM-23-500121-I15 MOUNTAIN, LLC:
HOLDOVER TENTATIVE MAP consisting of 1 industrial lot on 49.9 acres in an M-D (Designed Manufacturing) and an M-D (Designed Manufacturing) (AE-60) Zone. Generally located on the south side of Serene Avenue and the east side of Decatur Boulevard within Enterprise. JJ/bb/syp (For possible action) (held from November 8, 2023)

**ACTION:**                    It was moved by Commissioner Justin Jones, and carried by unanimous vote, that the applications for Item Nos. 20, 21, and 22 be approved subject to staff and additional conditions.

CONDITIONS OF APPROVAL –
Comprehensive Planning
    • Applicant is advised that the County has adopted a rewrite to Title 30 effective January 1, 2024, and future land use applications, including applications for extensions of time, will be reviewed for conformance with the regulations in place at the time of application; a substantial change in circumstances or regulations may warrant denial or added conditions to an extension of time; the extension of time may be denied if the project has not commenced or there has been no substantial work towards completion within the time specified; and that a final map for all, or a portion, of the property included under this application must be recorded within 4 years or it will expire.

Public Works - Development Review
    • Drainage study and compliance;
    • Drainage study must demonstrate that the proposed grade elevation differences outside that allowed by Section 30.32.040(a)(9) are needed to mitigate drainage through the site;
    • Traffic study and compliance;
    • Full off-site improvements;
    • Right-of-way dedication to include 55 feet to the back of curb for Richmar Avenue and a County approved cul-de-sac;
    • Right-of-way area on Richmar Avenue east of APN 177-19-499-018 is to be privately maintained;
    • 30 days to coordinate with Public Works - Design Division and to dedicate any necessary right-of-way and easements for the Decatur Boulevard improvement project.
    • Applicant is advised that approval of this application will not prevent Public Works from requiring an alternate design to meet Clark County Code, Title 30, or previous land use approvals; that the installation of detached sidewalks will require dedication to back of curb, the vacation of excess right-of-way and granting necessary easements for utilities, pedestrian access, streetlights, and traffic control; and that future Capital Improvement Project (CIP) will prohibit left in/ left out along the Richmar Avenue alignment.

Clark County Water Reclamation District (CCWRD)
    • Applicant is advised that a Point of Connection (POC) request has been completed for this project; to email sewerlocation@cleanwaterteam.com and reference POC Tracking #0307-2023 to obtain your POC exhibit; and that flow contributions exceeding CCWRD estimates may require another POC analysis.

**ITEM NO. 23** ZC-23-0665-WHTBX DECATUR, LLC:
ZONE CHANGE to reclassify 1.0 acre from a C-2 (General Commercial) (AE-65) Zone to an M-D (Designed Manufacturing) (AE-65) Zone.
WAIVER OF DEVELOPMENT STANDARDS to reduce parking.
DESIGN REVIEW for an office/warehouse facility on 4.4 acres in an M-D (Designed Manufacturing) (AE-65) Zone. Generally located on the northeast corner of Decatur Boulevard and Post Road within Paradise (description on file). MN/sd/syp (For possible action)

ACTION:                          Deleted from the agenda (held to January 17, 2024 per the applicant).

**ITEM NO. 24** VS-23-0666-WHTBX DECATUR, LLC:
VACATE AND ABANDON easements of interest to Clark County located between Decatur Boulevard and Cameron Street and between Post Road and Sobb Avenue, and a portion of right-of-way being Post Road between Decatur Boulevard and Cameron Street, and a portion of right-of-way being Decatur Boulevard between Sobb Avenue and Post Road within Paradise (description on file). MN/sd/syp (For possible action)

ACTION:                          Deleted from the agenda (held to January 17, 2024 per the applicant).

**ITEM NO. 25** ORD-23-900186: Conduct a public hearing on an ordinance to consider adoption of a Development Agreement with William Lyon Homes Inc. for a single-family residential development on 8.9 acres, generally located north of Shelbourne Avenue and west of Decatur Boulevard within Enterprise. JJ/jm (For possible action)

ACTION:                          It was moved by Commissioner Tick Segerblom, and carried by unanimous vote, that the recommendation (including the adoption of Ordinance No. 5084) be approved.

**ITEM NO. 26** ORD-23-900438 HOLDOVER: Conduct a public hearing on an ordinance to consider adoption of a Development Agreement with Jose Avila for a single-family residential development on 0.9 acres, generally located south of Levi Avenue and west of Haven Street within Enterprise. MN/jm (For possible action)

ACTION:                          It was moved by Commissioner Tick Segerblom, and carried by unanimous vote, that the recommendation (including the adoption of Ordinance No. 5085) be approved.

**ITEM NO. 27** ORD-23-900542: Conduct a public hearing on an ordinance to amend the official zoning map reclassifying certain properties as approved by the Board of County Commissioners through various zone change applications on August 16, 2023, September 6, 2023, September 20, 2023 and in Assessors Book 176. (For possible action)

ACTION:                          It was moved by Commissioner Tick Segerblom, and carried by unanimous vote, that the recommendation (including the adoption of Ordinance No. 5086) be approved.

**ITEM NO. 28** ET-23-400129 (UC-0568-14)-ALL NET LAND DEVELOPMENT, LLC:
HOLDOVER USE PERMITS FOURTH EXTENSION OF TIME to commence the following: 1) a High Impact Project; 2) a recreational facility (a multi-function events arena) and incidental uses; 3) increased building height; 4) retail sales and service; 5) restaurants; 6) on-premises consumption of alcohol; 7) alcohol sales, beer & wine - packaged only; 8) alcohol sales, liquor - packaged only; 9) outdoor live entertainment; 10) personal services (salon and spa); 11) club; 12) nightclub; 13) food carts/booths; 14) grocery store; 15) kiosks/information (outdoor); 16) offices; 17) theater (Cineplex); 18) outside dining, drinking, and cooking; 19) farmer's markets; 20) arcade; and 21) motion picture production/studio. WAIVERS OF DEVELOPMENT STANDARDS for the following: 1) reduced setback to a parking structure from a residential use; 2) waive the required landscaping when adjacent to a less intensive use; 3) permit a variety of outdoor commercial/retail uses not within a permanent enclosed building; and 4) non-standard improvements (fences/walls, planters, and landscaping) within the future right-of-way (Las Vegas Boulevard South).
DESIGN REVIEWS for the following: 1) a recreational facility (multi-function events arena) with ancillary uses and structures and overall site design; 2) hotel; 3) retail establishments; 4) theater (Cineplex); and 5) parking structures on 27.0 acres in an H-1 (Limited Resort and Apartment) Zone. Generally located between Las Vegas Boulevard South and Paradise Road, 900 feet south of Sahara Avenue within Winchester. TS/tpd/syp (For possible action) (held from

**EXHIBIT 3 - 0029**

November 8, 2023)

| | |
|---|---|
| REAL | Commissioners, next are Items 28 and 29. However, we recommend based on our understanding that there's going to be a lengthy presentation that we move 28 and 29 to the end of the agenda and then therefore proceed with item 30. |
| GIBSON | That's what we'll do. We'll hold 28 and 29 until the end of the agenda. |

***ITEM NOS. 28 AND 29 WERE HEARD AFTER ITEM NO. 39***

| | |
|---|---|
| REAL | Commissioners, this takes us back to items 28 and 29. |
| | Item 28, ET-23-400129, holdover use permits, fourth extension of time to commence the following: a High Impact Project, a recreational facility, a multi-function events arena, and incidental uses. Increased building height, retail sales and service, restaurants, on-premise consumption of alcohol, alcohol sales, beer and wine package only alcohol sales, liquor package only, outdoor live entertainment, personal services, salon and spa, a club - nightclub, food carts and booths, grocery store, kiosks, information, outdoor offices, a theater, Cineplex, outdoor dining, drinking and cooking, farmer's markets, arcade and motion picture production studio. Waivers of development standards for the following: reduce setback to a parking structure from a residential use. Waive the required landscaping when adjacent to a less intensive use. Permit a variety of outdoor, commercial retail uses not within a permanent enclosed building, and non-standard improvements, fences, walls, planters and landscaping, within the future right-of-way of Las Vegas Boulevard South. Design reviews for the following: a recreational facility, a multifunction events arena with ancillary uses, structures and overall site design, hotel, retail establishments, theater cineplex and parking structure on 27 acres in an H-1 (Limited Resort and Apartment) Zone. Generally located between Las Vegas Boulevard South and Paradise Road, 900 feet south of Sahara Avenue within Winchester. |
| | And then Item 29, ET-23-400128, holdover use permits third extension of time to commence the following: modifications to an approved high impact project, All Net arena and convention facilities, exposition halls. Waivers of development standards for the following: reduced on-site parking and increased building height. Design reviews for the following: modifications to an approved High Impact Project, hotel tower and associated low-rise and mid-rise buildings and structures. Convention center facilities and all other accessory and incidental buildings and structures on 27 acres in an H-1 (Limited Resort and Apartment) Zone. Generally located between Las Vegas Boulevard South and Paradise Road, 900 feet south of Sahara Avenue within Winchester. |
| GIBSON | Good afternoon, Mister Kaempfer. |
| CHRIS KAEMPFER | Good afternoon. |
| GIBSON | One thing I would note, don't know how many people will want to offer comment, but to the extent that the comments are redundant and have already been provided to us, it's very easy to say, "I agree with what he said." Give us your name and we'll make sure that the record reflects all of that. |

**EXHIBIT 3 - 0030**

KAEMPFER

I understand. Thank you. Good afternoon, Mister Chairman and members of the Commission. I'm Chris Kaempfer here on behalf of the applicant, address, 1980 Festival Plaza Drive. With me in the audience are various members of the All Net team, who are here to both address you and to answer any questions that are appropriate for their consideration.

In November of last year, we appeared before you asking for additional time to commence construction. We received that additional time until September 6th of this year. I said at that past November hearing that additional extension of time would not be required, but much has happened in this last year that I believe merits your consideration, especially since this latest extension of time that I filed in August of this year seeks only a 90-day extension of time. So, in August of this year, we sought to extend the September 6th date to December 6th, 2023, which is two weeks from today, and any approval today would only go until December 6th, 2023 and not beyond that.

And a couple of things I want to mention just initially with regard to that. The Town Board heard this and recommended that it be approved until December 6th, 2023. Candidly, no one benefits from a denial of this extension, no one. Not the applicant, not the many local investors who are part of the All Net project. Not Mister Lowden. Dave Lowden and his group support this extension and have been supporters of this project from the beginning. Not Las Vegas Paving who will be paid as part of this process and would then have to and would be able to forego the foreclosure process.

Over the past 45 years of land use practice here in Clark County, I have represented dozens upon dozens of extensions of time for a myriad of reasons and for a myriad of applicants, some of whom were pursuing their projects very diligently. Some not so much. I can assure you that All Net has been doing anything but sitting still on this project.

Cumulatively, among other things, they have completed all boundary and topography work, and we have an approved traffic study, a completed feasibility study, a completed economic impact study, executed a master labor agreement with the union trades, executed with Clark County and recorded a development and performance agreement, posted a performance bond with Clark County in the amount of more than $12 million. Completed site preparation and demolition work including the removal of spillways, truck wash, all curbing and asphalt, completed site property line verification, pulled permits for temporary power, pulled all required dust permits. Submitted, received comments back and then resubmitted drawings to Clark County on the off-site civil drawings. We have an approved drainage study. A stormwater pollution prevention plan is in place and site inspections have been performed and fees have been paid through 2024. We have removed all billboards on the property in preparation for completing site work. We have drilled four test wells, and the dewatering design was completed and submitted to the Building Department. We have completed and submitted to Clark County the shoring wall design. We have kept active and in full force and effect all FAA approvals on this property. We recorded on December 8th, 2022, the required right-of-way dedication and the pedestrian access easement declaration, and we have recorded the Las Vegas Boulevard record of survey.

**EXHIBIT 3 - 0031**

KAEMPFER

Finally, will not appropriate land use considerations. We feel it is important to advise you that over the past three years, over $14 million have been invested into this development with regard to construction and administrative fees and costs only. That only relates to construction dollars, and importantly, over $6 million of that amount has come in the last year since the extension was approved by you. So, we paid over $6 million since the last extension, and to restate this, over $14 million relates only to construction and administrative fees and costs. It does not represent the total investment that All Net and its many local investors who believe in this project have made. I have been advised that the total monetary investment is in excess of $65 million, $60 million of which is from local business people; people who believe in this development and who have been part of and support this All Net project.

So why, with all this work that has been done and all this money that has been invested, was this or any other extension of time required? Because the County has its own definition of what constitutes commencement of work. Under the code, commence means any one of the following: the actual placing of construction materials in their permanent position fastened in a permanent manner. Two, basement excavation. Three demolition or removal of an existing building or structure preparatory to rebuilding, grading of the site, the recording of a subdivision map, and the sixth one relates to a business permit or license. In follow-up to this definition, it is imperative to note that we are not here to ask for any permits or any extensions of permits. All permits to do the work have been obtained and work has commenced. As noted previously, we've removed four billboards from the property. We have done demolition and site preparation work. We have removed spillways, a truck wash and all curbing and asphalt, and have drilled four test wells. And obviously, we have had work performed on the project which has led to the Las Vegas paving lien, which is presently on the property and which we will be removing.

