JACQUELINE V. NICHOLS, ESQ.
Nevada Bar No. 14246
**GORDON REES SCULLY MANSUKHANI, LLP**
300 So. 4th Street, Suite 1550
Las Vegas, Nevada 89101
Telephone: (702) 577-9300
Direct: (702) 577-9315
Facsimile: (702) 255-2858
E-Mail: jnichols@grsm.com

*Attorney for Defendants Messner Reeves LLP and Torben Welch*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| TACSIS APC, a California corporation; and KENT LIMSON, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>JACKIE ROBINSON, an individual; ALL NET LAND DEVELOPMENT, LLC, a Nevada Limited Liability Company; ALL NET, LLC, a Nevada Limited Liability Company; DRIBBLE DUNK, LLC, a Nevada Limited Liability Company; AGS ASSURETY, LLC, a Nevada Limited Liability Company; TIMOTHY J. ARELLANO, an individual; DAVID LOWDEN, an individual; MESSNER REEVES LLP, a Colorado Limited Liability Partnership; TORBEN WELCH, an individual; LORING JACOBS, an individual, and DOES 1 THROUGH 100 INCLUSIVE,<br><br>Defendants. | Case No.: 2:24-cv-02284-RFB-EJY<br><br>**MESSNER REEVES, LLP AND TORBEN WELCH'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR FAILURE TO STATE A CLAIM** |

Defendants Messner Reeves LLP, and Torben Welch (collectively, "Attorney Defendants"), by and through their attorneys at the law offices of GORDON REES SCULLY MANSUKHANI, LLP, move this Court, pursuant to Fed. R. Civ. P. Rules 9(b) and 12(b)(6), to dismiss Plaintiffs' *Complaint for Injunctive and Other Relief for Racketeer Influenced and Corrupt Organizations* because the Complaint fails to state a relief against Attorney Defendants upon which relief can be granted.

This Motion is made and supported by the attached memorandum of points and authorities and all papers and pleadings on file herein.

1

DATED this 11th day of February 2025.

**GORDON REES SCULLY MANSUKHANI, LLP**

*/s/ Jackie Nichols*
Jacqueline V. Nichols, Esq.
Nevada Bar No. 14246
300 So. 4th Street, Suite 1550
Las Vegas, Nevada 89101

***Attorney for Defendants Messner Reeves LLP and Torben Welch***

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION, RELIEF SOUGHT, SPECIFIC GROUNDS FOR MOTION

Plaintiffs, Tacsis APC and Ken Limson, allege they made a series of loans to fund the construction of a basketball arena and family resort in Las Vegas. According to the allegations in the Complaint, those loans were never repaid.

Plaintiffs allege the terms of the loan were embodied in seven written contract agreements, but they do not seek recovery in this lawsuit based on any contract theory. Rather, they bring one cause of action, under the Racketeer Influenced and Corrupt Organization Act ("RICO"), claiming the ten named defendants and countless others conspired to defraud Plaintiffs into contributing money to the "All Net Project." Among the named defendants are Messner Reeves, a Colorado-based law firm, and Torben Welch, a Messner Reeves attorney who provided legal services to other defendants.

Because Plaintiffs do not allege Attorney Defendants actually participated in the operation or management of the enterprise conducting the pattern of racketeering activity that gives rise to their RICO claim, they fail to state a claim against Attorney Defendants. Plaintiffs do not allege Attorney Defendants committed the acts of wire fraud forming the "pattern of racketeering activity" underlying their RICO claim. Rather, they allege Attorney Defendants

2

participated in a "secondary enterprise," associating with "several known and convicted felons," to defraud *other entities* in a scheme involving Business Equity Lines of Credit (the "secondary enterprise"). Even if Plaintiffs' allegations about this "secondary enterprise" were true, and they are not, Plaintiffs do not allege any predicate acts of racketeering conducted by the secondary enterprise with the specificity required by Rule 9(b). Moreover, they do not claim their funds were among those client funds allegedly siphoned off, and they do not allege that they were victims of the BELOC scheme. That is, they do not allege that *they* were injured by the conduct of this secondary enterprise. They do not allege any connection between this "secondary enterprise" and the predicate acts of wire fraud underlying their RICO claim.

