Robert E. Schumacher, Esq.
Nevada Bar No. 7504
**GORDON REES SCULLY MANSUKHANI, LLP**
300 So. 4th Street, Suite 1550
Las Vegas, Nevada  89101
Telephone:  (702) 577-9300
Direct:  (702) 577-9319
Facsimile:  (702) 255-2858
rschumachwer@grsm.com

John M. Palmeri, *pro hac vice admission*
William G. Dewey, *pro hac vice admission*
**GORDON REES SCULLY MANSUKHANI, LLP**
555 Seventeenth Street, Ste. 3400
Denver, CO 80202
Telephone: (303) 534-5145
jpalmeri@grsm.com
wdewey@grsm.com

*Attorney for Defendants Messner Reeves LLP
and Torben Welch*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| TACSIS APC, a California corporation; and KENT LIMSON, an individual,<br><br>                    Plaintiffs,<br>v.<br><br>JACKIE ROBINSON, an individual; ALL NET LAND DEVELOPMENT, LLC, a Nevada Limited Liability Company; ALL NET, LLC, a Nevada Limited Liability Company; DRIBBLE DUNK, LLC, a Nevada Limited Liability Company; AGS ASSURETY, LLC, a Nevada Limited Liability Company; TIMOTHY J. ARELLANO, an individual; DAVID LOWDEN, an individual; MESSNER REEVES LLP, a Colorado Limited Liability Partnership; TORBEN WELCH, an individual; LORING JACOBS, an individual, and DOES 1 THROUGH 100 INCLUSIVE,<br><br>                    Defendants. | Case No.:  2:24-cv-02284-RFB-EJY<br><br>**MESSNER REEVES, LLP AND TORBEN WELCH'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM** |

Defendants Messner Reeves LLP, and Torben Welch (collectively, "Attorney Defendants"), by and through their attorneys at the law offices of GORDON REES SCULLY MANSUKHANI, LLP, move this Court, pursuant to Fed. R. Civ. P. Rules 9(b) and 12(b)(6), to dismiss Plaintiffs' *First Amended Complaint for Injunctive and Other Relief for Racketeer*

*Influenced and Corrupt Organizations* because the First Amended Complaint fails to state a claim for relief against Attorney Defendants upon which relief can be granted.

    This Motion is made and supported by the attached memorandum of points and authorities and all papers and pleadings on file herein.

    DATED this 11th day of February 2025.

**GORDON REES SCULLY MANSUKHANI, LLP**
Robert E. Schumacher, Esq.
Nevada Bar No. 7504
300 So. 4th Street, Suite 1550
Las Vegas, Nevada 89101

**GORDON REES SCULLY MANSUKHANI, LLP**

 /s/  William G. Dewey
John M. Palmeri, *pro hac vice admission*
William G. Dewey, *pro hac vice admission*
555 Seventeenth Street, Ste. 3400
Denver, Colorado 80202
(303) 534-5160
wdewey@grsm.com

***Attorneys for Defendants Messner Reeves LLP and Torben Welch***

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION, RELIEF SOUGHT, SPECIFIC GROUNDS FOR MOTION**

Plaintiffs, Tacsis APC and Ken Limson, allege that they made a series of loans to fund the construction of a basketball arena and family resort in Las Vegas, and that those loans were never repaid.

Plaintiffs claim the terms of the loan were embodied in seven written contract agreements, but they do not seek recovery in this lawsuit based on any contract theory. In their initial compliant, Plaintiffs asserted one cause of action under the Racketeer Influenced and Corrupt Organization Act ("RICO"). They claimed the ten named defendants, including Messner Reeves, a law firm, and Torben Welch, a Messner Reeves attorney who provided legal services to other defendants, conspired with countless others to defraud Plaintiffs into contributing money to the "All Net Project."

The Court dismissed Plaintiffs' initial complaint for failure to state a claim upon which relief may be granted. ECF No. 95. The Court held the Plaintiffs had not plausibly alleged a RICO claim against Attorney Defendants. *Id.* at 8:9–10. The Court also held that Plaintiffs' federal RICO claims were time-barred, noting, "Although it seems unlikely that additional facts could cure the statute of limitations issue, I grant the plaintiffs leave to amend their complaint if they can plead additional facts to support a RICO claim within the limitation period." *Id.* at 7:1–3.