The grading permit, importantly, the grading permit that was received from the County in August of this year has now been acted upon. The grading contractor has in fact mobilized his employees and equipment and has begun grading the site, which is one of the code determinations of commencement. Mister Thomas Seleaggio has pictures to show you that will confirm the commencement of that grading. So, with the commencement of grading, why are we even here asking for the two weeks when an extension of time technically is no longer required because we've commenced work by commencing grading? Because of the promise we made to the owner of the property and to our Commissioner, Commissioner Segerblom that we would not only commence grading but we would remove the lien that was filed on this property by Las Vegas Paving, a lien for which we have paid Las Vegas Paving the sum of $3.3 million over this last year to allow for extensions of that lien to prevent foreclosure, and we fully intend to have that lien paid and released before that December 6th date.

Finally, as you know, the method of type of project financing does not require any approval or permit from Clark County, and generally, it is not an inquiry this mission even makes, wants to make, or candidly, should make. You don't want to look at each application and say, "Prove to me that you have the ability to get this accomplished." However, we want you to know that a construction loan and a line of credit have been secured for the project. Others will speak to this financing issue,

**EXHIBIT 3 - 0032**

| KAEMPFER | but you will hear that financing has been secured to ensure that this project, now that it has started, will be diligently pursued until completed. And as noted previously, a $12 million performance bond is in place with the County to ensure that performance. |
|---|---|
| | The bottom line is that permits, FAA approvals, all other required approvals are in place and active. Construction financing is in place and construction has commenced and will be diligently pursued until completion. Thank you very much. Mister Thomas Seleaggio will speak next. You can use that. Identify yourself. |
| THOMAS SELEAGGIO | I would like to give these to the Commissioners. |
| KAEMPFER | Alright. It used to be easier. Okay. |
| SELEAGGIO | Good afternoon, Commissioners. I appreciate your time. As Chris mentioned, we have proceeded and commenced - |
| GIBSON | Would you please state your name for the record? |
| SELEAGGIO | Oh, I'm sorry. My name is Thomas Seleaggio. S-E-L-E-A-G-G-I-O. I'm the Vice President of Construction for All Net Development. |
| | As Chris mentioned, we have commenced work under the contract between All Net Resort and Arena and the Building Department. Last Friday, we started the mobilization for the excavation crews. We did that on Friday, we did that on Monday, and today, full operation of grading has commenced. I have pictures which you'll see, head count and equipment types. We have the surveyor out there and we have the third-party testing agency as well. So full activity. Not a piece here, not a piece there, but the full crew to complete the grading as required per the permit that we've been issued. |
| | Sheet two of the narrative- |
| GIBSON | We need you to speak into a microphone, sir. |
| SELEAGGIO | Sheet two of the narrative shows the equipment types, the amount of equipment and the men that are operating the equipment. That is as of today. Below that is the general contractor, which is Lone Mountain Excavation, surveyors, and third-party inspectors as required. |
| | The next sheet is the building permit that we received. |
| KAEMPFER | Grading permit. |
| SELEAGGIO | Grading permit on 10/16/23. This is a picture current of this morning with the types of equipment that are out there being operated, with a breaker and a backhoe with the structures. We have a big D330. There's your grader, your blade grater, your CAT. Your loader, which is required, and then various site pictures showing the work activity taking place at this time. |
| | So, we've commenced, we are surveying, we are excavating, we are grading, and we |

**EXHIBIT 3 - 0033**

| | |
|---|---|
| SELEAGGIO | are removing any obstructions that need to be removed in order to do the grading. |
| KAEMPFER | Thank you. |
| GIBSON | Thank you. |
| SELEAGGIO | Thank you so much. Any questions? |
| KAEMPFER | Our next speaker, and I'll have them - anybody who's going to speak, I'll have them get a little closer here so we're not taking time. So, who's - Torben? Next up is Torben Welch. |
| TORBEN WELCH | Commissioners, good afternoon. My name is Torben Welch with Messner Reeves. Our firm serves as outside business council for the All Net project, primarily out of our Las Vegas office, which is headed up by Renee Finch and Jason Martinez. My role, I'm based in the Salt Lake City, Utah office. My role is financing and international financing side for the project and to help undertake that. And I know financing has been a big important part of this project and you've heard a lot about financing over the years, and in fact, in November when we came, we presented some financing that was in place and through a variety of fraudulent things that happened of no consequence or no fault of All Net or its partner, that turned into something different. So, the partners immediately pivoted and were able to secure financing for this project through assets that they had. That partner is Clearwater Premier Perpetual Master, LLC, and they're an equity partner in this project and they have secured financing on behalf of All Net and have provided $5 billion in an account, an offshore account for the purposes of building this project. |
| | For intents and purposes today, it's a collateral account, meaning that those funds can be utilized to collateralize projects and liens and loans. To fund this project, that is not a U.S.-based account simply because U.S. based accounts don't act as escrow agents and hold that kind of money, but we are in the process of opening up accounts through a tier one institution, HSBC U.S. Those accounts have been opened and HSBC U.K. is where that money will be stored as a collateral basis for a variety of other construction loans and construction lines of credit that we'll talk about a little bit later with some of the other partners that are here with McCann Commercial. |
| | So that financing is in place. It is available to be utilized to secure work on this project and this site, and that has been in place since September. Early September is when that account was funded, and we are working to get those mobilized and moved. That should happen, that will happen in advance of December 6th, so funds will be available to continue construction and get this project building. |
| | Now, that is just one part of the financing side. Like I said, there are additional construction loans and lines of credit that are on top of that. The purpose behind that is very important. Mister Robinson and the All Net team has been very clear that this is not to be a publicly financed project. There's not an ask for public financing here. The goal is to have this actually debt-free at the time that this project opens. So those funds that are in that account that will ultimately be utilized to satisfy a construction loan have been received, and approvals for that have been received that Mister Ed Perez will talk about here momentarily, so that when this project does |

**EXHIBIT 3 - 0034**

| | |
|---|---|
| WELCH | open, there will be no debt on the project. There will be no public financing utilized for the project, and it can be profitable and beneficial from day one. |
| GIBSON | We have a question for you. |
| MARILYN K. KIRKPATRICK | I just want to ask a couple of questions because you're the finance guy. |
| WELCH | Yep, I am. |
| KIRKPATRICK | One, so then are you telling me that all your current construction invoices outstanding are paid up in full? |
| WELCH | That they're in the process of being paid. On the construction side where we haven't, obviously there's a Las Vegas Paving debt. We know that that needs to be done and needs to be paid in full, and as soon as we have the ability to get these funds in, which will happen before December 6th to be able to pay those, it's going to be through the line of credit, again, collateralizing those funds that are there and then have them released, all obligations will be paid in full. |
| KIRKPATRICK | And then let me ask the other question. Being that you guys have a project labor agreement, and you have folks out there, is there certified payroll that shows that they're being paid to their project labor agreements? |
| WELCH | Everybody working on the site today has been prepaid for their work, so to speak. I mean they have been paid in advance for work that's happened- |
| KIRKPATRICK | Prepaid, I never heard of that rule. How do you do that with the Labor Commissioner? |
| WELCH | How do we do that? Well, they've been paid - that portion of the contract that they are working on today has been paid in full, so they're working on payments that have already been paid. So, there will be no debt to the people that are working on site today. Are you talking about the contractors or are you talking about someone else? |
| KIRKPATRICK | Well, honestly, you boast about having a project labor agreement but yet - and then you have outstanding debt that you've got to get paid. |
| WELCH | Correct. |
| KIRKPATRICK | And then so I'm asking, one, are you complying with your own project labor agreement for those people that are out there today? And you're saying no that these people have been prepaid and there'll be no debt at the end of the day. |
| WELCH | Yeah, I'm not going to talk to the project labor agreement. That's not my area of expertise on that one. |
| KIRKPATRICK | I know, but you pay the bill so you should know if it's certified public - |
| WELCH | I raise the financing, and the financing we have is in place today to have people working on the site today, and there will be no debt obligation when they're done. |

| | |
|---|---|
| KIRKPATRICK | Okay, thank you. |
| WELCH | No mechanic lien from that. |
| ED PEREZ | Mister Chairman, members of the Commission, good afternoon. Ed Perez representing McMahon Capital. I'm here today to, as a former Commissioner myself, and I do appreciate this dais and the work that you put into the programs throughout Las Vegas. My background does stem from commissioning budget and financing, 1.6 billion for the City of Anaheim, Planning Commission for the Kennedy Commission on Housing, sub-utility commissions for the City of Anaheim, redevelopment agencies I've worked with over the past. And now segue into the finance, commercial bond financing and platform markets, my understanding and appreciation comes with hard work in programs of this caliber. I understand the process, I understand the tenure and the involvements that it takes. But today, I'm here. I believe my colleague, Michael Lanza, is on call. I believe he's set up for the Zoom call in case we have additional questions. But we are here facilitating the line of credit with our investor partners. We use our relationships with family office private equity and hedge funds. Our investor partner alone, one has over 34 years of proven track record with over $500 billion under management. Through our process, we're able to provide proof of funds when we work with our clientele. |
| | At this time, we are here to make the commitment to Mister Robinson, which has been approved for $5 billion in funding and also for a letter of credit based on the channels with the HBSC Bank of the U.K. We are working with that instrument in play. We're here to support and ensure, moving forward within our timelines, to provide the support that this team needs. Many of our investors are appreciating the program. Through our program, we do appreciate the fact that it meets the economic benefit for the jobs, the creation, and the overall expansion of this project. So, with that in mind, I don't know if Mister Lanza is on the line or call. If staff or someone could channel him, we would appreciate that. |
| MICHAEL LANZA | Can you hear me? |
| GIBSON | We can hear you. |
| LANZA | Okay. |
| GIBSON | Your name is - state your name please, for the record. |
| LANZA | My first name is Michael. The last name is Lanza, spelled L-A-N-Z-A. I'm also with McMahon Capital. Ed and I have both worked on this project. As Torben alluded to, the funds, the $5 billion are in an account under Triple Dunks Management in Mexico, in a bank in Monterrey, Mexico. And forgive me if I mispronounce this, but I believe it's Fides is the bank. We partnered with one of our investor partners to provide Mr. Robinson a $750 million line of credit. Because of the fact of where the funds are domiciled, they did require him to establish an account with a tier one bank. He chose to use HSBC London, which was in agreement with our investor partner. He is in the process of setting that account up. The line of credit has been approved. Once the account is open, we will provide the |

**EXHIBIT 3 - 0036**

| | |
|---|---|
| LANZA | investor partner with the information to verify real time that the account is open. The only other condition is to verify real time that the funds are still where they were domiciled when they were originally represented. |
| | Once those two things are accomplished, Mister Robinson will be made available the first a $100 million of a $750 million credit line, which will allow him to take care of his existing Las Vegas paving bill, and I believe there are some other small bills, some site work and some approvals that need to be renewed or something. I apologize. I don't have documents in front of me right now. Once the funds are moved from the Fides account into his HSBC London account and blocked in favor of the lender, the investor group that we're working with, then he will be made available the full $750 million. At that point, it would be his to use as he will. |
| | Part of the reason for using the line of credit was the landowner, Mister David Lowden, is looking to do a 1031 exchange, and he has not as of yet set that up. So, we had to avail Mister Robinson of some flexibility in reference to those funds. That's why we chose a credit line. Part of the conditions of the credit line will be to pay off the land purchase. Once the land purchase is actually completed, then we can issue our commitment on the construction loan, which will allow him to begin construction at his pace based upon the funding of the actual construction loan. The credit line will remain in place for the next five years guaranteed by $1.5 billion, block in favor of the lender in HSBC London. He will have the opportunity at the end of those five years to renew and reuse the line of credit if he chooses to. Otherwise, he can just pay it off. |
| | That's basically where we stand as far as the financing of both the credit line and the construction loan. If there are any questions, I'm more than happy to answer them. |
| GIBSON | Thank you, sir. |
| ROSS MILLER | One question, Mister Chairman. Could you please spell the name of the bank in Monterey, Mexico? I wasn't clear on that pronunciation. |
| LANZA | F as in Frank, I as in indigo, D as in Dominic, E as in Edward, S as in Sam. |
| GIBSON | Thank you very much. |
| LANZA | The reasoning behind going to the HSBC London, just so you understand, is the bank that the funds are in were where the funds landed when the funds were generated, but unfortunately, it is more of a regional bank. It's not necessarily what you'd call a tier one bank, and the investor group we partnered with had asked us to make sure that it would be moved to a tier one bank. Of course, their preference was HSBC London, and Mister Robinson, as diligently as he can, is in the process of establishing that account. As I said, once the account is open and can be real time verified and once the funds are verified at the same time, he will be made available an initial outlay of $100 million. Once the funds, the $1.5 billion, lands in the HSBC account and are blocked in favor of our investor group that we're working with, then he will be made available to full $750 million, which then in turn will allow him to purchase the land at a purchase price of $416 million. |
| GIBSON | Thank you very much. And thank you sir. |

| | |
|---|---|
| PEREZ | Chairman, thank you. |
| GIBSON | Now, Mister Kaempfer, as you can tell, I'm treating this as presentation so we need to be as direct and move through this as fast as we possibly can. We understand you need to be thorough because there's a record here, but - |
| KAEMPFER | I appreciate that and I will. I understand we have another gentleman on the line who would like to speak. I would like to let Commissioner Kirkpatrick know that I confirmed that this is in fact a union contractor who's working under an appropriate union contract. So anyway, who is it? Don Wright. Are you on the line, Don? |
| GIBSON | What's the name? |
| KAEMPFER | Don Wright. |
| GIBSON | Like W-R-I-G-H-T? |
| KAEMPFER | Yes. |
| DON WRIGHT | That is correct. |
| KAEMPFER | Don? |
| WRIGHT | Can you hear me? |
| GIBSON | Yes. |
| KAEMPFER | Yes. |
| WRIGHT | Okay. Thank you, Commissioners. My name is Don Wright. I'm Chairman and CEO of SIS or Special Intelligence Service. I've known Jackie, or Mister Robinson, for over ten years. We were asked in the past to come in by the U.S. State Department to see if we could help Jackie in a number of different ways, which we do all the time. We provide different types of physical security, fund security, background checks, cybersecurity, and all of that. And so, what we've done is also on the phone with me is Mister Vega. He's my Executive Vice President. We basically go out and make sure the funds are real. They are where they say they are. They're fungible. They're clean. There's no cartel activity or terrorist activity, and that's what we've done. We found in doing that that the $5 billion aforementioned is real. It is where it's supposed to be. It is clean money. As a consequence to that, they have set up the account at HSBC. They have made myself and Luis the mandate so that we can confirm all of that, so that we can set up accounts and sign paperwork in regards to that. Right now, we're in the process of working with them to get the account set up, and I would say that the HSBC account in U.S. is just that. The one that's happening that we're putting together in London, is - it's not an approval process, it's just a process of getting. That's already been done in the U.S. of getting the other account set up. It took a little bit longer because of the problems with the Israeli and all of the different protests going on over there, which I'm sure you've all seen, but it's well on the way now. Everything is scheduled to be done in less than two weeks or so, and once that account's done, the money should move within 48 hours. Luis- |