Even if Plaintiffs plausibly allege that Attorney Defendants participated in the conduct at the heart of the Complaint, their claim would be barred by the statute of limitations. Plaintiffs previously initiated lawsuits based on the same conduct alleged here in federal and state courts in California, where Messner Reeves represented some of the defendants. Those other lawsuits establish that Plaintiffs have been aware of the injury underlying their Complaint for more than four years, which means their RICO claim accrued outside the statute of limitations for a civil RICO claim.

For these reasons Plaintiffs' claims are subject to dismissal under Rule 12(b)(6).

## II.   SUMMARY OF RELEVANT ALLEGATIONS IN COMPLAINT

Plaintiffs allege the following in their Complaint [ECF No. 1]:

1.   Plaintiffs provided a series of seven loans to Defendant All Net LLC from November 2018 to July 2019. [*Id.* ¶¶ 33, 14:13–27].

2.   The loans were supposed to fund the "All Net Project," which was described as a "prospective elaborate basketball arena and family resort." [*Id.* ¶¶ 33, 20].

3.   Plaintiffs received performance bonds as security for the loans, which Plaintiffs discovered were forgeries, and no bond was ever issued. [*Id.* ¶ 31].

4.   The loans were personally guaranteed by Defendant Jackie Robinson. [*Id.* ¶ 22.a].

5.   Defendant Robinson transferred funds to a separate account in the name of

3

1  Dribble Dunk, LLC, which was owned by Defendant Robinson. [*Id.* ¶ 22.b]

2      6.    Defendant Robinson paid Welch for Welch's services. [*Id.* ¶ 22.c].

3      7.    Defendants siphoned money from Messner Reeves LLP's client trust account. [*Id.* ¶ 42].

5      8.    Welch associated with several known and convicted felons for the purpose of creating fake lending entities that would take fees from businesses without ever providing loans. [*Id.* ¶ 43].

8      9.    The All Net Project crumbled. [*Id.* ¶ 45].

9      10.    Plaintiffs' loans were never repaid. [*Id.* ¶ 32].

10      11.    Plaintiffs sued the breaching parties in Los Angeles County Superior Court. [*Id.* ¶ 34].

### III. ARGUMENT

#### A. Supporting Authority

Fed. R. Civ. P. 12(b)(6) requires dismissal of Plaintiffs' Complaint if it "fails to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 577). That is, although the court must accept as true all well-pleaded factual allegations in a complaint, it need not accept legal conclusions. *Id.*

The Court also "need not … accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Gonzalez v. Planned Parenthood of Los Angeles,* 759 F.3d 1112, 1115 (9th Cir. 2014) (quoting, *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988

1  (9th Cir. 2001). *See also Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir. 2001) ("under
2  Fed. R. Evid. 201, a court may take judicial notice of 'matters of public record'" in ruling on a
3  motion to dismiss).
4      A statute of limitations defense may be raised by a motion for dismissal. *Jablon v. Dean*
5  *Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). "When a motion to dismiss is based on the
6  running of the statute of limitations, it can be granted only if the assertions of the complaint, read
7  with the required liberality, would not permit the plaintiff to prove that the statute was tolled."
8  *Id. See also Martinez v. Bank of Am.*, No. 2:10–cv–01387–GMN–LRL, 2011 WL 17401146, at
9  *2 (D. Nev. May 5, 2011) (dismissing complaint where court was able to determine statute had
10 run after taking judicial notice of matters of public record).

**B. Plaintiffs fail to allege a plausible RICO claim against Attorney Defendants.**

12     A plaintiff asserting a civil RICO claim must plausibly allege the following elements:
13 "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as
14 'predicate acts') (5) causing injury to the plaintiff's 'business or property.'" *Grimmett v. Brown,*
15 75 F.3d 506, 510 (9th Cir. 1996) (citing 18 U.S.C. §§ 1964(c), 1962(c); *Sedima, S.P.R.L. v.*
16 *Imrex Co.*, 473 U.S. 479, 496 (1985). These required elements for a claim under 18 U.S.C. §
17 1964(c) "must be established as to each individual defendant," *Craig Outdoor Advert., Inc. v.*
18 *Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027 (8th Cir. 2008) (citing *Sedima,* 473 U.S. at 500),
19 because the "focus of section 1962(c) is on the individual patterns of racketeering engaged in by
20 a defendant, rather than the collective activities of the members of the enterprise, which are
21 proscribed by section 1962(d)." *United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987). To
22 state a claim under RICO, Plaintiffs must allege facts to establish that "the alleged predicate acts
23 of racketeering activity were knowingly and willfully committed by the defendant." *In re*
24 *Integrated Res. Real Est. Ltd. Partnerships Sec. Litig.*, 850 F.Supp. 1105, 1145 (S.D.N.Y. 1993)
25 (relying on *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 283 (1992)).
26     Fed. R. Civ. P. 9(b) requires a plaintiff asserting a RICO claim based on mail or wire
27 fraud, as the Plaintiffs do here, to allege facts constituting such fraud with particularity.