Plaintiffs filed their First Amended Complaint ("FAC") on September 2, 2025. ECF No. 97. The additional facts alleged in the FAC are insufficient to cure the deficiencies found by the Court with regard to the federal RICO claim, because Plaintiffs still do not allege that Attorney Defendants participated in the operation or management of the enterprise conducting the pattern of racketeering activity that gives rise to the claim. The new factual allegations are also insufficient to cure the statute of limitations issue, largely consisting of facts presented in Plaintiffs' responses to the various defendants motions to dismiss and already considered by the Court.

3

Plaintiffs have also added a second claim for relief, alleging violation of the Nevada RICO Act. Like the claim under the federal RICO statutes, these allegations fail to state a claim for relief against Attorney Defendants, because they do not establish the requisite degree of specificity with respect to any predicate criminal acts. Plaintiffs allege that Welch "orchestrated" the schemes and methods that were involved in *similar* transactions, and that he participated in a "secondary enterprise," associating with "several known and convicted felons," to defraud *other entities* in a scheme involving Business Equity Lines of Credit ("BELOCs"). They do not allege Attorney Defendants participated in any criminal activity related to *their* claims.

Even if Plaintiffs' allegations about this "secondary enterprise" were true (and they are not), Plaintiffs do not allege any predicate acts of racketeering conducted by the secondary enterprise with the specificity required by Rule 9(b). Moreover, they do not claim their funds were among those client funds allegedly siphoned off, and they do not allege that they were victims of the BELOC scheme. That is, they do not allege that *they* were injured by the conduct of this secondary enterprise. They do not allege any connection between this "secondary enterprise" and the predicate acts underlying their RICO claims.

For these reasons Plaintiffs' claims are subject to dismissal under Rule 12(b)(6).

II.   **SUMMARY OF RELEVANT ALLEGATIONS IN COMPLAINT**

Plaintiffs allege the following in their First Amended Complaint:

1. Plaintiffs provided a series of seven loans to Defendant All Net LLC from November 2018 to July 2019. ECF No. 97 ¶¶ 34, 61.

2. The loans were supposed to fund the "All Net Project," which was described as a "prospective elaborate basketball arena and family resort." *Id.* ¶¶ 34, 22.

3. Plaintiffs received performance bonds as security for the loans, which Plaintiffs discovered were forgeries, and no bond was ever issued. *Id.* ¶ 32.

4. The loans were personally guaranteed by Defendant Jackie Robinson. *Id.* ¶ 23.a.

5. Defendant Robinson transferred funds to a separate account in the name of Dribble Dunk, LLC, which was owned by Defendant Robinson. *Id.* ¶ 23.b.

4

6. Defendant Robinson paid Welch for Welch's services. *Id.* ¶ 23.c.

7. Defendants siphoned money from Messner Reeves LLP's client trust account. *Id.* ¶ 47.

8. Welch associated with several known and convicted felons for the purpose of creating fake lending entities that would take fees from businesses without ever providing loans. *Id.* ¶ 48.

9. Welch orchestrated a similar series of transactions involving the same scheme and methods. *Id.* ¶ 39.m.

10. Attorney Defendants represented to Plaintiffs that Welch was handling financing of the All Net Project and represented other defendants in litigation. *Id.* ¶ 45.j.

11. The All Net Project crumbled. *Id.* ¶ 49.

12. Plaintiffs' loans were never repaid. *Id.* ¶ 33.

13. Plaintiffs sued the breaching parties in Los Angeles County Superior Court in November 2020. *Id.* ¶ 38.

### III. ARGUMENT

#### A. Supporting Authority

Fed. R. Civ. P. 12(b)(6) requires dismissal of Plaintiffs' Complaint if it "fails to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 577). "That is, although the court must accept as true all well-pleaded factual allegations in a complaint, it need not accept legal conclusions. *Id.*

5

The Court "need not … accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Gonzalez v. Planned Parenthood of Los Angeles,* 759 F.3d 1112, 1115 (9th Cir. 2014) (quoting, *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001). *See also Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir. 2001) ("under Fed. R. Evid. 201, a court may take judicial notice of 'matters of public record'" in ruling on a motion to dismiss).

A statute of limitations defense may be raised by a motion for dismissal. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). "When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Id. See also Martinez v. Bank of Am.*, No. 2:10–cv–01387–GMN–LRL, 2011 WL 17401146, at *2 (D. Nev. May 5, 2011) (dismissing complaint where court was able to determine statute had run after taking judicial notice of matters of public record).