**EXHIBIT 3 - 0038**

| | |
|---|---|
| GIBSON | Sir, you have – you have documentation available to you that demonstrates what you have just said? |
| WRIGHT | Yes, I believe we do. |
| GIBSON | Okay. |
| WRIGHT | Luis if I could, Mister Vega is on the line as well. I actually put him in touch with the people to go ahead and confirm the funds. Luis? |
| LUIS VEGA | This is Luis - |
| GIBSON | Wait. Excuse me. What we've done here is we've extended the time so that those proofs might be made available to us, not among people that we don't know about. That kind of leaves us where we were a year ago. You're telling us that the money is available, and it is in various banks subject to various banking instruments. We've heard that kind of thing, and it sounds like this is a bit different in terms of its structure, and I am not really sure that we understand what that structure is. We don't need to know that. |
| | What we really had hoped for is that with the additional time there would be money in accounts that are available for the applicant to then begin to pay things, and we're still hearing that the money's out there, but it is not under his control. It is under the control of others subject to activities that need to happen, and they can all happen in a two-week period. So, that's my - I'm exposing some concerns that I have, but I don't think we need to have another witness who orally can present his view that the money is all available and it's where it needs to be. We've heard that. We have no reason to question that. It's just not what we were hoping to see. |
| WRIGHT | Mister Chair? |
| GIBSON | Do you have others who are going to offer testimony, Mister Kaempfer? |
| WRIGHT | I think Torben has that paperwork Mister Chairman. The attorney. |
| GIBSON | Alright. Well, we would've liked to have seen it. Sir? |
| OWEN JACKSON | Thank you, Mister Commissioner. Owen Jackson. I'm here on behalf of the project, Mister Robinson. I am the liaison between the Department of Commerce, Minority Business Development Agency and the project, Dribble Dunk All Net. What I wanted to just let the Commissioners know is that, basically, this project is not just here in Las Vegas. The federal government is a big part of this also. As a liaison, I travel from Washington D.C., twice a month to come out, check on the project, and report back to the Department of Commerce on the written progress of how things are going. |
| GIBSON | Excuse me. Do you act as the agent for the Department of Commerce or are you with Mister Robinson? |
| JACKSON | No, I'm the liaison. I used to, well - |

**EXHIBIT 3 - 0039**

| | |
|---|---|
| GIBSON | Well, I guess what I'm saying is, to whom do you report? I understand you're a liaison, someone who goes between and helps people work together, but who do you work for? |
| JACKSON | I used to - right now, I'm just a consultant, but I used to work for the Department of Commerce. |
| GIBSON | Okay. No, I am sure you know what you're doing. Just so we understand what you're doing. |
| JACKSON | Yes. |
| GIBSON | That's all I'm concerned with. |
| JACKSON | Right now, I am acting in that role for Mister Robinson and also acting in the role for the Department of Commerce. I do report back to them on all the activities that are going on and also whatever documentation that he has, I take it back to them for their review.

Mister Don Wright, who you just had the conversation with, he was recommended through the Department of Commerce. The Department of Commerce, Mister Robinson is a client to the Minority Business Development Agency, and what they do is provide business assistance, procurement, and financing for MBEs. The Department of Commerce right now has tagged that this would be the largest minority project in the history of the United States, and also that they have a vested interest in this project.

What I'm here to tell you is that there's so many things that are going on as it pertains to Mister Robinson and the project, and because of that, Mister Robinson over the years have decided to do a 35% minority spend on the project. This 35% minority spend accumulates to about $1.6 billion. The Department of Commerce is tracking that information. We have set up internal processes, put a team together, to track that. We're working with the unions here. We're working with other trade groups here to help us to meet those numbers. We realize that here in Las Vegas, a 35% minority spend is going to be a heavy lift, so we have to find ways to pull these folks together.

In addition, financing for MBEs is going to be heavy, so Mister Robinson has also put together a team to look for financing to help him to be able to help the minority groups to grow and go beyond where they are right now. As it pertains to everything else, this is a huge project that we are undertaking, and some of the things that I report back to the Department of Commerce as it pertains to this project, beyond what I told you before, is going to be the number of jobs created, the size of the contracts with MBEs, the growth of MBEs, and the number of MBEs in the workforce.

Now, Mister Robinson in the past has gone back to Washington to present to the Department of Commerce on this project. He's gotten several awards for his vision and wanting to expand the Minority Business Enterprise. As of today, I'm here to tell you that one of the things that I will be doing once we get going, once this |

**EXHIBIT 3 - 0040**

| | |
|---|---|
| JACKSON | Commission has seen it fit to give us the go ahead to get this project going, I will be then accepting a position here and moving to Las Vegas to work with the project directly. But right now, I am just the liaison going back and forth between the two organizations. Thank you. |
| GIBSON | Thank you. |
| KAEMPFER | Mister Chairman, one more thing. Mister Welch has found the documents that were attached as part of the justification letter that I submitted to the County at the time we made the request for the extension, and I - |
| GIBSON | All right. Thank you. |
| KAEMPFER | I would call Mister Welch up again. |
| WELCH | Bank statement - |
| GIBSON | We need you to speak into the microphone, Mister Welch. |
| WELCH | Sorry, Commissioner. This is a bank statement evidencing the account number 810523602 that is in the name of Dribble Dunk. This is an account that is controlled entirely by Dribble Dunk. Mister Robinson is the sole controller over it and it's $5 billion. This was funded by their partner, Clearwater, on 8/25, and as we sit here today, it remains at that amount, $5 billion. It includes one transfer. This is accurate as of, I looked at the account this morning on the flight over. |
| GIBSON | Did you have a question you want to ask? Okay. Do you have anything further, Mister Kaempfer? |
| KAEMPFER | No, I believe that concludes our presentation. Again, I would like to say that this extension of time request just goes to December 6th. If on December 6th we haven't done what the Commissioner wants, then you're free to take whatever action you feel necessary. But at this point in time, grading is commenced, and we offer that financial information for your consideration. |
| GIBSON | Thank you. Does that complete the presentation? |
| KAEMPFER | I believe Mister Robinson may want to say something. |
| JACKIE ROBINSON | Thank you, Commissioners. We greatly appreciate the time and your consideration. |
| | I've been in this town since I've been 18 years old, and I've been fortunate enough to have my mentors be Steve Wynn and Irwin Molasky and Tony Marnell. I got my construction license up under Tony Marnell, Irwin Molasky. As you've seen when we had our last, I guess the meeting we had talking about our partners, this whole entire family was there, because they're just like family, because I've grown up with them. This town has raised me. And then Steve Wynn, I've even talked to on several different things, because I learned development from Steve Wynn. |
| | I just want to say that we understand and take everything that you say very, very seriously. I've been taught through those gentlemen to take care of your business |

**EXHIBIT 3 - 0041**

ROBINSON

and pay for your obligations. We fully intend to pay the obligations of Las Vegas Paving as soon as the account is open. The account at HSBC domestically is open and then the international will be opened very, very shortly. We will have the line of credit. That would be my first obligation. I heard you loud and clear. Last time you told me, Commissioners, you said you wanted to see if I had the capability of having the funds to be able to build it. And that's what I worked on and that's what I have today. Those $5 billion is totally up under my control, as well as the construction loan, and also the line of credit. We will take care of those things, and we appreciate your consideration on our project.

This is something, it's been a treasured love of mine. This community has raised me as a kid. I lost my mother here when I was a freshman, was then recruited by Jerry Tarkanian, coming up to play at Las Vegas. This has been very, very important to me, and I greatly appreciate the opportunity to be able to do so. Thank you very much.

GIBSON

Thank you. Does that complete the presentation?

KAEMPFER

Yes, Mister Chairman, and thank you all for the additional time. It's much appreciated.

GIBSON

Thank you. This is a public hearing, and I'd invite those who haven't spoken who want to speak to come forward. There have been a lot of things spoken today, so I don't know that we need to hear any of it over again. Please state your name, spell your last name for our clerk.

ANDREW DISS

Thank you, Mister Chairman, members of the Commission. Andrew Diss, Senior Vice President with Meruelo Gaming. We own and operate The Sahara, which is next to the site in question. We're here in opposition today to granting this extension. Today we're hearing about a bank in Mexico. A year ago, we were hearing about a family fund in Wyoming. A year before that it was Middle Eastern money that was going to be wired through Switzerland and come to the United States. So, we've heard this song and dance before, Commissioners.

I have before you a picture of what the site looked like back in September after the monsoons. You can see that the water fills up. Southern Nevada Health District has to come out. They have to set mosquito traps, because it becomes a public health hazard for our guests at Sahara and for the residents at Turnberry.

I walked the street yesterday between Sahara and Fontainebleau, and you can see the condition of the property. It looks derelict. It's not being taken care of and is constantly in a state of disrepair. We've got 3,500 rooms that are coming online at Fontainebleau within the next couple of weeks, and there's going to be thousands of visitors to Las Vegas who are going to be walking down to events at the festival grounds, and this is the condition that it looks like.

Also, I want to bring to your attention on Halloween, on Nevada Day, October 31st, there was a termination of the lease with the option to purchase of the land filed with the Clark County Recorder. You can see that it was signed by Mister Lowden and by Mister Robinson. I think that raises a question of standing. Does Mister Robinson even have the ability to come before you and ask for this extension today,

**EXHIBIT 3 - 0042**

DISS

given that the lease and the option to purchase was terminated?

Then, finally, there's been several mentions of the debt owed to Las Vegas Paving. This is the Confession of Judgment that was filed with the court on September 19th of this year. The amounts in question are a $17 million judgment in favor of Las Vegas Paving, subject to a 10% interest. In addition to that, there's another half million dollars subject to 10% interest. So, combined, that's accruing about $4,600 a day. This is for work that was performed back in 2017, and here we are standing before you six years later. If we can't pay $17.5 million debt, how are we to believe that there is going to be $4 billion invested into this project?

Mister Chairman, you know the history behind this. Commissioners, I don't want to belabor the point, but I just wanted to bring some of those issues before you. We would like to move on, because we would like to see nothing more than substantial and a real project be developed next door to us. Thank you for your time.

GIBSON

Thank you. Is there anyone else who wishes to offer comment?

DAVID LOWDEN

David Lowden, L-O-W-D-E-N. 3221 South Torrey Pines, Las Vegas, Nevada. I'm the President of Sahara Las Vegas Corp and through its wholly owned subsidiary, All Net Land Development LLC, it's the property owner. I just want to clarify to the Commission that the information just presented is completely false. The lease that's currently in the development agreement in place is not the one for which the Memorandum of Lease was terminated. That was a prior lease back in 2015 that remained of record, and it showed on the title, but report Mister Robinson and myself executed the termination of that memorandum. Thank you.

GIBSON

Thank you.

LOWDEN

May I add, we've been a hundred percent support of the All Net Arena project from day one, and we remain in a hundred percent support today. Thank you.

GIBSON

Thank you.

MARK DRAPER

Good afternoon, Chair, members of the Commission. For the record, my name is Mike Draper. I'm a partner at Argentum Partners. I'm here today on behalf of the Meruelo Group. A lot of the comments that we've heard today in all ways are very similar to last year and the year before. For us at the Meruelo Group, we'd love to see anything on that property. It benefits the whole neighborhood. It benefits the whole area, and in turn benefits the whole city.