5

1  *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991). To
2  survive a motion to dismiss, a complaint must "allege the time, place or nature of the defendants'
3  allegedly fraudulent conduct." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th
4  Cir. 1989). *See also George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1254 (10th Cir. 2016)
5  (complaint "must 'set forth the time, place and contents of the false representation, the identity of
6  the party making the false statements and the consequences thereof.'"). "Rule 9(b) does not
7  allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to
8  differentiate their allegations when suing more than one defendant ... and inform each defendant
9  separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v.*
10 *KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco*
11 *Co.*, 995 F.Supp. 1437, 1439 (M.D. Fla. 1998)).

12     Attorney Defendants request that the Court dismiss the RICO claim because 1) Plaintiffs
13 do not allege Attorney Defendants participated in the predicate acts; 2) Plaintiffs do not allege
14 the conduct surrounding the "secondary enterprise" with particularity; and 3) Plaintiffs do not
15 allege Attorney Defendants' conduct caused any injury to Plaintiffs.

16     **1.  Plaintiffs do not allege Attorney Defendants participated in the predicate acts.**

17     The RICO claim in this case is predicated on "seven acts of wire fraud" between
18 November 2018 and July 2019. [ECF No. 1, at 14:13–27]. Plaintiffs baldly assert that
19 "DEFENDANTS" carried out these seven predicate acts, but they do not allege any individual
20 conduct by Attorney Defendants supporting this assertion.[1] According to the allegations in the
21 Complaint, the funds were loaned to Defendant All Net, LLC; the loans were guaranteed by
22 Defendant Robinson; they were backed by performance bonds issued by Defendants Timothy
23 Arellano and AGS Assurety, LLC; the loan funds were transferred to Defendant Dribble Dunk,
24 LLC. [*Id.* at 5:3–21].

---

[1] Messner Reeves was not even involved in 2018 and 2019. Messner Reeves was not engaged until late 2021.

6

1   Plaintiffs do not allege Attorney Defendants made or assisted an interstate wire
2   communication, performed any actions that injured Plaintiffs, or engaged in any conduct directed
3   to Plaintiffs or the alleged "scheme." *See United States v. Jinian*, 725 F.3d 954, 960 (9th Cir.
4   2013) (discussing elements of wire fraud). All Plaintiffs allege here with respect to Attorney
5   Defendants is that Robinson controlled the Dribble Dunk account and would "pay funds to
6   WELCH for his services." [ECF No. 1, at 5:12–16].

7   Even on the most liberal reading of the Complaint, assuming Plaintiffs mean to imply
8   that Robinson paid Welch with proceeds from the wire fraud scheme (a fact they do not actually
9   allege), the Complaint still fails to state a RICO claim against Attorney Defendants. Mere receipt
10   of racketeering income is insufficient for liability to attach under RICO. *See Grider v. Texas Oil
11   & Gas Corp.*, 868 F.2d 1147, 1149 (10th Cir.1989) ("Significantly, the statute does not state that
12   it is unlawful to *receive* racketeering income; rather … the statute prohibits a person who *has
13   received* such income *from using or investing it* in the proscribed manner.") (emphasis in
14   original). *See also Nugget Hydroelectric, L.P. v. Pacific Gas & Elec. Co.*, 981 F.2d 429, 437 (9th
15   Cir. 1992) (adopting *Grider*).

16   Plaintiffs allege nothing to suggest Attorney Defendants participated in the operation or
17   management of the wire fraud scheme. Accordingly, Plaintiffs fail to state a claim against
18   Attorney Defendants.