**B. Plaintiffs fail to allege a plausible federal RICO claim against Attorney Defendants.**

A plaintiff asserting a civil RICO claim must plausibly allege the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to the plaintiff's 'business or property.'" *Grimmett v. Brown,* 75 F.3d 506, 510 (9th Cir. 1996) (citing 18 U.S.C. §§ 1964(c), 1962(c); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). These required elements for a claim under 18 U.S.C. § 1964(c) "must be established as to each individual defendant," *Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027 (8th Cir. 2008) (citing *Sedima,* 473 U.S. at 500), because the "focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise, which are proscribed by section 1962(d)." *United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987). To state a claim under RICO, Plaintiffs must allege facts to establish that "the alleged predicate acts of racketeering activity were knowingly and willfully committed by the defendant." *In re Integrated Res. Real Est. Ltd. P'ships Sec. Litig.*, 850 F.Supp. 1105, 1145 (S.D.N.Y. 1993)

(relying on *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 283 (1992)).

Fed. R. Civ. P. 9(b) requires a plaintiff asserting a RICO claim based on mail or wire fraud, as the Plaintiffs do here, to allege facts constituting such fraud with particularity. *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991). To survive a motion to dismiss, a complaint must "allege the time, place or nature of the defendants' allegedly fraudulent conduct." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989). *See also George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1254 (10th Cir. 2016) (complaint "must 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'"). "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant ... and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F.Supp. 1437, 1439 (M.D. Fla. 1998)).

Attorney Defendants request that the Court dismiss the federal RICO claim because 1) Plaintiffs do not allege Attorney Defendants participated in the predicate acts; 2) Plaintiffs do not allege the conduct surrounding the "secondary enterprise" with particularity; and 3) Plaintiffs do not allege Attorney Defendants' conduct caused any injury to Plaintiffs.

**1. Plaintiffs do not allege Attorney Defendants participated in the predicate acts.**

The RICO claim in this case is predicated on "seven acts of wire fraud" between November 2018 and July 2019. ECF No. 97, ¶ 61. Plaintiffs baldly assert that "DEFENDANTS" carried out these seven predicate acts, but they do not allege any individual conduct by Attorney Defendants supporting this assertion.[1] According to the allegations in the FAC, the funds were loaned to Defendant All Net, LLC; the loans were guaranteed by Defendant Robinson; they were backed by performance bonds issued by Defendants Timothy Arellano and AGS Assurety, LLC;

---

[1] Messner Reeves was not even involved in 2018 and 2019. Messner Reeves was not engaged until late 2021.

and the loan funds were transferred to Defendant Dribble Dunk, LLC. *Id.,* ¶ 23.

Plaintiffs do not allege Attorney Defendants made or assisted an interstate wire communication, performed any actions that injured Plaintiffs, or engaged in any conduct directed to Plaintiffs or the alleged "scheme." *See United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013) (discussing elements of wire fraud). Plaintiffs allege here only that Robinson controlled the Dribble Dunk account and would "pay funds to WELCH for his services." ECF No. 97, at 5:14–18. Even on the most liberal reading of the Complaint, assuming Plaintiffs mean to imply that Robinson paid Welch with proceeds from the wire fraud scheme (a fact they do not actually allege), the amended complaint still fails to state a RICO claim against Attorney Defendants. Mere receipt of racketeering income is insufficient for liability to attach under RICO. *See Grider v. Texas Oil & Gas Corp.*, 868 F.2d 1147, 1149 (10th Cir.1989) ("Significantly, the statute does not state that it is unlawful to *receive* racketeering income; rather … the statute prohibits a person who *has received* such income *from using or investing it* in the proscribed manner.") (emphasis in original). *See also Nugget Hydroelectric, L.P. v. Pacific Gas & Elec. Co.*, 981 F.2d 429, 437 (9th Cir. 1992) (adopting *Grider*).

Plaintiffs allege nothing to suggest Attorney Defendants participated in the operation or management of the wire fraud scheme. Accordingly, Plaintiffs fail to state a claim against Attorney Defendants.