Furthermore, over the last year, the County has done a lot of work towards that redevelopment district. We have the opportunity to revitalize that district. There's been a lot of effort and a lot of work towards that, as well as several of the private properties there, the resorts, have also spent a lot of capital in order to improve that area and bring more residents to the north end of the Strip.

We're encouraging you today to deny this extension. Let's see a real project go there. I don't see, regardless of who develops it, why denying this permit, starting all over, making sure that project fits in the vision of the redevelopment district, is such a difficult ask at this point. We'd love to see Mister Robinson develop that project.

**EXHIBIT 3 - 0043**

| | |
|---|---|
| DRAPER | But does it conform with the vision of the redevelopment district? Are we going to see something that's real, something that's going to happen, and something that's going to in turn benefit the properties around it the same way the properties have spent their investment to benefit that area and region. Thank you. |
| GIBSON | Thank you. |
| WILL BRADLEY | Hello, everyone. Will Bradley, B-R-A-D-L-E-Y. I live at SKY Condos, which is right across the street from the proposed development of All Net. I'm also an elected member of my SKY Condo's HOA. There's five of us. I serve as the secretary of the Board. |
| | We had a board meeting for our 409 unit owners in three commercial spaces in our $250 million building across the street November 15th. We invited the All Net executives. Mister Robinson and Mister Delbos showed up. The president of our Board is an accomplished construction person, Kevin Booth. He's the president, I believe, WestCor Companies in town, so he's more technical than any of us, and he's newly elected our president. |
| | We heard 45 minutes worth of presentations from the two gentlemen from All Net. The Board asked questions, and I have personally a $1.2 million investment in SKY Condos, because I own two condos, and both of my condos face this empty lot. I have renters in one, and I live in the other one on the 41st floor. I personally am in favor of this project and giving them whatever they need, and our Board - I'd like to announce on behalf of our Board, after that 45-minute hearing, voted to support this project and be a partner with All Net, a good neighbor. They're going to come over and keep us informed. They invited us to their home offices. |
| | We're the ones that live there. We're the ones that have personal investment. I'm tired of looking at a vacant lot, as well. But we believe as the board of SKY Condo's HOA, that they're well on their way, and we have confidence they'll complete it. Before any of you look at voting no, let the F word come to your mind: Fontainebleau. Nobody thought that would be completed. Nobody. Carl Icahn, that bought it for $150 million, made a quick $450 million on Fontainebleau. Who knows what he thought. But none of our residents saw it be completed, and thank goodness this opens in December 13th. Wow. What a benefit to the North Strip and we're as excited for the All Net projects. I urge you to vote yes on these proposals for All Net. Thank you. |
| GIBSON | Thank you. It appears there is no one else. I'll close the public hearing. Commissioner Segerblom. Did you have something that you were going to provide us in addition Sami? |
| REAL | Commissioners, I wanted to clear the record on some things that were said. There was a statement that all permits have been obtained, and I just want to be clear, the only permit that's been obtained is an early grading permit. That's not for the full scope of the grading. The full grading permit and any architectural plans have not been submitted to the Building Department. I also heard that they had commenced work, so they shouldn't even be here. |
| | The truth of the matter is that the land use applications expired in September, so |

**EXHIBIT 3 - 0044**

| | |
|---|---|
| REAL | they need these extensions of time. The grading, even though it did commence today, again, the land use applications, they did expire in September, so they do need to be here for these extensions of time. |
| | I also wanted to just clarify that, all along, we've said that the early grading permit doesn't commence the project, because, again, it's not for the full grading. They already have obtained a grading permit. They already graded some of the site. What this grading permit does is it just excavates some additional land. Again, it doesn't excavate to the full scope of what they need for their land use application. And so even though they recommended or requested only three months to commence, staff had written the staff reports that if it is approved, that we wanted to give them an additional year. Ultimately, it's up to you what you would like to grant them in terms of an extension of time. |
| | But there is a caveat that if they do commence construction, that the actual construction of work be diligently carried out to the completion of the building, or the structure involved. And so, if they are granted a three-month extension of time, and they don't diligently complete construction till completion, then their land use application will expire, which is why we gave them the additional year, just based on the history of the project. Again, I just wanted to clear up some things that were said and just put that on the record. Thank you. |
| GIBSON | Thank you. Commissioner Segerblom. |
| SEGERBLOM | Thank you, Mister Chairman. This project has been dear to me since I was elected five years ago. I've worked with Jackie and with the team, and honestly believe, I think Jackie's a visionary. He saw the sports town before anyone else saw the sports town. He saw the NBA before anyone else saw the NBA. Truthfully, I'm not sure why no one else would join with him to make this project viable. But time and time again, we've asked just one more year, two years. Let's get this done. We'll get it done. We've followed the money everywhere around the world and, truthfully, it hasn't happened. |
| | I'm just prepared to make a motion to deny at this point. It breaks my heart to do it. I will say this, that I have, I think, five days to ask for a motion of reconsideration, so if I'm on the winning side of this vote, I will ask for that reconsideration. If this money shows up somewhere where it's tangible, that would, I think, put us basically to the next meeting, where we're trying to get to the 6th. Honestly, if we don't do it by then, if you show up with the money in December, January, February, I'll move to reopen this thing and get you back on track. But at some point, you have to just do it, and we just haven't been able to get there. |
| | As I said, it breaks my heart, because I think Jackie is a true visionary of Las Vegas in the Steve Wynn tradition. But, at this point, we just don't have it, so I would make a motion to deny. |
| GIBSON | There's a motion on the floor. Any discussion on the motion? Please cast your votes. The motion carries. |
| KAEMPFER | Mister Chairman, for clarification, Commissioner Segerblom, you're talking about the money coming up within the reconsideration period, right? |

| | |
|---|---|
| SEGERBLOM | Right. There's five days- |
| KAEMPFER | Five days (inaudible). |
| SEGERBLOM | ... because of the work days. I think that would actually take you til Monday in December. But I'm not positive on the five. It'd be next Thursday or that Monday. |
| KAEMPFER | Whatever that is, whatever the reconsideration period is, which is five business days. All right. Thank you for your time. |
| REAL | Commissioner, I just want to be very clear since it's an important matter. The five business days would be November 30th, 2023. |
| SEGERBLOM | Okay. Also, I know there's a bond out there. I'm not sure what the deadline is, but could we ask Legal Counsel to make sure that there's notice to that bond in case the bond is expiring? Because I don't want to have that happen and then we're back trying to collect on something that we'd have a hard time - but again, I will do everything in my power to make this project happen if and when something shows up. |
| KAEMPFER | Just for clarification, there's nothing that's owed to the County that the bond would cover at this point in time that I know of. |
| SEGERBLOM | No, but I think you're supposed to fill the hole in once the project is - |
| REAL | I think the topic is one of two things with regards to the bond. It's our understanding that the bond for the performance agreement is set for renewal. And so, there is just a request and ask to make sure that that bond remains a valid bond, whether if it's replaced or renewed. And then, with regards to the performance agreement, it's 90 days since the, I'll say, the last activity. There's a stipulation in the performance agreement, too, that says little work that tries to kind of usurp the lack of progress on a project doesn't qualify as the 90 days. So, we have the performance bond and the agreement that still talks about if there are no activities within 90 days, that we can pursue the decommissioning activities pursuant to the performance agreement. |
| GIBSON | Thank you. |
| SEGERBLOM | Did I make that denial without prejudice, or does it matter? |
| REAL | It wasn't specified with prejudice, so it's denied without prejudice. |
| SEGERBLOM | Okay. Thank you. |
| **ACTION:** | It was moved by Commissioner Segerblom, and carried by unanimous vote, that the applications for Item Nos. 28 and 29 be denied without prejudice. A request for reconsideration has been scheduled for the December 20, 2023, BCC meeting. |

**ITEM NO. 29** ET-23-400128 (UC-0519-17)-ALL NET LAND DEVELOPMENT, LLC:
HOLDOVER USE PERMITS THIRD EXTENSION OF TIME to commence the following: 1) modifications to an approved High Impact Project (All Net Arena); and 2) convention facilities/exposition halls.

WAIVERS OF DEVELOPMENT STANDARDS for the following: 1) reduced on-site parking; and 2) increased building height.
DESIGN REVIEWS for the following: 1) modifications to an approved High Impact Project; 2) hotel tower and associated low-rise and mid-rise buildings and structures; 3) convention center facilities; and 4) all other accessory and incidental buildings and structures on 27.0 acres in an H-1 (Limited Resort and Apartment) Zone. Generally located between Las Vegas Boulevard South and Paradise Road, 900 feet south of Sahara Avenue within Winchester. TS/nai/syp (For possible action) (held from November 8, 2023)

| | |
|---|---|
| **ACTION:** | It was moved by Commissioner Segerblom, and carried by unanimous vote, that the applications for Item Nos. 28 and 29 be denied without prejudice. A request for reconsideration has been scheduled for the December 20, 2023, BCC meeting. |

**ITEM NO. 30** UC-23-0586-PATRIOT CONTRACTOR'S, LLC:
HOLDOVER USE PERMIT for a gravel pit with temporary construction storage.
WAIVERS OF DEVELOPMENT STANDARDS for the following: 1) reduce setback to any equipment from an existing occupied residential dwelling; 2) reduce parking; and 3) exceed the maximum site disturbance in conjunction with Hillside Development.
DESIGN REVIEWS for the following: 1) a final grading plan in conjunction with a Hillside Development (slopes greater than 12%); and 2) a gravel pit with temporary construction storage, including an accessory structure (truck scale with booth) on a 32.5 acre portion of a 33.1 acre site in an H-2 (General Highway Frontage) Zone and an R-U (Rural Open Land) Zone. Generally located on the east side of I-15 and the south side of Larson Lane (alignment) within South County. JJ/md/syp (For possible action) (held from October 18, 2023)

| | |
|---|---|
| REAL | Okay. Item 30, UC-23-0586. Holdover use permit for a gravel pit with temporary construction storage. Waivers of development standards for the following: reduce setback to any equipment from an existing occupied residential dwelling, reduce parking and exceed the maximum site disturbance in conjunction with the Hillside Development. Design reviews for the following: a final grading plan in conjunction with the Hillside Development with slopes greater than 12% and a gravel pit with temporary construction storage including accessory structures, truck scale with booth on a 32.5 acre portion of a 33.1 acre site in an H-2 (General Highway Frontage) Zone and an R-U (Rural Open Land) Zone. Generally located on the east side of I-15 and the south side of Larson Lane alignment within South County. |
| GIBSON | Miss Lazovich. |
| LAZOVICH | Good afternoon, Jennifer Lazovich, 1980 Festival Plaza Drive. Here today with a familiar face to all of you. I'm also here with Eric Denman and both of us are representing the applicant on this matter. If I could turn your attention to the overhead, please. Thank you. |
| | So, as indicated, this site sits just on the east side of I-15. This is Camping World or Wheeler RV. Some of us know it in different ways. If you're coming back on the I-15 and you're headed north, you may recognize this site. It's not flat, it's what I would call a large hill and then tucked behind it is this existing business. The application before you is to work on taking that hill down over a period of time to get it to a developable state. Right now, you couldn't develop on it. It isn't, you know, a situation where you would put homes coming up here, which is what you typically see more with the hillside ordinances, is how are you going to layer in those homes as you go up? This is to actually, literally get the dirt down to a base level or a ground level so that eventual development will come in. |

**EXHIBIT 3 - 0047**

| | |
|---|---|
| LAZOVICH | The staff report indicates that and at some point in the future when that site has been graded down and it's able to be developed, then we'll come back in with a design review to show you what that would look like at the time. Anything you would like to add? |
| ERIC DENMAN | Nope. Just here to answer any questions that you may have about the site as we have done the grading plan overall. |
| GIBSON | Thank you, Mister Denman. Then will - that completes your presentation for the time being? |
| LAZOVICH | Yes. Thank you. |
| GIBSON | This is a public hearing on Item 30. Is there anyone here who wishes to speak on Item 30? There being no one, the public hearing is closed. Commissioner Jones. |
| JONES | Thank you, Mister Chair, and thank you for the presentation. I know there had originally been some concerns that were raised by the City of Henderson with regards to adjacency to a proposed park. They have since indicated that they are open to a change to their master plan to remove that park from the master plan. This is a creative way to find more land since we are lacking in land here. I think it's a killing two birds with one stone. Get some dirt, get some land, and encourage the applicant to go seek the parcel to the north of there so they can take down the rest of the mountain. |
| | So with that, I'll go ahead and move for approval Agenda Item Number 30, as approved conditions stated by Planning. |
| GIBSON | There's a motion for approval. Please cast your votes. The motion carries. Thank you. |
| LAZOVICH | Thank you. |
| DENMAN | Commissioners, thank you and I hope y'all have a great Thanksgiving to you and your family. |
| GIBSON | Thank you, same to you. |
| **ACTION:** | It was moved by Commissioner Justin Jones, and carried by unanimous vote, that the application be approved subject to staff conditions. |

CONDITIONS OF APPROVAL –
Comprehensive Planning
- 1 year to review as a public hearing.
- Applicant is advised that the installation and use of cooling systems that consumptively use water will be prohibited; the County has adopted a rewrite to Title 30 effective January 1, 2024, and future land use applications, including applications for extensions of time, will be reviewed for conformance with the regulations in place at the time of application; a substantial change in circumstances or regulations may warrant denial or added conditions to an extension of time and application for review; the extension of time may be denied if the project has not commenced or there has been no substantial work towards completion within the time specified; and that this application must commence within 2

years of approval date or it will expire.