19   **2. Plaintiffs do not allege any conduct by Attorney Defendants with particularity.**

20   Plaintiffs do not allege Attorney Defendants participated in the enterprise that conducted
21   the racketeering activity underlying their RICO claim. Rather, they allege Welch was part of "a
22   secondary enterprise," the nature of which is nebulously defined. [ECF No. 1, ¶¶ 42–43]. This
23   secondary enterprise involved "setting up" various entities between Welch and Robinson to
24   entice businesses to provide funds in the form of loan fees. Plaintiffs do not explain how this
25   "secondary enterprise" bears any logical connection to the primary enterprise. The implication
26   seems to be that, because Welch represented one of the defendants involved in the alleged
27   enterprise in this case, and because he allegedly "associated with several known and convicted

7

felons" in a subsequent secondary enterprise, he and his firm should be held liable under RICO for Plaintiffs' claimed losses related to the wire fraud scheme. That is not how RICO works.

"Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device.'" *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996), *aff'd sub nom. Katzman v. Victoria's Secret Catalogue, Div. of The Ltd., Inc.*, 113 F.3d 1229 (2d Cir. 1997) (quoting *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991). "Because the 'mere assertion of a RICO claim ... has an almost inevitable stigmatizing effect on those named as defendants ... courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'" *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir.1990).

In their allegations about the predicate acts conducted by the primary enterprise, Plaintiffs allege the date of every wire, the amount of every loan, the payee, and the depository bank. [ECF No. 1, 14:13–27]. No such particulars are offered as regards the secondary enterprise. Rather, Plaintiffs simply refer to other lawsuits involving claims by unrelated parties and offer the conclusory allegation that the conduct at issue in those lawsuits "was an elaborate evolution of how DEFENDANTS defrauded PLAINTIFFS." [*Id.* at 12:3]. There are no well-pleaded factual allegations to support this leap. Because the conduct of the secondary enterprise is not alleged with sufficient particularity, the Court should dismiss Plaintiffs' RICO claim against Attorney Defendants pursuant to Fed. R. Civ. P. Rules 9(b) and 12(b)(6).

**3. Plaintiffs do not allege any injury arising from Attorney Defendants' conduct.**

Plaintiffs seek damages in this case based on the amount of the unpaid loans, which is $2,144,200.00. [ECF No. 1, 14:13–27; 16:15–16]. As noted above, Plaintiffs do not allege Attorney Defendants participated in the wire fraud scheme related to the loans. Under the most generous reading of the Complaint, Plaintiffs allege at most that Welch received proceeds from the wire fraud scheme.

The only other allegations about Attorney Defendants' conduct is in paragraphs 42 and 43 of the Complaint, related to the secondary enterprise. There, Plaintiffs lump Attorney Defendants in not just with other named Defendants, but also with other entities that are not even

8

1  parties to this case. Plaintiffs make no effort to differentiate their allegations. For instance,
2  Plaintiffs allege, "The next stage of DEFENDANTS' funding scheme; siphoning client funds
3  from MRLLP's client trust account under the guise of "investing" the siphoned funds -- of
4  course, without the consent of the clients whose funds were being siphoned." [ECF No. 1,
5  11:13–15]. Based on what follows, Plaintiffs presumably mean to suggest Welch was the one
6  siphoning client funds, although they do not expressly state as much. Regardless, even if
7  Plaintiffs had any basis to allege Welch was siphoning client funds, they do not allege any facts
8  indicating that this conduct caused injury to *Plaintiffs'* business or property.
9        Plaintiffs then allege Welch "resorted to a secondary enterprise where he set up various
10 entities between himself and ROBINSON … to give himself a substantial ownership interest in
11 the ALL NET PROJECT, and if successful, would make himself a billionaire." [*Id.* at 11:16–19].
12 The "BELOC scheme" was allegedly conducted to "facilitate this secondary enterprise." [*Id.* at
13 11:20–23]. As noted above, Plaintiffs do not allege precisely *how* the BELOC scheme
14 "facilitated" any pattern of racketeering. Again, regardless, even if Attorney Defendants in fact
15 committed every bad act Plaintiffs purport to attribute to them in furtherance of the BELOC
16 scheme, the predicate acts occurred in 2018 and 2019, years before the BELOC scheme. The
17 only damages claimed here are those resulting from the alleged default on the loans to All Net,
18 LLC. Plaintiffs do not have a right of action against Attorney Defendants simply because they
19 learned other parties have initiated actions based on unrelated conduct. The lack of injury
20 provides an independent basis for dismissal under Rule 12(b)(6).
21     **C. Plaintiffs' claim is barred by the statute of limitations.**
22       Alternatively, even if Plaintiffs did state a plausible claim for relief against Attorney
23 Defendants, their Complaint is time-barred, as argued by Defendants All Net Land Development,
24 LLC and David Lowden (collectively, "ANLD Defendants") in their January 17, 2025 Motion to
25 Dismiss. [ECF No. 13].
26       As Plaintiffs and ANLD Defendants agree, the statute of limitations for a civil RICO
27 claim is four years. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.,* 483 U.S. 143, 156
28