**2. Plaintiffs do not allege any conduct by Attorney Defendants with particularity.**

Plaintiffs do not allege Attorney Defendants participated in the enterprise that conducted the racketeering activity underlying their RICO claim. Rather, they allege Welch orchestrated the same schemes and methods in a "similar series of transaction," referencing a complaint filed by a separate, unrelated entity. ECF No. 97, at 11:22–28. Courts may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). In this case, the Court may take judicial notice of the fact that Attorney Defendants are not parties to the lawsuit referenced by Plaintiffs in their complaint (*Next Step Venture Ltd. v. Dribble Dunk, LLC, et al.*,

1 Clark County District Court No. A-24-886942-C).[2] Attorney Defendants are not even mentioned
2 in the complaint filed in that lawsuit.

3       Plaintiffs also allege that, in January 2022, Attorney Defendants "provided PLAINTIFFS
4 with documentation allegedly evidencing a non-traditional funding arrangement for the ALL
5 NET PROJECT," ECF No. 97, at 15:3–5, and that, in August 2022, Attorney Defendants
6 "represented to PLAINTIFFS that WELCH was handling the financing of the ALL NET
7 PROJECT, and in fact, was the attorney of records for ROBINSON, ANLD, ARELLANO AND
8 AGS," *id.* at 15:9–11. The import of these allegations is not clear. To the extent Plaintiffs mean
9 to suggest that this conduct was fraudulent (which, again, Plaintiffs do not expressly allege),
10 there would still be no basis for liability against Attorney Defendants under RICO, because the
11 events described took place years after Plaintiffs had already suffered their injury. As the Court
12 previously held, "The complaint does not allege that the attorney defendants participated in
13 soliciting the loans from the plaintiffs or operated the initial investment scheme." ECF No. 95, at
14 8:5–7.

15       Plaintiffs still rely on allegations that Welch was part of "a secondary enterprise." ECF
16 No. 97, ¶¶ 47–48. This nebulously defined secondary enterprise involved "setting up" various
17 entities between Welch and Robinson to entice businesses to provide funds in the form of loan
18 fees. Plaintiffs do not explain how this "secondary enterprise" bears any logical connection to the
19 primary enterprise. The implication seems to be that, because Welch represented one of the
20 defendants involved in the alleged enterprise in this case, and because he allegedly "associated
21 with several known and convicted felons" in a subsequent secondary enterprise, he and his firm
22 should be held liable under RICO for Plaintiffs' claimed losses related to the wire fraud scheme.
23 That is not how RICO works.

24       "Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear
25 device.'" *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996), *aff'd*

---

[2] A copy of that complaint is attached as **Exhibit A**.

9

*sub nom. Katzman v. Victoria's Secret Catalogue, Div. of The Ltd., Inc.*, 113 F.3d 1229 (2d Cir. 1997) (quoting *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991). "Because the 'mere assertion of a RICO claim ... has an almost inevitable stigmatizing effect on those named as defendants ... courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'" *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990).

In their allegations about the predicate acts conducted by the primary enterprise, Plaintiffs allege the date of every wire, the amount of every loan, the payee, and the depository bank. ECF No. 97, ¶ 61. No such particulars are offered as regards the secondary enterprise. Rather, Plaintiffs simply refer to other lawsuits involving claims by unrelated parties and offer the conclusory allegation that the conduct at issue in those lawsuits "was an elaborate evolution of how DEFENDANTS defrauded PLAINTIFFS." *Id.* at 16:20–21. There are no well-pleaded factual allegations to support this leap. Because the conduct of the secondary enterprise is not alleged with sufficient particularity, the Court should dismiss Plaintiffs' federal RICO claim against Attorney Defendants pursuant to Fed. R. Civ. P. Rules 9(b) and 12(b)(6).

### 3. Plaintiffs do not allege any injury arising from Attorney Defendants' conduct.

Plaintiffs seek damages in this case based on the amount of the unpaid loans, which is $2,144,200.00.[3] ECF No. 97 at 28:2–3. With their amendment to the complaint, they seek additional damages for the performance bonds and for the amount Limson purportedly paid in consideration for an ownership interest in the All Net Project. As noted above, Plaintiffs do not allege Attorney Defendants participated in the wire fraud scheme related to the loans. Nor do they allege that Attorney Defendants played any role in the issuance of performance bonds or the transaction with Limson for the ownership interest.