Public Works - Development Review
    • Drainage study and compliance;
    • Provide paved legal access.

Clark County Water Reclamation District (CCWRD)
    • Applicant is advised that the CCWRD is unable to verify sewer capacity based on this zoning application; and
    may find instruction for submitting a Point of Connection (POC) request on the CCWRD's website; and that a
    CCWRD approved POC must be included when submitting civil improvement plans.

**ITEM NO. 31** UC-23-0637-LAS VEGAS VALLEY WATER DISTRICT:
HOLDOVER USE PERMIT for public utility structures consisting of a pumping station, electric substation, fences, and walls.
WAIVERS OF DEVELOPMENT STANDARDS for the following: 1) waive off-site improvements (sidewalk); 2) reduce throat depth; 3) increase driveway width; and 4) allow pan driveways.
DESIGN REVIEWS for the following: 1) public utility and structures (pumping station and electric substation); and 2) finished grade on a 5.9 acre portion of 18.2 acres in a Public Facility (P-F) Zone. Generally located on the north side of Monthill Avenue, 105 feet east of Hazelcrest Drive within Paradise. TS/jba/syp (For possible action) (held from November 8, 2023)

| | |
|---|---|
| **ACTION:** | Deleted from the agenda (held to December 6, 2023 per the applicant). |

**ITEM NO. 32** UC-23-0681-2151 SUNSET, LLC:
USE PERMIT for a recreational facility.
WAIVER OF DEVELOPMENT STANDARDS to reduce required parking.
DESIGN REVIEWS for the following: 1) office/warehouse and recreational facility; and 2) finished grade on 2.4 acres in an M-D (Designed Manufacturing) (AE-70) Zone. Generally located on the southeast corner of Surrey Street and Sunset Road within Paradise. JG/jud/syp (For possible action)

| | |
|---|---|
| REAL | Next is Item 32, UC-23-0681. Use permit for a recreational facility. Waivers of development standards to reduce required parking and design reviews for the following: office/warehouse and recreational facility and finished grade on 2.4 acres in an M-D (Design Manufacturing) (AE-70) Zone generally located in the southeast corner of Surrey Street and Sunset Road within Paradise. |
| | Commissioners, we have two recommended conditions of approval to add. The first one being hours of operation of the facility will not start before 5:00 p.m. on Monday through Friday and no restriction of hours on Saturday through Sunday, and a second being review as a public hearing, 18 months after certificate of completion issued by the Clark County Building Department. |
| GIBSON | Miss Stewart. |
| LUCY STEWART | Thank you. Lucy Stewart, 1930 Village Center Circle and I apologize for my voice. This location was approved last year for six smaller warehouses. They now have the tenants for the site. So, they've got a distribution center for auto parts and then another one it's for the fake grass. They go out and install it, and then this one here is the one that's for the indoor soccer. That's where we have a large parking waiver because the entire site is basically if I can - the entire floor plan is pretty much taken up by the soccer fields. And so the soccer fields are used either for a scrimmage for the game or there's another smaller one that's used for skills, and we have |

| | |
|---|---|
| STEWART | conference rooms, whereas the students will either be playing a scrimmage game or they'll be practicing or they'll be in conference, but there won't be something going on all three areas at once. We appreciate the conditions of approval because we do basically operate opposite the times of the other two uses on the site and we respectfully request approval. I'm happy to answer any questions. |
| GIBSON | Thank you. This is a public hearing. Is there anyone here who wishes to speak on this item, which is Item 32? There being no one, the public hearing is closed. |
| | I move approval with the two additional conditions that have been read into the record. One relating to hours operation not starting before 5:00 p.m. on Monday through Friday, no restriction on Saturday Sunday hours, and a review as a public hearing 18 months after the certificate of completion is issued by Clark County Building. Any discussion on the motion? Please cast your votes. The motion carries. Thank you. |
| STEWART | Thank you and happy Thanksgiving. |
| GIBSON | Thank you. Same to you. |
| **ACTION:** | It was moved by Commissioner Jim Gibson, and carried by unanimous vote, that the application be approved subject to staff and additional conditions. |

CONDITIONS OF APPROVAL –
Comprehensive Planning
    • Hours of operation of the facility will not start before 5:00 p.m. Monday through Friday, no restriction of hours Saturday and Sunday;
    • Review as a public hearing 18 months after a certificate of completion is issued by the Clark County Building Department;
    • Certificate of Occupancy and/or business license shall not be issued without final zoning inspection.
    • Applicant is advised that the County has adopted a rewrite to Title 30 effective January 1, 2024, and future land use applications, including applications for extensions of time, will be reviewed for conformance with the regulations in place at the time of application; a substantial change in circumstances or regulations may warrant denial or added conditions to an extension of time and application for review; the extension of time may be denied if the project has not commenced or there has been no substantial work towards completion within the time specified; and that this application must commence within 2 years of approval date or it will expire.

Public Works - Development Review
    • Drainage study and compliance;
    • Drainage study must demonstrate that the proposed grade elevation differences outside that allowed by Section 30.32.040(a)(9) are needed to mitigate drainage through the site;
    • Traffic study and compliance.
    • Applicant is advised that approval of this application will not prevent Public Works from requiring an alternate design to meet Clark County Code, Title 30, or previous land use approvals.

Department of Aviation
    • Applicant is required to file a valid FAA Form 7460-1, "Notice of Proposed Construction or Alteration" with the FAA, in accordance with 14 CFR Part 77, or submit to the Director of Aviation a "Property Owner's Shielding Determination Statement" and request written concurrence from the Department of Aviation;
    • If applicant does not obtain written concurrence to a "Property Owner's Shielding Determination Statement," then applicant must also receive either a Permit from the Director of Aviation or a Variance from the Airport

**EXHIBIT 3 - 0050**

Hazard Areas Board of Adjustment (AHABA) prior to construction as required by Section 30.48 Part B of the Clark County Unified Development Code; applicant is advised that many factors may be considered before the issuance of a permit or variance, including, but not limited to, lighting, glare, graphics, etc.;
• No building permits should be issued until applicant provides evidence that a "Determination of No Hazard to Air Navigation" has been issued by the FAA or a "Property Owner's Shielding Determination Statement" has been issued by the Department of Aviation;
• Incorporate exterior to interior noise level reduction into the building construction as required by Code for use.
• Applicant is advised that the FAA's determination is advisory in nature and does not guarantee that a Director's Permit or an AHABA Variance will be approved; that FAA's airspace determinations (the outcome of filing the FAA Form 7460-1) are dependent on petitions by any interested party and the height that will not present a hazard as determined by the FAA may change based on these comments; that the FAA's airspace determinations include expiration dates; that separate airspace determinations will be needed for construction cranes or other temporary equipment; that the Federal Aviation Administration will no longer approve remedial noise mitigation measures for incompatible development impacted by aircraft operations, which was constructed after October 1, 1998; and that funds will not be available in the future should the owners wish to have their buildings purchased or soundproofed.

Clark County Water Reclamation District (CCWRD)
> • Applicant is advised that a Point of Connection (POC) request has been completed for this project; to email sewerlocation@cleanwaterteam.com and reference POC Tracking #0091-2022 to obtain your POC exhibit; and that flow contributions exceeding CCWRD estimates may require another POC analysis.

**ITEM NO. 33** VS-23-0688-KEYES, CHARLES:
VACATE AND ABANDON easements of interest to Clark County located between Ford Avenue and Pebble Road and between Rancho Destino Road and Gilespie Street within Enterprise (description on file). MN/jor/syp (For possible action)

| | |
|---|---|
| REAL | Next your items 33 and 34, which will be heard together. |
| | Item 33 VS-23-0688, vacate and abandon easements of interest to Clark County, located between Ford Avenue and Pebble Road and between Rancho Destino Road and Gillespie Street within Enterprise. |
| | Item 34 WS-23-0687, waivers of development standards for the following: eliminate sidewalk and street landscaping, waive full off-site improvements in conjunction with a proposed minor subdivision on an existing single-family residence on two acres in an R-E (Rural Estates Residential (RNP-1) Zone. Generally located on the southwest corner of Ford Avenue and Gillespie Street within Enterprise. |
| GIBSON | Hello. |
| RAY FREDERICKSON | Hello, Ray Frederickson, Performance Engineering 4525 West Hacienda. I'm here representing the applicant. I'll start with the patent easement vacations. Basically, this site's been existing for 20 years. It's an existing home on two acres. It's got four or five accessory structures on it, Casitas, RV garages, stuff like that. |
| GIBSON | Please hold that microphone closer to your mouth. Thank you. |

**EXHIBIT 3 - 0051**

| | |
|---|---|
| FREDERICKSON | For the patent easement vacation, they were just never vacated with the existing home, so we're just asking to clean that up at this time while we're in the parcel map process. |
| | In regards to the parcel map, just a quick description of what we're attempting to do here. If you look at the overhead, you have the main home, Casita, RV garage, Casita, RV garage, and there's two more garages and a shed back here. Again, it's roughly two acres, two acres plus. All the homeowner wants to do is be able to subdivide into two lots where he could technically do four because it's an R-E. He wants to do two lots at a 15,000 square foot home to move his father into. The red x's are existing structures, we'll just basically get demoed and then we create this parcel line and then he comes in after everything's done and we build a new home. |
| | While we were going through the parcel map process, we had a couple waivers come up. The first being the detached sidewalks being, like I said, again, an existing home. There's existing landscaping, there's existing walls, it's all rural around it. Basically, he wants to just keep the rural feel, not have to come back in and do detached sidewalks, not have to come in and do full offsite improvements. And that's the gist of where we're at with this application. As Public Works has come in and said, "We want full off-sites on Gillespie, we want the detached sidewalk on Ford." And obviously, we are opposed to doing that with the intent of this, as we are only, actually, doing 117 feet of frontage across Ford. I think that's it. |
| GIBSON | That complete your presentation? |
| FREDERICKSON | Sure. |
| GIBSON | Alright. This is a public hearing. Is there anyone here who wishes to speak on these two Items, 33 and 34? There being no one, the public hearing is closed. And Commissioner Naft. |
| NAFT | Thank you, Chairman. You said 15,000 square foot home? I want to just make sure I heard that right. |
| FREDERICKSON | Yeah, I believe it's a 13,000, 15,000 square foot home. |
| NAFT | His dad's in good shape. That's a lot of steps. The only thing I want to add is, you're going to be required to put in a three-foot asphalt path around the property, which you had already committed to me, you would do that. I just - |
| FREDERICKSON | Yes, that's correct. That was a recommendation at Town Board, that we agreed to. |
| NAFT | - as a requirement of mine. So - |
| FREDERICKSON | Yes. |
| NAFT | Your client agrees to that? |
| FREDERICKSON | Client agrees to that. I think we'll do it four feet, because I think ADA requirement is four feet. |

**EXHIBIT 3 - 0052**

| | |
|---|---|
| NAFT | I think five feet would be great, if you want to follow ADA, but they could do five feet, Mister Papazian? |
| PAPAZIAN | Absolutely. |
| NAFT | Great. The condition will be a five-foot asphalt path around the perimeter of property connecting to the already existing sidewalk. |
| FREDERICKSON | Sounds good. |
| NAFT | Move for approval of Item 33 with the addition of that condition. |
| GIBSON | And that would include 34, right? Yeah. There's a motion for approval is noted. Please cast your votes. The motion carries. Thank you. |
| FREDERICKSON | Thank you. Can I just add one thing? I've worked here for a long time. I think we go way back in Henderson, Crystal Ridge days, but I truly enjoy working with Antonio and his crew. They are the easiest group I have worked with- |
| NAFT | It's Thanksgiving. |
| FREDERICKSON | - in my 27 years. |
| GIBSON | Thank you. We're glad you're happy to work with him. |
| FREDERICKSON | And he's the nicest dressed. |
| GIBSON | Thank you. |
| **ACTION:** | It was moved by Commissioner Michael Naft, and carried by unanimous vote, that the applications for Item Nos. 33 and 34 be approved subject to staff conditions. |

CONDITIONS OF APPROVAL –
Comprehensive Planning
- Satisfy utility companies' requirements.
- Applicant is advised that the County has adopted a rewrite to Title 30 effective January 1, 2024, and future land use applications, including applications for extensions of time, will be reviewed for conformance with the regulations in place at the time of application; a substantial change in circumstances or regulations may warrant denial or added conditions to an extension of time; the extension of time may be denied if the project has not commenced or there has been no substantial work towards completion within the time specified; and that the recording of the order of vacation in the Office of the County Recorder must be completed within 2 years of the approval date or the application will expire.

Public Works - Development Review
- Vacation to be recordable prior to building permit issuance or applicable map submittal;
- Revise legal description, if necessary, prior to recording.

**ITEM NO. 34** WS-23-0687-KEYES, CHARLES:
WAIVERS OF DEVELOPMENT STANDARDS for the following: 1) eliminate sidewalk and street landscaping; and 2) waive full off-site improvements in conjunction with a proposed minor subdivision on an existing single-family residence on 2.0 acres in an R-E (Rural Estates Residential) (RNP-I) Zone. Generally located on the southwest corner of Ford

**EXHIBIT 3 - 0053**

Avenue and Gilespie Street within Enterprise. MN/jor/syp (For possible action)

**ACTION:**                    It was moved by Commissioner Michael Naft, and carried by unanimous vote, that
                               the applications for Item Nos. 33 and 34 be approved subject to staff conditions.