9

1  (1987). [ECF No. 13, at 13]; [ECF No. 31, at 10]. Under Ninth Circuit law, "the civil RICO
2  limitations period begins to run when a plaintiff knows or should know of the injury that
3  underlies his cause of action." *Pincay v. Andrews,* 238 F.3d 1106, 1109 (9th Cir. 2001).
4  Plaintiffs do not oppose ANLD Defendants' Request for Judicial Notice [ECF No. 14], and they
5  do not dispute the facts of which ANLD Defendants ask the Court to take judicial notice:
6  namely, that Plaintiffs filed lawsuits based on these same underlying facts in February 2020 and
7  November 2020. [ECF No. 14, 2:5–21]. However, Plaintiffs argue those lawsuits do not establish
8  they knew of the injury that underlies their cause of action.

9        Plaintiffs argument is not persuasive. Their "Statement of Relevant Facts" do not include
10 any facts to support their claim they were unaware of the injury underlying their RICO claim in
11 November 2020. The injury in this case is the default of loan of $2,144,200.00. According to the
12 Complaint, Plaintiffs seek damages for the injury in this case "in the amount of $2,144,200.00,
13 trebled to $6,432,600.00 pursuant to 18 U.S.C. § 1964(c)." [ECF No. 1, 16:15–16]. These
14 damages are based on the total amount of the seven loans to All Net, LLC, which Plaintiffs
15 allege as the basis of the pattern of racketeering activity underlying the RICO claim. [*Id.* at
16 14:13–27]. These seven loans, the alleged injury in this case also form the basis for Plaintiffs'
17 lawsuit in the Los Angeles Superior Court (the "LASC Complaint"). [ECF No. 14.3, 4:17–21].

18       Plaintiffs argue they were injured by the fact that the bonds issued by Defendants
19 Arellano and AGS were fraudulent, a fact which they did not discover until 2023 or 2024. [ECF
20 No. 31, 7:21–26]. In their Complaint, they allege, "After conducting discovery in the
21 CALIFORNIA ACTION, it became evident that it was something much more than simply
22 defaulted loans; it was clearly fraud and a Ponzi scheme." [ECF No. 1, 8:23–25]. None of the
23 allegations that follow have anything to do with Attorney Defendants, nor do they establish
24 Plaintiffs were unaware of the injury underlying their claims. [*Id.* at 8:26–10:3]. Their LASC
25 Complaint includes a claim for fraud based on the allegation that Arellano and AGS made false
26 representations that the bonds were backed by 400 million dollars in assets. [ECF No. 14.3,
27 12:24–13:2]. Plaintiffs allege in the instant Complaint that the bonds were "fraudulent forgeries,"

1 [ECF No. 1, 7:26], but now argue that the bonds are "non-existent." [ECF No. 31, 13:2].
2 Whether the bonds were fraudulent forgeries, whether they were non-existent, or whether the
3 representations about the bonds were false, the *fact* of Plaintiffs' alleged injury, damages
4 resulting from the defaulted loans for $2,144,200, remains the same. Plaintiffs argument that a
5 new injury was somehow created by their discovery that the bonds did not exist is nonsensical.
6 There is no reasonable basis for Plaintiffs' contention that they were not aware of their injury,
7 the damages as a result of the loan, when they initiated the LASC Complaint in November 2020.
8 Accordingly, the Court may properly dismiss the RICO Claim as time-barred under *Agency*
9 *Holding Corp.*

## IV. CONCLUSION

For the reasons given above, Defendants Messner Reeves LLP and Torben Welch request that the Court dismiss the Complaint against them for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

DATED this 11th day of February 2025.

**GORDON REES SCULLY MANSUKHANI, LLP**

*/s/ Jackie Nichols*
Jacqueline V. Nichols, Esq.
Nevada Bar No. 14246
300 So. 4th Street, Suite 1550
Las Vegas, Nevada 89101

***Attorney for Defendants Messner Reeves LLP and Torben Welch***