Under the most generous reading of the FAC, Plaintiffs allege at most that Welch later represented some of the defendants and received proceeds from the wire fraud scheme, and that

---

[3] As discussed in more detail in Section C below, even if Plaintiff could establish they sustained these damages, they would not be recoverable. *See* ECF No. 95 at 6:13–14 ("damages may not be recovered for injuries sustained as a result of acts committed outside the limitations period") (quoting *Grimmett*, 75 F.3d at 512).

Attorney Defendants misrepresented the financial health of the All Net Project after the other defendants defaulted on the loans. The only other allegations about Attorney Defendants' conduct is in paragraphs 47 and 48 of the FAC, related to the "secondary enterprise." There, Plaintiffs lump Attorney Defendants in not just with other named Defendants, but also with other entities that are not even parties to this case. Plaintiffs make no effort to differentiate their allegations. For instance, Plaintiffs allege, "The next stage of DEFENDANTS' funding scheme; siphoning client funds from MRLLP's client trust account under the guise of 'investing' the siphoned funds -- of course, without the consent of the clients whose funds were being siphoned." ECF No. 97, 16:3–5. Based on what follows, Plaintiffs presumably mean to suggest Welch was the one siphoning client funds, although they do not expressly state as much. Regardless, even if Plaintiffs had any basis to allege Welch was siphoning client funds, they do not allege any facts indicating that this conduct caused injury to *Plaintiffs'* business or property.

Plaintiffs then allege Welch "resorted to a secondary enterprise where he set up various entities between himself and ROBINSON … to give himself a substantial ownership interest in the ALL NET PROJECT, and if successful, would make himself a billionaire." *Id.* at 16:6–9. The "BELOC scheme" was allegedly conducted to "facilitate this secondary enterprise." *Id.* at 16:10–13. As noted above, Plaintiffs do not allege precisely *how* the BELOC scheme "facilitated" any pattern of racketeering. Regardless, even if Attorney Defendants in fact committed every bad act Plaintiffs purport to attribute to them in furtherance of the BELOC scheme, the predicate acts for the federal RICO claim occurred in 2018 and 2019, years before the BELOC scheme. The only damages claimed here are those resulting from their involvement in the All Net Project. Plaintiffs do not have a right of action against Attorney Defendants simply because they learned other parties have initiated lawsuits based on unrelated conduct. The lack of injury provides an independent basis for dismissal under Rule 12(b)(6).

C. **Plaintiffs' federal RICO claim is barred by the statute of limitations.**

Alternatively, even if Plaintiffs had any basis to assert RICO claims against Attorney Defendants, their complaint is time-barred.

The statute of limitations for a federal RICO claim is four years. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.,* 483 U.S. 143, 156 (1987). Under Ninth Circuit law, "the civil RICO limitations period begins to run when a plaintiff knows or should know of the injury that underlies his cause of action." *Pincay v. Andrews,* 238 F.3d 1106, 1109 (9th Cir. 2001). As the Court found in discussing Plaintiffs' initial Complaint, Plaintiffs were aware by the time they initiated the LASC lawsuit in November 2020 "that they were damaged by the defendants' alleged failure to repay the loans and the failure to secure the loans with the surety bonds." ECF No. 95 at 5:8–9. They initiated this lawsuit in December 2024. ECF No. 1.

Plaintiffs include several new allegations in the FAC purporting to establish that they discovered later that there is more to this dispute than "simply defaulted loans." ECF No. 97 ¶ 39. They allege, "Prior to conducting discovery in the CALIFORNIA ACTION, it was unbeknownst to PLAINTIFFS that ANLD's now alleged true purpose was only to facilitate the sale of the PROPERTY through the transfer of membership shares for a financial savings between the landlord (i.e., ANLD) and the tenant (i.e., DD), and that the LOWDEN's were the landlord of the PROPERTY rather than owner/partners in the ALL NET PROJECT, as presented." *Id.* ¶ 40. They allege that the defendants sought, through various tactics, "to convince PLAINTIFFS that the ALL NET PROJECT was legitimate," and that their intent was "to conceal the true nature of the ALL NET PROJECT, and to prevent PLAINTIFFS from discovering the truth." *Id.* ¶ 45.

The intent of the defendants is immaterial to the question of when the plaintiffs suffered an injury. "The plaintiff need not discover that the injury is part of a 'pattern of racketeering' for the period to begin to run." *Grimmett*, 75 F.3d at 510. There is no distinct injury alleged to have been caused by this subsequent discovery. "The plaintiffs were injured by All Net defaulting on their loans and AGS and Arellanos' failure to then pay on the surety bonds." ECF No. 95 at 5:11–12.