CONDITIONS OF APPROVAL –
Comprehensive Planning
      • Plant 3 trees along the north property line of Lot 2 adjacent to Ford Avenue;
      • Certificate of Occupancy of the second house shall not be issued without final zoning inspection.
      • Applicant is advised that the County has adopted a rewrite to Title 30 effective January 1, 2024, and future land
use applications, including applications for extensions of time, will be reviewed for conformance with the
regulations in place at the time of application; a substantial change in circumstances or regulations may warrant
denial or added conditions to an extension of time; the extension of time may be denied if the project has not
commenced or there has been no substantial work towards completion within the time specified; and that this
application must commence within 2 years of approval date or it will expire.

Public Works - Development Review
      • Provide a 5 foot wide asphalt path along Ford Avenue and Gillespie Street;
      • Applicant to submit for an off-site permit for the existing additional pavement on Gilespie Street from the north
driveway south to the end of the site.

**ITEM NO. 35** WS-23-0658-LOS PRADOS NV MANAGEMENT, LLC:
WAIVERS OF DEVELOPMENT STANDARDS for the following: 1) eliminate sidewalk and allow alternative street
landscaping; 2) increase retaining wall height; 3) allow a proposed single family residential lot to have direct access to a
collector street (Cimarron Road); and 4) full off-site improvements.
DESIGN REVIEWS for the following: 1) single family subdivision; and 2) finished grade on 2.1 acres in an R-E (Rural
Estates Residential) (RNP-1) Zone. Generally located on the northeast corner of Cimarron Road and Hickam Avenue
within Lone Mountain. RM/bb/syp (For possible action)

REAL                           Next is Item 35, WS-23-0658, waivers of development standards for the following:
                               eliminate sidewalk and allow alternative street landscaping. Increase retaining wall
                               height and allow a proposed single-family residential lot to have direct access to a
                               collector street, Cimarron Road, and full off-site improvements. Design reviews for
                               the following: single-family residential subdivision and finished grade, on 2.1 acres,
                               in an R-E (Rural Estates Residential) (RNP-1) Zone, generally located on the
                               northeast corner of Cimarron Road and Hickman Avenue within Lone Mountain.

SUSAN ROSOFF-FLORIAN           Good afternoon, Commissioners. My name is Susan, from Taney Engineering, 6630
                               South Jones Boulevard, here on behalf of the applicant. The acreage for the subject
                               site is 2.13 acres. It is located east of Cimarron Road and north of Hickam. The site
                               is zoned right now, for R-E (Rural Estates Residential) District, within an RNP-1
                               Zone. This site is also within a planning A1 of the Lone Mountain Interlocal
                               Agreement requiring a maximum gross density of two dwellings per acre, and a
                               minimum lot of 18,000 square feet, within 18,500 square goal, for buildable lot
                               area.

                               The proposed development complies with the requirements outlined in the interlocal
                               agreement. It is within a Ranch Estates Residential Neighborhood for the planned
                               land use. We are not requesting any modifications to the plan use or zoning at this
                               moment. We are requesting to allow for a development of a four-lot single-family
                               residential subdivision, with a density of 1.87 lots per acre. The lots range from

**EXHIBIT 3 - 0054**

| | |
|---|---|
| ROSOFF-FLORIAN | 20,401 to 30,541 square feet, with an average lot of 23,281 square feet. The three lots on the south side will be accessed through Hickam Avenue. And then, the fourth lot will be accessed through Cimarron Road. There will be a 16-foot landscape buffer on Cimarron Road, sorry, planted every 30 feet from center. |
| | The first waiver is for the six-foot landscape buffer. This part was part of the developer - the developer is the one in front of the parcel. There is a wall that will be removed, then we'll put the landscape buffer and the wall for lot three. The second waiver is for the four-foot-high retaining wall, a 10-foot combination. A while back, we had this grading plan. We're still asking for this waiver. But with the new grading plan, we're looking at a 2.1 retaining wall along the northwest side. We would still like to keep the waiver in place. The new grading plan does show our best efforts to reduce the retaining wall. However, the new grading plan has not been approved yet. The third waiver is for the house that's facing the collector street, for lot four. |
| | I have here, an exhibit that shows the two blocks, that there are four homes fronting Cimarron. This has been allowed in other developments. The fourth waiver is for off-site improvements. The reason for not including off-site improvements is because we wanted to keep the rural standards of the area. Our site is within the Clark County Rural Preservation Overlay District, so we wanted to match the surrounding area. The only reason that the adjacent property to the south does have curb, sidewalk and gutter is because it is part of the City, not part of the County. |
| | The first design review is for the four-lot subdivision. The staff did agree that we meet the density for these lots. And the second design review is to allow four-feet fill, where three maximum is allowed. |
| | If I can just pull up the cross sections. There was also, like I mentioned, the new grading plan. It also has not been approved yet, but we're looking at a 2.8 along the northeast of the property. The fill is lower than the three-foot maximum Clark County allows. We would still like to keep this design review possible, in case that the grading plan is not approved. Staff couldn't support this application because of the four lots facing the collector street, in the waiver, for off-site improvements. Town Board did recommend approval, with the conditions that we stay below the three-foot permitted retaining wall, and that we follow the new grading plan as it was submitted, and that the landscaping is 20 foot on center, instead of 30. And with that, I respectfully ask for your approval. And I'm here to answer any questions that you may have. |
| GIBSON | Thank you. Is there anyone here, who wishes to speak on this item, which is Item 35? This is a public hearing. There being no one, the public hearing is closed. Commissioner Miller. |
| ROSS MILLER | Just to be clear, you're in alignment with the recommendations from the Town Board? |
| ROSOFF-FLORIAN | I'm sorry? |
| MILLER | You're in alignment with the recommendations from the Town Board? And let me just read that into the record to make sure it's consistent with your understanding. |

**EXHIBIT 3 - 0055**

| | |
|---|---|
| MILLER | Approved is submitted, subject to staff's conditions, and conditions as follows. One, that trees be planted 20 feet apart, a 2.1 foot retaining wall, and fill height to be 2.8 feet, as previously submitted by applicant. |
| ROSOFF-FLORIAN | Yes, we would like to, still, keep the waiver for the retaining wall, and the design review for the fill, just in case, because the grading plan has not yet been approved. But we've submitted it. Our best intentions is to reduce it. |
| MILLER | Okay. |
| REAL | So Commissioner, if I can probably clarify the response that was given. I would say then, that would be a no, that they don't agree to the Town Board conditions, because what they're asking for - the applicants are asking for, is to keep the design review, and keep the waiver in case the grading plans aren't approved, which would then allow the four-foot retaining, and the increased finished grade. I just wanted to clear that up, based on the response. |
| MILLER | Okay. And the Eso landscaping, I heard you say at one point, 30 feet apart, but you're in an agreement with 20 feet? |
| ROSOFF-FLORIAN | We can agree with the landscaping, for sure. We just wanted to keep it just in case. We will try our best - our best intentions is to reduce the retaining wall and the fill. But yes, we can agree with the landscaping. |
| MILLER | Okay. I would move for approval of the waivers as requested, with the condition in line with the recommendation from Town Board, that the trees and landscaping be 20 feet apart. |
| GIBSON | Do you understand what he's just moved? |
| ROSOFF-FLORIAN | Yes. |
| GIBSON | Okay. There's a motion for approval, by Commissioner Miller. Any discussions? Please cast your votes. The motion carries. Thank you. |
| ROSOFF-FLORIAN | Thank you so much, Commissioners, and have a good Thanksgiving. |
| GIBSON | You too. Thank you very much. |
| **ACTION:** | It was moved by Commissioner Ross Miller, and carried by unanimous vote, that the application be approved subject to staff and additional conditions. |

CONDITIONS OF APPROVAL –
Comprehensive Planning
- Trees to be planted shall be spaced 20 feet apart on center.
- Applicant is advised that this application waives the condition of landscaping per WS0413-16; the County has adopted a rewrite to Title 30 effective January 1, 2024, and future land use applications, including applications for extensions of time, will be reviewed for conformance with the regulations in place at the time of application; a substantial change in circumstances or regulations may warrant denial or added conditions to an extension of time; the extension of time may be denied if the project has not commenced or there has been no substantial work towards completion within the time specified; and that this application must commence within 2 years of approval

**EXHIBIT 3 - 0056**

date or it will expire.

Public Works - Development Review
    • Drainage study and compliance;
    • Drainage study must demonstrate that the proposed grade elevation differences outside that allowed by Section 30.32.040(a)(9) are needed to mitigate drainage through the site;
    • Execute a Restrictive Covenant Agreement (deed restrictions).
    • Applicant is advised that approval of this application will not prevent Public Works from requiring an alternate design to meet Clark County Code, Title 30, or previous land use approvals.

Clark County Water Reclamation District (CCWRD)
    • Applicant is advised that CCWRD does not provide sanitary sewer service in this portion of the unincorporated County; and for any sanitary sewer needs, to contact the City of Las Vegas to see if the City has any gravity sanitary sewer lines located in the vicinity of the applicant's parcel.

**ITEM NO 36** ZC-23-0608-COLINN, IMANI LIVING TRUST & IMANI, DARIUSH TRS:
ZONE CHANGE to reclassify 2.4 acres from an R-E (Rural Estates Residential) Zone to an R-1 (Single Family Residential) Zone.
WAIVERS OF DEVELOPMENT STANDARDS for the following: 1) increase wall height; and 2) reduce driveway separation.
DESIGN REVIEWS for the following: 1) a proposed single family residential detached development; and 2) finished grade. Generally located on the north side of Richmar Avenue, 165 feet west of Valley View Boulevard within Enterprise (description on file). JJ/hw/syp (For possible action)

| | |
|---|---|
| REAL | Next are Items 36, 37 and 38. |
| | Item 36, ZC-23-0608, zone change to reclassify 2.4 acres from an R-E (Rural Estates Residential) Zone to an R-1 (Single-Family Residential) Zone. Waiver of development standards for the following: increased wall height and reduced driveway separation. Design reviews for the following: proposed single-family residential detached development and finished grade, generally located on the north side of Richmar Avenue, 165 feet west of Valley View Boulevard, within Enterprise. |
| | Item 37, VS-23-0609, vacate and abandoned easements of interest to Clark County located between Richmar Avenue and Meranto Avenue, and between Valley View Boulevard and Henson Street, and a portion of right-of-way being Richmar Avenue, located between Valley View Boulevard and Henson Street, within Enterprise. |
| | Item 38, TM-23-5127, tentative map consisting of 12 single-family detached residential lots and two common lots, on 2.4 acres in an R-1 (Single-Family Residential) Zone, generally located on the north side of Richmar Avenue, 165 feet west of Valley View Boulevard, within Enterprise. |
| GIBSON | Good afternoon. |
| ROBERT CUNNINGHAM | Good afternoon. Robert Cunningham, 6030 South Jones Boulevard, with Taney Engineering, representing the applicant. I didn't hear staff indicate that we've withdrawn one of the waivers. I just wanted to clarify. Waiver number two, I believe, has been withdrawn? |

**EXHIBIT 3 - 0057**

| | |
|---|---|
| REAL | So, we were waiting, maybe, for you to give the presentation on your revised plans. Staff did receive revised plans. It's our understanding that waivers of development standards number 2 is no longer needed. I just wanted the applicant to confirm that on the record as well. |
| GIBSON | Thank you. |
| CUNNINGHAM | Excellent. Thank you. Appreciate that. First, our site is located off of Valley View, Richmar. Silverado Ranch is just to the south of this area, just off of this area. The area is currently zoned R-E, but it's master planned for up to five units per acre. We're requesting R-1 zoning on this, just to the north of us, in this yellow area. R-1 zoning has already been approved. And the development is in process with the County right now. Our site is located here, as you can see on this aerial view. It's all rural, I'm sorry, undeveloped desert area, adjacent to us, our paved roads, for Valley View, and for Richmar. With this project site that's located in blue here, we would be putting in the full road improvements for our frontage along Richmar. Our site plan here consists of one cul-de-sac with 12 lots on it. All the lots are 6,000 to 6,700 square feet, I believe. |
| | We're proposing to have a detached sidewalk along our entire frontage, landscaping, and we did withdraw the waiver, as staff has confirmed. We do still have one waiver for overheight walls. The overheight walls are primarily along the street frontage here, along the east portion of our site, and a small portion of the north. The site slopes relatively steep, from west to east. And by putting the street in the center, we're going to end up needing to be higher than the three-foot maximum allowed retaining walls and fill that the County has. |
| | We're also requesting to vacate the panned easements that surround the property with this application. That's going to conclude my presentation at the moment. I'd be happy to answer any questions that you have. Thank you very much. |
| GIBSON | Thank you. This is a public hearing as to Items 36, 37 and 38. Is there anyone here who wishes to speak on these items? There being no one, the public hearing is closed. Commissioner Jones. |
| JONES | Thank you, Mister Chair. Move for approval, Agenda Items 36, 37 and 38, with the withdrawal of waiver of development standards number two, and per revised plans. |
| GIBSON | There's a motion for approval is noted. Please cast your votes. The motion carries. Thank you. |
| CUNNINGHAM | Thank you. |
| **ACTION:** | It was moved by Commissioner Justin Jones, and carried by unanimous vote, that the applications for Item Nos. 36, 37, and 38 be approved per revised plans and subject to staff conditions. |

CONDITIONS OF APPROVAL –
Comprehensive Planning
    • No Resolution of Intent and staff to prepare an ordinance to adopt the zoning;
    • Enter into a standard development agreement prior to any permits or subdivision mapping in order to provide fair-share contribution toward public infrastructure necessary to provide service because of the lack of necessary public

**EXHIBIT 3 - 0058**

services in the area;
• All perimeter walls shall be decorative;
• Certificate of Occupancy and/or business license shall not be issued without final zoning inspection.
• Applicant is advised approval of this application does not constitute or imply approval of any other County issued permit, license or approval; the County has adopted a rewrite to Title 30 effective January 1, 2024, and future land use applications, including applications for extensions of time, will be reviewed for conformance with the regulations in place at the time of application; a substantial change in circumstances or regulations may warrant denial or added conditions to an extension of time; the extension of time may be denied if the project has not commenced or there has been no substantial work towards completion within the time specified; and that the waivers of development standards and design reviews must commence within 4 years of approval date or they will expire.