The Court previously rejected Plaintiffs' argument that the Limson's alleged lost ownership interest constituted a separate injury that accrued at a later time. *Id.* at 5:19. As the

Court noted, the value of that ownership interest is theoretical. *Id.* at 5:22. Plaintiffs have tried to cure this deficiency by alleging that the defendants charged and accepted $150,100.00 for the ownership interest, ECF No. 97 at 20:8–9, and by claiming $150,100.00 in damages, *id.* at 28:5–8. They offer similar allegations about the $119,492.50 charged and accepted for the performance bonds. *Id.* at 20:6–8; 28:4–5. But even if these are independent losses, Plaintiff still cannot satisfy the separate accrual rule because, "That rule requires an overt act by the defendants to restart the limitation period." ECF No. 95 at 6:6–7 (citing *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 237–38 (9th Cir. 1987); *Grimmett*, 75 F.3d at 513). Plaintiffs do not allege a separate overt act by any of the defendants that resulted in the subsequent injury after All Net's default on the loans and AGS and Arellanos' failure to pay the bonds. "The complaint states that the Clark County Commission shut down the project, not the defendants." ECF No. 95 at 6:8–10 (citing ECF No. 1 at 12; the same allegation appears in ECF No. 97 at 17).

The allegations in the amended complaint do not controvert the fact established by the LASC complaint: "that the plaintiffs knew about the injuries in their complaint more than four years before filing this lawsuit." ECF No. 95:19–20. The federal RICO claim is therefore time-barred.

**D. Plaintiffs fail to allege a plausible Nevada RICO claim against Attorney Defendants.**

Nevada's anti-racketeering statutes are patterned after the federal RICO statutes. *Hale v. Burkhardt*, 764 P.2d 866, 867 (Nev. 1988). For this reason, Plaintiffs' Nevada RICO claim suffers the same deficiencies that underlie dismissal of the federal claim. Under both statutes, "racketeering activity" requires criminal activity. *Top Rank Builders, Inc. v. Charles Abbott Assocs., Inc.*, Case No. 2:16–cv–02903–APG–CWH, 2017 WL 4532148, at *3 (Oct. 6, 2017) (citing 18 U.S.C. § 1961; Nev. Rev. Stat. § 207.390). "Criminal intent is thus as necessary under the Nevada RICO statute as the federal RICO statute." *Id.* Allegations regarding criminal activity must be pleaded with the same specificity as in a criminal indictment. *Hale*, 764 P.2d at 869. This is in part because "the courts need sufficient facts in the pleading to enable them to distinguish between well founded and frivolous claims in order to prevent the 'overenthusiastic'

13

use of RICO." *Id.*

Plaintiffs asserting a Nevada RICO claim must plausibly allege: (1) the plaintiffs' injury flows from the defendants' violation of a predicate Nevada RICO act; (2) the injury was proximately caused by the defendants' violation of the predicate act; and (3) the plaintiffs did not participate in the commission of the predicate act. *Allum v. Valley Bank of Nev.*, 849 P.2d 297, 299, 301 (Nev. 1993). As with claims under federal RICO statutes, claims under Nevada RICO statutes "sound in fraud, so Rule 9(b)'s heightened pleading standard applies." *T1 Payments LLC v. New U Like Corp.*, Case No. 2:19-cv-01816-APG-DJA, 2022 WL 195111, at *12 (Jan. 21, 2022) (citing *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004); *Hale*, 764 P.2d at 869–70). Where plaintiffs do not adequately allege that the defendants committed criminal acts or participated in the racketeering activity that caused the plaintiffs' harm, dismissal is warranted. *Id.*