Public Works - Development Review
• Drainage study and compliance;
• Drainage study must demonstrate that the proposed grade elevation differences outside that allowed by Section 30.32.040(a)(9) are needed to mitigate drainage through the site;
• Full off-site improvements;
• Right-of-way dedication to include 25 feet to the back of curb for Richmar Avenue.
• Applicant is advised that approval of this application will not prevent Public Works from requiring an alternate design to meet Clark County Code, Title 30, or previous land use approvals; and that the installation of detached sidewalks will require dedication to back of curb, the vacation of excess right-of-way and granting necessary easements for utilities, pedestrian access, streetlights, and traffic control or execute a License and Maintenance Agreement for non-standard improvements in the right-of-way.

Department of Aviation
• Applicant is advised that issuing a stand-alone noise disclosure statement to the purchaser or renter of each residential unit in the proposed development and to forward the completed and recorded noise disclosure statements to the Department of Aviation's Noise Office at landuse@lasairport.com is strongly encouraged; that the Federal Aviation Administration will no longer approve remedial noise mitigation measures for incompatible development impacted by aircraft operations which was constructed after October 1, 1998; and that funds will not be available in the future should the residents wish to have their buildings purchased or soundproofed.

Clark County Water Reclamation District (CCWRD)
• Applicant is advised that a Point of Connection (POC) request has been completed for this project; to email sewerlocation@cleanwaterteam.com and reference POC Tracking #0331-2023 to obtain your POC exhibit; and that flow contributions exceeding CCWRD estimates may require another POC analysis.

WAIVER OF DEVELOPMENT STANDARDS #2 WAS WITHDRAWN

**ITEM NO. 37** VS-23-0609-COLINN, IMANI LIVING TRUST & IMANI, DARIUSH TRS:
VACATE AND ABANDON easements of interest to Clark County located between Richmar Avenue and Meranto Avenue and between Valley View Boulevard and Hinson Street, and a portion of right-of-way being Richmar Avenue located between Valley View Boulevard and Hinson Street within Enterprise (description on file). JJ/hw/syp (For possible action)

| | |
|---|---|
| **ACTION:** | It was moved by Commissioner Justin Jones, and carried by unanimous vote, that the applications for Item Nos. 36, 37, and 38 be approved per revised plans and subject to staff conditions. |

**EXHIBIT 3 - 0059**

CONDITIONS OF APPROVAL –
Comprehensive Planning
    • Satisfy utility companies' requirements.
    • Applicant is advised that the County has adopted a rewrite to Title 30 effective January 1, 2024, and future land use applications, including applications for extensions of time, will be reviewed for conformance with the regulations in place at the time of application; a substantial change in circumstances or regulations may warrant denial or added conditions to an extension of time; the extension of time may be denied if the project has not commenced or there has been no substantial work towards completion within the time specified; and that the recording of the order of vacation in the Office of the County Recorder must be completed within 2 years of the approval date or the application will expire.

Public Works - Development Review
    • Right-of-way dedication to include 25 feet to the back of curb for Richmar Avenue;
    • Vacation to be recordable prior to building permit issuance or applicable map submittal;
    • Revise legal description, if necessary, prior to recording.
    • Applicant is advised that the installation of detached sidewalks will require the recordation of this vacation of excess right-of-way, dedication to back of curb and granting necessary easements for utilities, pedestrian access, streetlights, and traffic control.

**ITEM NO. 38** TM-23-500127-COLINN, IMANI LIVING TRUST & IMANI, DARIUSH TRS:
TENTATIVE MAP consisting of 12 single family detached residential lots and 2 common lots on 2.4 acres in an R-1 (Single Family Residential) Zone. Generally located on the north side of Richmar Avenue, 165 feet west of Valley View Boulevard within Enterprise. JJ/hw/syp (For possible action)

**ACTION:**                      It was moved by Commissioner Justin Jones, and carried by unanimous vote, that the applications for Item Nos. 36, 37, and 38 be approved per revised plans and subject to staff conditions.

CONDITIONS OF APPROVAL –
Comprehensive Planning
    • Applicant is advised that the County has adopted a rewrite to Title 30 effective January 1, 2024, and future land use applications, including applications for extensions of time, will be reviewed for conformance with the regulations in place at the time of application; a substantial change in circumstances or regulations may warrant denial or added conditions to an extension of time; the extension of time may be denied if the project has not commenced or there has been no substantial work towards completion within the time specified; and that a final map for all, or a portion, of the property included under this application must be recorded within 4 years or it will expire.

Public Works - Development Review
    • Drainage study and compliance;
    • Drainage study must demonstrate that the proposed grade elevation differences outside that allowed by Section 30.32.040(a)(9) are needed to mitigate drainage through the site;
    • Full off-site improvements;
    • Right-of-way dedication to include 25 feet to the back of curb for Richmar Avenue.
    • Applicant is advised that approval of this application will not prevent Public Works from requiring an alternate design to meet Clark County Code, Title 30, or previous land use approvals; and that the installation of detached sidewalks will require dedication to back of curb, the vacation of excess right-of-way and granting necessary easements for utilities,
pedestrian access, streetlights, and traffic control or execute a License and Maintenance Agreement for non-standard improvements in the right-of-way.

Department of Aviation
> • Applicant is advised that issuing a stand-alone noise disclosure statement to the purchaser or renter of each residential unit in the proposed development and to forward the completed and recorded noise disclosure statements to the Department of Aviation's Noise Office at landuse@lasairport.com is strongly encouraged; that the Federal Aviation
> Administration will no longer approve remedial noise mitigation measures for incompatible development impacted by aircraft operations which was constructed after October 1, 1998; and that funds will not be available in the future should the residents wish to have their buildings purchased or soundproofed.

Clark County Water Reclamation District (CCWRD)
> • Applicant is advised that a Point of Connection (POC) request has been completed for this project; to email sewerlocation@cleanwaterteam.com and reference POC Tracking #0331-2023 to obtain your POC exhibit; and that flow contributions exceeding CCWRD estimates may require another POC analysis.

**ITEM NO. 39** ZC-23-0686-MOLLY V. SERIES 3, LLC:
ZONE CHANGE to reclassify 2.5 acres from an R-E (Rural Estates Residential) Zone to an R-2 (Medium Density Residential) Zone.
WAIVERS OF DEVELOPMENT STANDARDS for the following: 1) increase retaining wall height; and 2) eliminate street landscaping.
DESIGN REVIEWS for the following: 1) single family residential subdivision; 2) allow a hammerhead street design; and 3) finished grade. Generally located on the northwest corner of Conquistador Street and Gomer Road within Enterprise (description on file). JJ/sd/syp (For possible action)

| | |
|---|---|
| REAL | Next are Items 39, 40 and 41. Item 39, ZC-23-0686, zone change to reclassify 2.5 acres from an R-E (Rural Estates Residential) Zone to an R-2 (Medium Density Residential) Zone. Waivers of development standards for the following: increase retaining wall height and eliminate street landscaping. Design reviews for the following: single-family residential subdivision, allow hammerhead street design and finished grade, generally located on the northwest corner of Conquistador Street and Gomer Road, within Enterprise. |
| | Item 40, VS-23-0685, vacate and abandon easements of interest to Clark County located between Conquistador Street and Hualapai Way, and between Gomer Road and Cliff Dwellings Avenue (alignment) within Enterprise. |
| | And then, Item 41, TM-23-5140, tentative map consisting of 20 single-family residential lots and common lots on 2.5 acres, in an R-2 (Medium Density Residential) Zone, generally located on the northwest corner of Conquistador Street and Gomer Road, within Enterprise. |
| GIBSON | Miss Lazovich. |
| LAZOVICH | Good afternoon. Jennifer Lazovich, 1980 Festival Plaza Road, here today, on behalf of Beazer Homes. This is the zoning map from the County GIS, which indicates everything around us has been already zoned for R-2. We are seeking a conforming zone change for the piece right here, to also go to R-2. It would be for a single-family detached community. Gomer sits right here, Conquistador sits here. We have one private street with homes that face internally to that. And then, the homes along Conquistador would face out towards Conquistador. That would be similar and match what is happening to the east of us. The east, right immediately, you can see that these lots, right here, face out to Conquistador. Our plan would be to match |

**EXHIBIT 3 - 0061**

LAZOVICH

that, and have the lots right, and along here face out to Conquistador.

Along with that, we are asking for an attached sidewalk along Conquistador, which will match what the area shows. Along Gomer Road, we are doing a detached sidewalk. And the increased wall height that would be internal to the backyards of the new homeowners that come in here, they won't be seen from any external existing properties. And I'd be happy to answer any questions.

GIBSON

Thank you. This is a public hearing as to Items 39, 40 and 41. Is there anyone here who wishes to speak on these items? If so, this is a public hearing, and we'll take your comments now. We'll ask you to please state your name, and spell your last name for our clerk, and please keep your comments to three minutes each.

SANDY BALLI

Good afternoon. I'm Sandy Balli, last name is spelled B, as in boy, A-L-L-I. And we live at 9682 Gleason Creek Street, in Las Vegas. And that is the area west of the proposed application that has been just presented. My husband and my neighbors on either side, we're all here, and we are opposed to the plan, in that the acreage is two and a half acres, and they're proposing 20 homes there, which may be similar to the homes across the street, to the east, that they mentioned. But we are to the west, and our entire neighborhood is the Wyndham neighborhood, that is all single-story homes, and have a little bit bigger lots. And what they're proposing is, right behind us, with very small lots, likely, two-story homes. And that would look directly down on us and decrease our privacy. Interestingly, I noticed earlier, when applicants were presenting, they said they talked to the neighbors, they worked with the neighbors. No one has talked with us, or asked our thoughts or opinions, or tried to work to take our thoughts into account. And that's, mainly, what I wanted to say. I think we all feel like it's too many homes, too small of a little corner, off of our neighborhood, that was, originally, just three empty lots.

GIBSON

Thank you. Is there anyone else who wishes to offer testimony?

JOHN HOVELL

Alright. Good afternoon. I'm John Hovell. I live at 9692 Gleason Creek, so next door to my neighbor. Pretty much echo the same sentiments. I think it's a, really, key consideration that the street that divides Conquistador, that divides the higher density homes, is quite different from where we are. I think my backyard is only about 17 feet deep. I don't really understand fully, the retention wall policies.