In the allegations under Plaintiffs' "Count Two" for violation of Nevada Revised Statutes §§ 207.350, et seq., Plaintiffs sometimes lump all defendants together and sometimes differentiate between the defendants. The allegations that lump all defendants together fail to state a claim with particularity as required by Rule 9(b). *Swartz*, 476 F.3d at 764–65. With those allegations stripped away from Count Two, there are *no* allegations that inform Attorney Defendants of the allegations surrounding their alleged participation in the enterprise. Plaintiffs allege that as soon as All Net received money from Plaintiffs, the funds were transferred into Dribble Dunk's bank account, which was controlled solely by Robinson. ECF No. 97 at 22:12–15. They allege Robinson would pay commissions to Arellano, and that Arellano and AGS never secured bonds. *Id.* at 22:15–16. They allege Robinson paid out large sums of money to Defendant All Net Land Development. *Id.* at 22:16–17. They allege Robinson, Arellano, and Lowden "made false and fraudulent representations" to Plaintiffs. *Id.* at 24:9–10. Welch's name is not even mentioned in this section of the amended complaint. Messner Reeves is referenced only as an example of an "enterprise" (lumped in with All Net, All Net Land Development, Dribble Dunk, and AGS) with whom the defendants generally are alleged to be employed or

1  associated. These allegations are conclusory. Such allegations are insufficient to state a Nevada
2  RICO claim.
3       Plaintiffs cannot rely on their allegations specifying conduct by Attorney Defendants
4  elsewhere in the complaint to support the Nevada RICO claim, because none of these allegations
5  relate to criminal conduct. "Crime related to racketeering" is defined in Nev. Rev. Stat. §
6  207.360. Plaintiffs do not allege Attorney Defendants engaged in *any* of the crimes enumerated
7  in Section 207.360, let alone with the specificity required by Nevada law. *See Hale*, 764 P.2d at
8  869 ("such specificity is necessary to enable the RICO defendant to prepare a defense against a
9  treble damages claim"). Accordingly, Plaintiffs' Nevada Rico claim should be dismissed.

## IV. CONCLUSION

For the reasons given above, Defendants Messner Reeves LLP and Torben Welch request that the Court dismiss the First Amended Complaint against them for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

DATED this 7th day of October 2025.

**GORDON REES SCULLY MANSUKHANI, LLP**
Robert E. Schumacher, Esq.
Nevada Bar No. 7504
300 So. 4th Street, Suite 1550
Las Vegas, Nevada 89101

**GORDON REES SCULLY MANSUKHANI, LLP**

 /s/  William G. Dewey
John M. Palmeri, *pro hac vice admission*
William G. Dewey, *pro hac vice admission*
555 Seventeenth Street, Ste. 3400
Denver, Colorado 80202
(303) 534-5160
wdewey@grsm.com

***Attorneys for Defendants Messner Reeves LLP and Torben Welch***

# CERTIFICATE OF SERVICE

Pursuant to Federal Rules of Civil Procedure 5 and Local Rule 5-1, I certify that I am an employee of Gordon Rees Scully Mansukhani, LLP, and that on October 7, 2025, the foregoing was served upon the following respective parties via CM/ECF system as follows:

| | |
|---|---|
| LAW OFFICE OF SHAWN R. PEREZ<br>Shawn R. Perez<br>7121 W. Craig Road, #113-38<br>Las Vegas, NV 89129<br>(702 ) 485-3977<br>shawn711@msn.com<br><br>TACSIS LAW APC<br>John S. Manzano<br>3424 W. Carson Street, Ste. 600<br>Torrance, CA 90503<br>(424) 234-5200<br>law@taccis.com<br><br>*Attorneys for Plaintiffs:*<br>TACSIS APC and KENT LIMSON | KAEMPFER CROWELL<br>Robert R. McCoy<br>Kristopher J. Kalkowski<br>1980 Festival Plaza Drive, Ste. 650<br>Las Vegas, NV 89135<br>(302) 856-4440<br>rdaniels@kcnvlaw.com;<br>kkalkowski@kcnvlaw.com;<br><br>Attorneys for:<br>JACKIE ROBINSON, ALL NET LLC; DRIBBLE DUNK LLC and LORING JACOBS |
| HANRATTY LAW GROUP<br>Kevin M. Hanratty<br>1815 Village Center Circle, Suite 140<br>Las Vegas, NV 89134<br>(702) 821-1379<br>kevinh@hanrattylawgroup.com<br><br>JEFFER MANGELS BUTLER & MITCHELL<br>Jon A. Weininger, Esq.<br>3 Park Plaza, Suite 1100<br>Irvine, CA 92614<br>jweininger@jmbm.com<br><br>*Attorneys for Defendants:* ALL NET LAND DEVELOPMENT, LLC and DAVID G. LOWDEN | |

/s/ Linda J. Bustos