Again, nobody has really contacted on us. I only got this mailing, maybe, in very late October. But with a yard depth of only 17 feet, if they're building a 12-foot wall, I pretty much lose all sunlight in my backyard. It's a modest-sized backyard, and I love to have new neighbors. I'd certainly prefer a single-story development. I think that would just be consistent with - if you look at where we are in Clark County, and in Las Vegas, we're in the very, very, very southwest corner. And I think the people who moved to that neighborhood were looking for a little bit more privacy, and a little bit, you know, at least preserving some of the light. The main living area of all these homes, of all these neighbors, would be directly looking at a 12-foot wall outside their yard. For those reasons, I oppose this.
I'd certainly welcome neighbors, but I think it also - lastly, it just sets a poor precedent. I understand that those parcels were for sale a couple of years ago, and our builder tried to buy them, but I guess the seller's prerogative not to sell them. That's fine. But it seems like it would set a poor precedent to, then, give them a

**EXHIBIT 3 - 0062**

| | |
|---|---|
| HOVELL | better deal, where they can build a taller building than what we all have. Thank you very much. |
| GIBSON | Thank you. Is there anyone else who wishes to speak? |
| TERRY WISE | I'm Terry Wise. I live at 9641 Lexington Arch. When we went to the township meeting, we were informed that a hammerhead has no parking in front of the houses, that it's a single lane in, and a single lane out. There can be no rubbish, and it's hard for the emergency vehicles to get in. If that's the case, and all these people will be parking on Conquistador, that's going to be a - not on Conquistador, on Gomer. That's going to be a problem, because that means two thirds of the houses are going to have parking out on Gomer. Because the lot size is so small, that there's probably only going to be one car in front of the house. The houses are so small, they'll probably be using - the garages not for cars. And it's going to be a parking problem for those new neighbors. Thank you. |
| GIBSON | Thank you. If there is anyone else, we need to hear from you. |
| STEVE WALSH | Hi, I'm Steve Walsh. I live at 9672 Gleason Creek Street, next door to our other neighbors. I feel the same concerns, as far as seeing into our yards. We've been given no information. Basically, I went to the other meeting to get information on what they were proposing. We got a real quickie thing. The four Board members there opposed their ideas, and we, since that meeting, have still heard nothing from any developer, or anything. And I'm not opposed to that being developed. I know it will be. We all knew it would be when we bought there, but it would be a little better, in our view, to stay consistent with our neighborhood. Conquistador, if they're building higher density across, to the east of that, that would be great, but ours are single-story. And I hope you guys will consider our privacy. And we don't want a second story being able to see right into our home. Thank you for your time. |
| GIBSON | Thank you. Is there anyone else? |
| MONICA LEE | Hi, my name is Monica Lee, and I live at 9692 Gleason Creek Street. Our home also faces the empty lot. Our backyard looks directly into the lot. And where we also - I'm concerned that we have not been contacted by the builder, at all. I don't really know too many details about the plans, although I have heard about a 12-foot retaining wall for - on our street, it's all single-family homes, once again, so a 12-foot wall seems pretty unreasonable. The Hammerhead street design also, that was also brought up, seems very not in line with the rest of the neighborhood, so I oppose this. |
| GIBSON | Thank you. |
| DON BALLI | Thank you, Commissioners, for allowing us to speak today. My name is Don Balli. My wife spoke earlier, 9682 Gleason Creek Street. |
| GIBSON | Would you please speak up, just a little bit? |
| D. BALLI | You still can't hear - oh, I'm sorry. Want me to start over? Okay. I don't need to? Alright. I think that, basically, my observations are very similar, of course, to what my wife shared, with the rest of our neighbors there. I think the developer wanting |

**EXHIBIT 3 - 0063**

| | |
|---|---|
| D. BALLI | to mention that they're developing something that's similar, across the road of Conquistador. That's another neighborhood. I wish they'd taken a look at the current neighborhood area, on our side of Conquistador, and try to match that. Because I know our builder attempted to try to purchase that, and they wouldn't sell it. That's what we were told. I'm not opposed to something being built there. Obviously, it will be, at some point in time, but I would like it to fit our neighborhood. Thank you. |
| GIBSON | Thank you. Is there anyone else who wishes to speak on these items? Then the public hearing is closed. Commissioner Jones |
| JONES | Thank you, Mister Chair. Miss Lazovich, can you address the concerns that were raised with regards to a 12-foot wall? I guess, my understanding is, they would be higher up, so they would not be subject to a 12-foot wall but - |
| LAZOVICH | Jennifer Lazovich for the record. The community, from where the neighbors spoke, sits over here, so it's to the west, and to the north. The request for the waiver for the wall height exists between our existing lots, or our future lots, so it only exists here. It would not be seen by anybody that is in existing homes on the outside of our project. So future homeowners that live in these lots, along here, may have that taller wall in their backyard. It is not going to impact any of the existing homeowners that are already in the houses here. They won't ever see it. Could I address a couple of other things? |
| JONES | Yep. |
| LAZOVICH | Okay. I wanted to point that out, so I'm glad that you asked that question. I hope that's clear. It is an internal wall between new home to new home.<br><br>With respect to the hammerhead, this is our hammerhead, right here. Immediately across to the east, there is a hammerhead here. The community to the west and north side of us, there's - end in stub streets. We are mirroring what was happening, or at least, happened on the street immediately to the east of us, the community where the neighbors came from, their streets, end in stub streets.<br><br>The comment about no parking, I just want to be clear, that was - I didn't make that comment, but where it came up - just to be clear, it's in the actual part of the hammerhead. There is the ability for parking on one side of the street, for the length of the street A, but you just couldn't have parking within the hammerhead past a certain point. I do want to point out that all of these homes have two-car garages and full-length driveways.<br><br>And then, the other thing that I wanted to note is, a number of the neighbors raised just concerns about privacy. Yes, these are two-story homes. They fit within, or they are below the 35 feet, which is allowed. But Beazer would offer up a condition, that there would be no balconies, no second story balconies on any of the lots, just to further help with that privacy concern. |
| JONES | Very good. I'll go ahead and move for approval of Agenda Items Number 39, 40 and 41 subject to an additional condition with regards to no balconies on any of the homes. |

**EXHIBIT 3 - 0064**

| GIBSON | There's a motion for approval with one additional condition related to balconies. Any discussion on the motion? Please cast your votes. And the motion carries. Thank you. |
| LAZOVICH | Thank you. Have a happy Thanksgiving. |
| GIBSON | Thank you. |
| **ACTION:** | It was moved by Commissioner Justin Jones, and carried by unanimous vote, that the applications for Item Nos. 39, 40, and 41 be approved subject to staff and additional conditions. |

CONDITIONS OF APPROVAL –
Comprehensive Planning
   • No Resolution of Intent and staff to prepare an ordinance to adopt the zoning;
   • No second story balconies;
   • Enter into a standard development agreement prior to any permits or subdivision mapping in order to provide fair-share contribution toward public infrastructure necessary to provide service because of the lack of necessary public services in the area;
   • Certificate of Occupancy and/or business license shall not be issued without final zoning inspection.
   • Applicant is advised that the County has adopted a rewrite to Title 30 effective January 1, 2024, and future land use applications, including applications for extensions of time, will be reviewed for conformance with the regulations in place at the time of application; a substantial change in circumstances or regulations may warrant denial or added conditions to an extension of time; the extension of time may be denied if the project has not commenced or there has been no substantial work towards completion within the time specified; and that the waivers of development standards and design reviews must commence within 4 years of approval date or they will expire.

Public Works - Development Review
   • Drainage study and compliance;
   • Drainage study must demonstrate that the proposed grade elevation differences outside that allowed by Section 30.32.040(a)(9) are needed to mitigate drainage through the site;
   • Right-of-way dedication to include 35 feet to the back of curb for Gomer Road, 30 feet for Conquistador Street and associated spandrel.
   • Applicant is advised that approval of this application will not prevent Public Works from requiring an alternate design to meet Clark County Code, Title 30, or previous land use approvals; and that the installation of detached sidewalks will require dedication to back of curb and granting necessary easements for utilities, pedestrian access, streetlights, and traffic control.

**ITEM NO. 40** VS-23-0685-MOLLY V. SERIES 3, LLC:
VACATE AND ABANDON easements of interest to Clark County located between Conquistador Street and Hualapai Way and between Gomer Road and Cliff Dwellings Avenue (alignment) within Enterprise (description on file). JJ/sd/syp (For possible action)

| **ACTION:** | It was moved by Commissioner Justin Jones, and carried by unanimous vote, that the applications for Item Nos. 39, 40, and 41 be approved subject to staff and additional conditions. |

CONDITIONS OF APPROVAL –
Comprehensive Planning

**EXHIBIT 3 - 0065**

• Satisfy utility companies' requirements.
• Applicant is advised that the County has adopted a rewrite to Title 30 effective January 1, 2024, and future land use applications, including applications for extensions of time, will be reviewed for conformance with the regulations in place at the time of application; a substantial change in circumstances or regulations may warrant denial or added conditions to an extension of time; the extension of time may be denied if the project has not commenced or there has been no substantial work towards completion within the time specified; and that the recording of the order of vacation in the Office of the County Recorder must be completed within 2 years of the approval date or the application will expire.

Public Works - Development Review
• Right-of-way dedication to include 35 feet to the back of curb for Gomer Road, 30 feet for Conquistador Street and associated spandrel;
• Vacation to be recordable prior to building permit issuance or applicable map submittal;
• Revise legal description, if necessary, prior to recording.
• Applicant is advised that the installation of detached sidewalks will require dedication to back of curb and granting necessary easements for utilities, pedestrian access, streetlights, and traffic control.

**ITEM NO. 41** TM-23-500140-MOLLY V. SERIES 3, LLC:
TENTATIVE MAP consisting of 20 single family residential lots and common lots on 2.5 acres in an R-2 (Medium Density Residential) Zone. Generally located on the northwest corner of Conquistador Street and Gomer Road within Enterprise. JJ/sd/syp (For possible action)

**ACTION:**                         It was moved by Commissioner Justin Jones, and carried by unanimous vote, that the applications for Item Nos. 39, 40, and 41 be approved subject to staff and additional conditions.

CONDITIONS OF APPROVAL –
Comprehensive Planning
• Applicant is advised that the County has adopted a rewrite to Title 30 effective January 1, 2024, and future land use applications, including applications for extensions of time, will be reviewed for conformance with the regulations in place at the time of application; a substantial change in circumstances or regulations may warrant denial or added conditions to an extension of time; the extension of time may be denied if the project has not commenced or there has been no substantial work towards completion within the time specified; and that a final map for all, or a portion, of the property included under this application must be recorded within 4 years or it will expire.

Public Works - Development Review
• Drainage study and compliance;
• Drainage study must demonstrate that the proposed grade elevation differences outside that allowed by Section 30.32.040(a)(9) are needed to mitigate drainage through the site;
• Right-of-way dedication to include 35 feet to the back of curb for Gomer Road, 30 feet for Conquistador Street and associated spandrel.
• Applicant is advised that approval of this application will not prevent Public Works from requiring an alternate design to meet Clark County Code, Title 30, or previous land use approvals; and that the installation of detached sidewalks will require dedication to back of curb and granting necessary easements for utilities, pedestrian access, streetlights, and traffic control.

Comprehensive Planning - Addressing
• Streets shall have approved street names and suffixes.

EXHIBIT 3 - 0066

Clark County Water Reclamation District (CCWRD)
       • Applicant is advised that a Point of Connection (POC) request has been completed for this project; to email sewerlocation@cleanwaterteam.com and reference POC Tracking #0260-2023 to obtain your POC exhibit; and that flow contributions exceeding CCWRD estimates may require another POC analysis.

**PUBLIC COMMENTS**

GIBSON                          Thank you. This is the time for the final public comment. Anyone who wishes to make public comment, please, is invited to come forward, state your name. There being no one, the public comment period is closed, and this meeting stands adjourned. Thank you.

There being no further business to come before the Board at this time, at the hour of 3:34 p.m., the meeting was adjourned.

APPROVED:                    /s/ James B. Gibson
                             _____
                             JAMES B. GIBSON, CHAIR

ATTEST:                        /s/ Lynn Marie Goya
                             _____
                             LYNN MARIE GOYA, COUNTY CLERK

**EXHIBIT 3 - 0067**

1

## CERTIFICATE OF SERVICE

2

3       I, the undersigned, hereby certify that on January 31, 2025, I personally served a true and

4   correct copy of the foregoing **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF**

5   **PLAINTIFFS TACSIS APC'S AND KENT LIMSON'S OPPOSITION TO DEFENDANTS**

6   **ALL NET LAND DEVELOPMENT, LLC'S AND DAVID LOWDEN'S MOTION TO**

7   **DISMISS PLAINTIFF'S COMPLAINT, OR ALTERNATIVELY FOR *COLORADO***

8   ***RIVER* STAY**, by the following means:

9

10      CM/ECF

11

12      U.S. MAIL

13

14  on the following individuals:

| | |
|---|---|
| **HANRATTY LAW GROUP**<br>Kevin M. Hanratty, Esq. (NV SBN: 007734)<br>1815 Village Center Circle, Suite 140<br>Las Vegas, NV 89134'<br>T: (702) 821-1379<br>Email: kevinh@hanrattylawgroup.com<br><br>*Attorneys for Defendants,* ALL NET LAND DEVELOPMENT, LLC, and DAVID G. LOWDEN | **LORING JACOBS**<br>1 Hughes Center, Unit 904<br>Las Vegas, NV 89169<br>T: (702) 735-7928<br>Email: wayner1and2@icloud.com<br><br>*Defendant,* In Pro Per |
| **JACKIE ROBINSON**<br>2300 W. Sahara Blvd., Suite 800<br>Las Vegas, NV 89102<br>T: (702) 856-4440<br>Email: jackierob@embarqmail.com<br><br>*Defendant*, In Pro Per | **GORDON REES SCULLY & MANSUKHANI**<br>John M. Palmeri, Esq.<br>555 Seventeenth Street, Ste. 3400<br>Denver, CO 80202<br>T: (303) 534-5145<br>Email: jpalmeri@grsm.com<br><br>*Attorneys for* MESSNER REEVES LLP and TORBEN WELCH |

28

1

2

**BIRD, MARELLA, RHOW, LINCENBERG DROOKS & NESSIM LLP**
Gary S. Lincenberg, Esq.
1875 Century Park East, 23rd Floor
Los Angeles, CA 90067
T: (310) 201-2100
Email: glicenberg@birdmarella.com

3

4

5

6

7

8

*Courtesy Copy on behalf of Defendants,*
LORING JACOBS, JACKIE ROBINSON,
ALL NET, LLC, and DRIBBLE DUNK, LLC

9

10    I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

11

12

                        /s/ Maria España
                        Maria España
                        3424 W. Carson Street, Ste. 600
                        Torrance, CA 90503

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28