**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| TACSIS APC and KENT LIMSON, | Case No.: 2:24-cv-02284-APG-EJY |
| Plaintiffs | **Order (1) Granting Messner Reeves LLP and Welch's Motion to Dismiss, (2) Granting in Part All Net Land Development, LLC and Lowden's Motion to Dismiss, (3) Granting in Part All Net, LLC, Robinson, Jacob, and Dribble Dunk, LLC's Motion to Dismiss, (4) Granting All Net Land Development, LLC and Lowden's Motion for Judicial Notice, (5) Granting in Part Plaintiffs' Motions for Judicial Notice, (6) Ordering Plaintiffs to Show Cause, and (7) Granting the Plaintiffs Leave to Amend in Part** |
| v. | |
| JACKIE ROBINSON, et al., | |
| Defendants | |
| | [ECF Nos. 100, 101, 102, 103, 105, 107, 109] |

TACSIS APC and Kent Limson sued several persons and entities under the federal Racketeer Influenced and Corrupt Organizations Act (RICO) and the Nevada RICO act, alleging that the defendants fraudulently induced the plaintiffs to make seven loans totaling more than $2 million for a failed basketball arena on the Las Vegas Strip. The plaintiffs also allege they paid about $120,000 in premiums to receive performance bonds that would pay out if the defendants defaulted on the loans. But they allege the bonds were never paid out. And they allege they paid additional consideration for Limson to receive an equitable ownership interest in the basketball arena project, which was lost when the project was shut down. Defendants All Net Land Development, LLC and David Lowden (All Net Land Development defendants); All Net, LLC; Dribble Dunk, LLC; Jackie Robinson; and Loring Jacobs (All Net defendants); and Messner Reeves LLP and Torben Welch move to dismiss all claims against them. The All Net Land Development defendants and the plaintiffs also move for judicial notice of several documents.

I grant Messner Reeves and Welch's motion to dismiss in full.  I grant the All Net Land Development defendants' motion to dismiss in part.  I grant the All Net defendants' motion to dismiss in part.  I grant the All Net Land Developments' motion for judicial notice in full and grant the plaintiffs' motions for judicial notice in part.  Finally, I grant the plaintiffs leave to amend their Nevada RICO claim in part.

## I.        MOTIONS FOR JUDICAL NOTICE

On a motion to dismiss, I may consider materials not attached to the complaint if they are incorporated by reference in the complaint or matters of judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  I may take notice of a fact "not subject to reasonable dispute" if it is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Ev. 201(b)(1), (2).  I may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, but I cannot take judicial notice of disputed facts in such public records. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

The All Net Land Development defendants filed a "request for judicial notice," as did the plaintiffs. ECF Nos. 103; 105; 107; 109.  "All communications with the court must be styled as a motion, stipulation, or notice." LR IA 7-1(b).  I will consider the parties' "requests" as motions for the purposes of this order, but they must comply with the Local Rules in the future.

### A.  I take judicial notice of the All Net Land Development defendants' exhibits.

The All Net Land Development defendants move for me to take notice of several pleadings and exhibits filed by the plaintiffs in other cases.  Particularly relevant are the plaintiffs' complaint against Robinson; All Net, LLC; Timothy Arellano; and AGS Surety, LLC in the Central District of California; the plaintiffs' complaint against those same defendants in

2

California state court; and the exhibits the plaintiffs attached to those complaints.  The All Net Land Development defendants also ask me to take notice of the docket and of orders filed in the California state court action.

I "may take judicial notice of undisputed matters of public record, including documents on file in federal or state court." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal citation omitted).  Accordingly, I take notice of the dates that the plaintiffs filed their prior complaints in other courts, the allegations the plaintiffs made in those complaints, the orders in the California state action, and that action's docket.

I also take notice of the documents that the plaintiffs attached to those complaints because they are on file with other courts and the plaintiffs cannot reasonably question their accuracy as the plaintiffs initially filed them. *See id*. at 1131-32 (taking judicial notice of a declaration and exhibits filed in a different case).  These documents include an agreement granting Limson an equity ownership interest in the arena project; the agreements issuing the bonds to the plaintiffs; a default notification from Limson notifying Robinson the loans are in default; a letter from Arellano notifying his company is investigating the plaintiffs' claims on the bonds; and a memorandum of understanding between the plaintiffs, Robinson, All Net, Arellano, and AGS.  The plaintiffs do not dispute the accuracy of these documents now, and in the other complaints, they described all of these exhibits as "true and accurate cop[ies]" of the purported documents. ECF Nos. 103-1 at 5-6; 103-5 at 7-8.  Though I do not take notice of the truth of the documents' contents, I take notice of the fact that the authors of the documents made the included statements.

Additionally, I may consider the equity interest agreement through incorporation by reference because its "contents are alleged" in the plaintiffs' first amended complaint (FAC) and

3

no party questions its authenticity. *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012).  The FAC repeatedly refers to how Limson received 1/10th of 1% overall equitable ownership interest in the basketball arena project in return for providing additional loans to the project, which cost the plaintiffs $150,100. ECF No. 87 at 8, 18, 20.  The equity interest agreement, provided by the All Net Land Development defendants and attached to the plaintiffs' complaint in the action before the California state court, memorializes this transaction, and the plaintiffs do not question its authenticity.

**B.  I take judicial notice of some but not all of the plaintiffs' exhibits.**

First, the plaintiffs move for me to take judicial notice of several matters of public record available online, including lease documents available from the Clark County Recorder, Clark County Board of Commissioners Zoning Minutes, Utah Code § 52-1-13, and an opinion from the Delaware Court of Chancery.  Because they are publicly available and because the defendants do not object to their authenticity, I take judicial notice of the fact that the following documents exist but not the truth of their contents: exhibits 1, 2, 3, 4, 11, and 13 attached to plaintiffs' motions for judicial notice.  These documents do not change the outcome of my order, however.

Next, they ask me to take judicial notice of three online news articles and of several documents that plaintiffs argue are publicly accessible on AGS's website regarding AGS's assets, insurance, and other business practices.  I need not address these documents because the plaintiffs pleaded their pertinent parts in the FAC which I consider for this order.  The other portions of these exhibits would not change my order even if I considered them.  So I decline to take notice of exhibits 5, 6, 7, 8, 9, 10, 12, 14, and 15 attached to the plaintiffs' three motions for judicial notice.

Finally, the plaintiffs attach copies of business debit cards for three different individuals to two of their responses to the motions to dismiss. ECF Nos. 106-2; 106-3; 106-4; 108-2; 108-3; 108-4. The debit cards allegedly belonged to individuals who were a part of the defendants' scheme, including Welch. But these documents were not referenced in the complaint, nor are they facts not subject to reasonable dispute. So I decline to consider exhibits 1, 2, and 3 attached to those two responses.

## II.    FACTUAL BACKGROUND

The plaintiffs allege the following facts, which I accept as true when resolving the motions to dismiss. Jackie Robinson led a project to build a joint basketball arena and family resort on the Las Vegas strip, called the All Net Resort and Arena, for a potential expansion team in the National Basketball Association. ECF No. 97 at 4-5, 21. David Lowden, president and managing member of All Net Land Development, LLC, owned the site location for the project. *Id.* at 7. To fund the project, Robinson and Loring Jacobs solicited short-term loans that would be paid to All Net, LLC and quickly repaid to the lenders as soon as the already-approved building funds came through. *Id.* at 5-6, 10.

The plaintiffs invested in the project and wired funds for seven separate short-term loans totaling $2,144,200 to All Net in 2018 and 2019. *Id.* at 8. The plaintiffs concurrently received performance bonds from AGS Assurety, LLC and Timothy Arellano[1] as security for every loan. *Id.* at 5, 8, 20; ECF No. 103-1 at 142-171. AGS and Arellano would pay the plaintiffs if All Net defaulted on the loans, and AGS represented it possessed sufficient funds to pay out the bonds if necessary. ECF Nos. 97 at 5, 8; 103-1 at 142-171. AGS and Arellano also provided certificates

---

[1] AGS and Arellano were initially defendants in this case. The plaintiffs voluntarily dismissed all claims against them. ECF No. 120.

of insurance that represented the performance bonds were insured. ECF No. 97 at 9.  The plaintiffs paid in $119,492.50 premiums to AGS and Arellano at the time they funded each loan. *Id.* at 10, 20.

In exchange for the last two loans, Limson also received one-tenth of 1% in equitable ownership interest in the arena project. ECF No. 103-5 at 22.[2]  Limson issued $100,000 for the sixth loan, issued $50,000 for the seventh loan, and paid an additional $100 for his equitable ownership interest. *Id.*  In total, he funded $150,100. ECF No. 97 at 8, 18.  At that point, the defendants had already defaulted on paying several of the previous loans, and Limson receiving the ownership interest was "further incentive to delay repayment" on those loans. *Id.* at 8.

But after All Net received the loans from the plaintiffs, All Net transferred most if not all of funds to defendant Dribble Dunk, LLC's account, which was controlled by Robinson. *Id.* at 5. Robinson then transferred these funds to himself, Arellano, All Net Land Development, and defendant Torben Welch, an attorney working on the project. *Id.*

Robinson made small and inconsistent payments toward plaintiffs' loans. *Id*. at 8.  On September 16, 2019, the plaintiffs sent a letter to Robinson stating that All Net was in default of all seven loans. ECF No. 103-1 at 175.

That same day, the plaintiffs also sent a letter to Arellano formally requesting that AGS pay out on the performance bonds for the first six bonds. ECF No. 103-1 at 176.  The plaintiffs later placed a claim on the bond for the seventh and final loan. ECF No. 97 at 8-9.  In October and November 2019, Arellano and AGS represented that they were investigating the claims

---

[2] The FAC alleges that Limson received the equitable ownership in return for his fifth loan. ECF No. 97 at 8.  But the plaintiffs in their responses note that Limson received the equity interest as part and parcel for the sixth and seventh loans, not the fifth loan. ECF Nos. 104 at 13; 106 at 16. This is consistent with the copy of the equity interest agreement that I ruled was incorporated by reference into the complaint. ECF No. 103-5 at 22.

against the bonds. *Id.* at 8-9, 13; ECF No. 103-1 at 178.  But Arellano and AGS never paid the plaintiffs on the performance bonds. ECF No. 97 at 8.  Nonetheless, AGS's trustee continued to represent that AGS had sufficient cash to pay out the performance bond, and Arellano's attorney represented that the bonds were collectible. *Id.* at 13-14.

Limson entered into a memorandum of understanding with Robinson, All Net, AGS, and Arellano on January 16, 2020 that extended the deadline to repay the loans to January 31, 2020. *Id.* at 8; ECF No. 103-1 at 180-83.  But All Net still did not repay the loans by then. ECF No. 97 at 8.

The plaintiffs filed a lawsuit in the Central District of California against Robinson, All Net, AGS, and Arellano on February 19, 2020. ECF No. 103-1 at 2, 17; *TACSIS, LLC v. AGS Assurety, LLC*, No. 2:20-cv-01626-GW-(ASx) (C.D. Cal. Feb. 19, 2020).[3]  They brought claims in tort and in contract for the defendants' failure to timely pay back the plaintiffs' loans and the failure to pay on the performance bonds once they defaulted on the loans. ECF No. 103-1 at 6-13.  That suit was dismissed for lack of subject matter jurisdiction. ECF No. 103-2 at 4.

On November 2, 2020, the plaintiffs filed an action in California state court against Robinson, All Net, AGS, and Arellano. ECF No. 103-3 at 2, 20.  The plaintiffs again raised claims in tort and in contract for the defendants' alleged failure to pay back the loans and on the performance bonds. *Id.* at 7-17; ECF No. 97 at 9.

During discovery in the California state court action, the plaintiffs learned that the performance bonds were fraudulent or forged. ECF No. 97 at 10.  The performance bonds were

---

[3] TACSIS APC was using its prior name, TACSIS, LLC, when it filed the action in the Central District of California. ECF Nos. 97 at 2; 103-1 at 2.

7

never issued or insured, despite Arellano and AGS's representations that the performance bonds were legitimate and that they had sufficient assets to pay them out. *Id.* at 13-14, 20.

The defendants continued to solicit funds from others until they were unable to find new lenders. *Id.* at 15-16. Then the defendants began working with an attorney, Welch, and his law firm, defendant Messner Reeves LLP, to siphon funds from Messner Reeves' client trust accounts and to set up fake lending entities to acquire business equity lines of credit. *Id.* at 16.

In November 2023, the Clark County Commission shut down the project. The joint basketball arena-resort was not built. *Id.* at 17.

The plaintiffs filed their initial complaint in this court on December 10, 2024, alleging all defendants violated the federal RICO statute. ECF No. 1. They alleged damages only for the loans they issued to All Net, totaling $2,144,200. *Id.* at 16. I dismissed the federal RICO claims against all defendants because the statute of limitations barred the plaintiffs from recovering the $2,144,200 and because the plaintiffs failed to state a claim against Messner Reeves and Welch. ECF No. 95 at 3-8. But I granted them leave to amend. *Id.* at 7-8.

In the FAC, the plaintiffs raise a federal RICO claim and a claim under Nevada's RICO statute, Nevada Revised Statutes (NRS) §§ 207.350, et seq., against all defendants. They allege that the defendants engaged in racketeering activity by receiving the seven loans, the payment for the bond premiums, and consideration for the equitable ownership interest in the project from the plaintiffs. The plaintiffs seek three sets of damages for both claims. First, they again request $2,144,200 in damages for the loans issued to All Net, trebled to $6,432,600 under 18 U.S.C. § 1964(c). ECF No. 97 at 28. Second, they request $119,492.50 for payments for the performance bonds, trebled to $358,477.50. *Id.* Finally, they seek $150,100 for the consideration paid for Limson's equitable ownership interest, trebled to $450,300. *Id.*

### III.    MOTIONS TO DISMISS

In considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe them in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).  However, I do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017).

To withstand a motion to dismiss, a complaint must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.  Instead, the complaint must include "a short and plain statement of the claim" that shows the plaintiff "is entitled to relief" and gives the defendants "fair notice of what the claim is and the grounds upon which it rests." *Id.* (simplified).

"In alleging fraud or mistake, [Federal Rule of Civil Procedure] 9(b) requires a party to state with particularity the circumstances constituting fraud or mistake, including the who, what, when, where, and how of the misconduct charged." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (simplified).  The party "must provide enough detail to give [the defendants] notice of the particular misconduct which is alleged to constitute the fraud charged so that [they] can defend against the charge and not just deny that [they have] done anything wrong." *Id*. at 999 (simplified).  In "a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme" "and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (per curiam) (simplified).

9

I may dismiss a complaint as time-barred only if the expiration of the limitation period is "apparent on the face of the complaint." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006) (quotation omitted).  Thus, I cannot dismiss a complaint as being time-barred unless the plaintiff undoubtedly fails to allege any set of facts plausibly establishing the timeliness of their claim. *United States v. Page*, 116 F.4th 822, 825-26 (9th Cir. 2024).

I must "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). I apply this policy "with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted).  I consider "five factors in assessing the propriety of leave to amend—bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011).

**A.  I dismiss the federal civil RICO claim against all defendants with prejudice.**

The federal RICO Act "prohibits a person employed by or associated with any enterprise engaged in interstate commerce to conduct or participate in the conduct of the enterprise through a pattern of racketeering activity." *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1147 (9th Cir. 2008) (citing 18 U.S.C. § 1962(c)).  The Act provides a private right of action to redress violations. 18 U.S.C. § 1964(c).  To state a federal civil RICO claim, a plaintiff must sufficiently allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiffs' business or property." *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001) (quotations omitted).  Racketeering activity is defined by reference to numerous federal and state criminal offenses. 18 U.S.C. § 1961(1).  Federal civil RICO claims sound in fraud, so Rule 9(b)'s heightened pleading standard applies. *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004).

*1. Recovery for most of the plaintiffs' damages for their federal RICO claim is time-barred by the statute of limitations.*

All the defendants argue that the plaintiffs' federal RICO claim is time-barred because it was brought more than four years after the plaintiffs learned of their injuries. The plaintiffs allege three injuries: All Net's default on its loans, AGS and Arellano's failure to pay on the performance bonds, and the loss of Limson's equity ownership interest in the project. The plaintiffs filed this action on December 10, 2024. ECF No. 1.

The limitation period for a civil RICO claim is four years. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987). This period begins to run "when a plaintiff knows or should know of the injury that underlies his cause of action." *Pincay v. Andrews*, 238 F.3d 1106, 1109 (9th Cir. 2001) (quotation omitted). Called the "injury discovery rule," this "creates a disjunctive two-prong test of actual or constructive notice, under which the statute begins running under either prong." *Id.* (quotation omitted). "The plaintiff need not discover that the injury is part of a 'pattern of racketeering' for the period to begin to run." *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (quoting *McCool v. Strata Oil Co.*, 972 F.2d 1452, 1465 (7th Cir. 1992)).

Alongside the "injury discovery rule" is the "separate accrual rule," where "a cause of action accrues when new overt acts occur within the limitations period, even if a conspiracy was formed and other acts were committed outside the limitations period." *Id.* at 512 (quotation omitted). For an overt act to restart the limitation period, (1) it "must be a new and independent act that is not merely a reaffirmation of a previous act; and (2) [i]t must inflict new and accumulating injury on the plaintiff." *Id.* at 513 (simplified). However, even if the separate

11

accrual rule applies, "damages may not be recovered for injuries sustained as a result of acts committed outside the limitations period." *Id*. at 512 (quotation omitted).

"Equitable tolling doctrines, including fraudulent concealment, apply in civil RICO cases." *Id.* at 514. For fraudulent concealment to toll the limitation period, the plaintiffs must plead and prove that the defendants actively misled them and that the plaintiffs had neither actual nor constructive knowledge of the facts constituting their cause of action despite their due diligence. *Id.*

> a. <u>The plaintiffs cannot recover on the defaulted loans under their federal RICO claim.</u>

The plaintiffs had notice they were injured by the defaulted loans more than four years before they filed this action. As I explained in my prior order, the plaintiffs had actual notice of this injury on November 2, 2020 because they filed an action in California state court on that date raising claims against All Net and Robinson for their failure to pay back the loans. ECF No. 95 at 5. The plaintiffs did not allege any new facts in the FAC contradicting this fact. Rather, their lawsuit in the Central District of California shows they knew of this injury by February 19, 2020 because in it they raised similar claims against All Net and Robinson for defaulting on the loans.

The plaintiffs argue that fraudulent concealment should toll the limitation period to recover on the defaulted loans because the defendants concealed the true nature of the project and their intention and ability to repay the loans. These representations include the defendants agreeing to a memorandum of understanding in January 2020 to pay the loans weeks later, documentation in 2022 that the defendants would pay the full balance to the plaintiffs, and representations at public hearings that funding and construction for the project were imminent.

But the plaintiffs sued several of the defendants in two different courts in 2020 regarding All Net's failure to repay the loans, showing that these statements did not mislead them into believing they did not have a cause of action to recover on the defaulted loans.

Therefore tolling the limitation period is not warranted. Accordingly, the plaintiffs cannot recover the funds they loaned to the defendants through their federal RICO claim.

        b.   <u>The plaintiffs cannot recover on AGS and Arellano's failure to pay on the bonds under their federal RICO claim</u>.

The plaintiffs' injury due to AGS and Arellano not paying on the performance bonds experiences the same problem. The plaintiffs had actual notice they were injured when AGS and Arellano did not pay them under the bond agreements. The record before me shows the plaintiffs knew this not only by November 2, 2020, when they filed the California state action, but also on February 19, 2020, when they filed the action in the Central District of California. Both lawsuits raised claims against AGS and Arellano for failing to pay on the bonds after All Net defaulted on the loans. And both suits were filed outside the four-year limitation period.

The plaintiffs argue that they can still recover on the performance bonds due to the separate accrual rule. They contend they suffered a new, independent injury when they learned during discovery in the California state action that AGS and Arellano did not simply fail to perform on the bonds but that the bonds themselves were fraudulent. But this is not a new injury that created a new cause of action. Whether the defendants failed to pay on the bonds or never properly issued the bonds in the first place, the plaintiffs suffered the same injury: not receiving the funds they bargained for in the bond agreements. The plaintiffs do not cite any law supporting their claim that discovering that bonds are fraudulent is a separate, recoverable injury than AGS and Arellano's failure to pay on the bond agreement. "The fact that the bonds were

13

fraudulent or nonexistent, as opposed to underfunded, may help show a racketeering pattern, but discovery of the surety breach started the limitation period." ECF No. 95 at 5.  Therefore, the plaintiffs had actual notice of this injury outside the federal RICO limitation period.

The plaintiffs next argue that the limitation period should be tolled under fraudulent concealment because the defendants misrepresented that they would pay on the bonds and that the bonds were issued and insured.  But the plaintiffs were not misled by these statements such that they did not know they had a cause of action for not being paid on the bonds.  They sued several of the defendants in California state court outside the limitation period for failing to pay out the bonds. ECF No. 103-3 at 13-14.  There they alleged that AGS and Arellano falsely represented that they had assets to secure performance on the bonds, that they were licensed to issue bonds, and that the bonds were insured. *Id.*  So equitable tolling is not appropriate, and the plaintiffs cannot recover their bond premiums under their federal RICO claim.

c.  <u>$150,000 of the injury suffered due to the plaintiffs' lost equitable ownership interest in the project is time-barred.</u>

Finally, the plaintiffs argue that they can recover the $150,100 Limson gave as consideration for an equitable ownership interest in the project under the separate accrual rule.  They contend they suffered a new injury when Limson lost his ownership interest when the Clark County Commission shut down the project in 2023 after the defendants failed to secure adequate funding for it.  They allege the defendants represented that the equitable ownership could be worth millions of dollars in the future and that they lost both the value of the ownership interest and the $150,100.

The plaintiffs cannot recover most of this alleged injury.  First, the potentially millions of dollars the ownership interest could have been worth is not a tangible financial loss. ECF No. 95

at 5-6 (citing *Oscar v. Univ. Students Co-op. Ass'n*, 965 F.2d 783, 785 (9th Cir. 1992) (en banc) *abrogated on other grounds by Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005)). Second, $150,000 of the $150,100 that the plaintiffs gave for the ownership interest were the sixth and seventh loans. ECF No. 103-5 at 22. Thus, that amount is the same injury as the defendants defaulting on the sixth and seventh loans, an injury outside the limitation period, so the plaintiffs cannot recover it under the separate accrual rule. That leaves the remaining $100 the plaintiffs paid in additional consideration for the ownership interest.

   d. <u>The plaintiffs have not sufficiently pleaded that the defendants committed a new predicate act to cause the plaintiffs' loss of their equitable ownership interest, so I dismiss the federal RICO claim against Messner Reeves, Welch, and the All Net Land Development defendants.</u>

When the arena project was shut down in 2023, the plaintiffs lost their equitable ownership interest for which they paid $100. This appears to be a new injury from the defaulted loans and the failure to pay out the performance bonds.

The plaintiffs argue that the defendants' failures to prove and secure adequate and legitimate funding for the project, which caused the Clark County Commission to shut down the project, were overt acts to restart the limitation period under the separate accrual rule. The All Net Land Development defendants argue that the FAC fails to allege a new predicate act causing a new injury within the limitation period. Messner Reeves and Welch similarly argue that these "failures" by the defendants to cause the project's shutdown are not sufficiently defined.[4]

---

[4] The All Net defendants did not make this argument regarding the injury derived from the equitable ownership interest, so I analyze only whether the plaintiffs pleaded this claim with particularity against the All Net Land Development defendants, Messner Reeves, and Welch.

The plaintiffs do not sufficiently allege that the defendants committed a new overt act within the limitation period to recover the $100. Under Rule 9(b), the plaintiffs must plead with particularity the who, what, when, and where of the fraud. But the FAC does not state any details regarding the defendants' failures to secure funding for the project. The FAC does allege that the Clark County Commission shut down the project in November 2023, but the overt act must be done by the defendants to restart the limitation period. ECF No. 95 at 6 (citing *Pace Indus., Inc. v. Three Pheonix Co.*, 813 F.2d 234, 237-38 (9th Cir. 1987) (holding that "an overt act by the defendant is required to restart the statute of limitations" under the separate accrual rule for an antitrust claim); *Grimmett*, 75 F.3d at 513 (applying *Pace*'s separate accrual rule to federal RICO claims)). Therefore, the plaintiffs cannot recover from Messner Reeves, Welch, or the All Net Land Development defendants the $100 in damages due to the lost ownership interest.

The plaintiffs cannot recover any of their alleged damages from Messner Reeves, Welch, or the All Net Land Development defendants under their federal RICO claim. Accordingly, I dismiss that claim against Messner Reeves LLP, Welch, Lowden, and All Net Land Development, LLC.

    2. *The Private Securities Litigation Reform Act bars the plaintiffs from recovering from the All Net defendants the $100 in damages due to the lost ownership interest.*

Regardless of whether the plaintiffs pleaded an injury within the limitation period against the All Net defendants due to their lost equitable ownership interest, the Private Securities Litigation Reform Act (PSLRA) bars a federal RICO claim for that injury. The All Net defendants argue that the PSLRA bars this claim because the claim sounds in securities fraud.

The PSLRA amended the federal RICO statute to state that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of [RICO]." 18 U.S.C. § 1964(c).  "Actions for fraud in the purchase or sale of securities are controlled by section 10b of the Securities Exchange Act of 1934." *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 871 (9th Cir. 2010).  Section 10(b) makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe . . . ." 15 U.S.C. § 78j(b).  "The requirement under section 10(b) that the fraud committed be 'in connection with' a securities transaction means 'that a certain relationship [must] be established between the fraud and the transaction that resulted in the injury complained of.'" *Rezner,* 630 F.3d at 871 (quoting 15 U.S.C. § 78j(b); *In re Fin. Corp. of Am. S'holder Litig.*, 796 F.2d 1126, 1129-30 (9th Cir. 1986)).  If the "fraud b[ears] an insufficient connection to the securities," such as when "the securities were merely a happenstance cog in the scheme," the PSLRA does not bar the federal RICO claim. *Id.* at 872.

Here, the equity interest agreement, which conveyed the ownership interest to Limson, is a security.  An investment contract is a kind of security. 15 U.S.C. § 78c(a)(10).  An investment contract under the Securities Exchange Act of 1934 is defined as:

> a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise.

*Sec. & Exch. Comm'n v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946).  The equity interest agreement meets this definition, which the plaintiffs acknowledge.  ECF No. 108 at 22.

The plaintiffs nonetheless argue their claim is not barred by the PSLRA because the equity sale was an incidental feature to the overall fraudulent scheme. But the plaintiffs' FAC and oppositions belie their contention. The FAC alleges that "[a]s part and parcel" to a loan, "and as further incentive to delay repayment" on several already defaulted loans, Limson "was given 1/10th of 1% overall equitable ownership" in the project, "which was presented as being worth potentially millions of dollars in the future." ECF No. 97 at 8. In their response to the All Net defendants' motion to dismiss, the plaintiffs say that the equity interest agreement "was used as inducement to procedure additional loans." ECF No. 108 at 16. The ownership interest therefore was more than just a "happenstance cog" in the defendants' alleged fraud. By inducing the plaintiffs to make additional loans and being part of the same transaction to issue those loans, the sale of the ownership interest is connected to the fraud. Accordingly, the PSLRA bars the plaintiffs from stating a federal RICO claim to recover the $100 they paid for the ownership interest.[5]

The plaintiffs cannot recover any of their damages from the All Net defendants under their federal RICO claim. Accordingly, I dismiss the claim against All Net, LLC; Robinson; Jacobs; and Dribble Dunk, LLC.

3. *The FAC fails to state a federal RICO claim against Messner Reeves and Welch for the plaintiffs' damages due to the defaulted loans and failure to pay on the bonds.*

Independent of their statute of limitations arguments, Messner Reeves and Welch also argue that they did not engage in any predicate acts constituting racketeering activity that caused

---

[5] I decide only that the PSLRA bars recovery of the $100 given in consideration for the ownership interest because the plaintiffs are time-barred from recovering their other damages under the federal RICO claim.

18

the plaintiffs' injuries.  The plaintiffs argue that Messner Reeves and Welch were generally involved in the scheme and that Welch was involved in financing the project.

The FAC does not sufficiently allege that Messner Reeves or Welch participated in any of the predicate acts that caused the plaintiffs' injuries related to the defaulted loans or the failure to pay on the bonds.  As I explained in my previous order, the plaintiffs do not allege that either Messner Reeves or Welch participated in soliciting the loans from the plaintiffs, issuing the bonds to the plaintiffs, or the initial investment scheme. ECF No. 95 at 7-8.  These events occurred in 2018 and 2019.  In 2020, the plaintiffs knew All Net defaulted on the loans and that AGS and Arellano failed to pay on the bonds.  The allegations against Welch and Messner Reeves mainly occurred afterward, in 2021 and 2022. ECF No. 97 at 14-15.  Additionally, a plaintiff seeking damages from a defendant who received funds derived from a pattern of racketeering activity "must allege facts tending to show that he or she was injured by the use or investment of racketeering income." *Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 437 (9th Cir. 1992).  Though the plaintiffs allege Welch received income derived from the racketeering activity, they have not alleged they were injured by Welch's use or investment of it.  Therefore, the FAC does not sufficiently allege that Messner Reeves or Welch engaged in racketeering activity that caused the plaintiffs damages related to the defaulted loans or bond premiums.  This is an independent reason to dismiss the federal RICO claim against them related to the plaintiffs' attempt to recover the $2,144,200 for the loans or the $119,492.50 for the performance bond premiums.

*4.  I decline to grant the plaintiffs leave to amend their federal RICO claim.*

The plaintiffs have twice failed to state a federal RICO claim against any defendant.  Here, I dismiss almost all of the claims for the same reasons I identified in my order dismissing

19

the plaintiffs' initial complaint.  The plaintiffs have not alleged that Messner Reeves and Welch participated in the predicate acts that caused the plaintiff's injuries related to the loans or the performance bonds.  The plaintiffs are time-barred from recovering their damages due to the defaulted loans and the failure to pay on the bonds.  This weighs against allowing the plaintiff to again amend the federal RICO claim against those defendants.

The plaintiffs alleged one new injury that may lie within the limitation period: the $100 they paid for the equitable ownership interest in the project.  But even if that injury is not barred by the statute of limitations, amending a federal RICO claim to recover the $100 would be futile because the PSLRA bars its recovery.  Therefore, I dismiss the federal civil RICO claims against all defendants with prejudice.

**B.  I dismiss the Nevada RICO claim against Messner Reeves, Welch, and the All Net Land Development defendants in full but decline to dismiss the Nevada RICO claim against the All Net defendants.**

The plaintiffs also brought a Nevada RICO claim against all defendants.  "Nevada's anti-racketeering statutes provide for a civil cause of action for injuries resulting from racketeering activities under which a plaintiff may recover treble damages, attorney's fees and litigation costs." *Hale v. Burkhardt*, 764 P.2d 866, 867 (Nev. 1988) (per curiam).  Under Nevada law, racketeering activity means "engaging in at least two crimes related to racketeering that have the same or similar pattern, intents, results, accomplices, victims or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated incidents . . . ." NRS § 207.390.  Crimes related to racketeering activity are statutorily defined by reference to specific crimes or a conspiracy to commit those crimes. *Id.* § 207.360.  Plaintiffs asserting a Nevada RICO claim must plausibly allege: (1) the plaintiffs' injury flows from the defendants'

violation of a predicate Nevada RICO act; (2) the injury was proximately caused by the defendants' violation of the predicate act; and (3) the plaintiffs did not participate in the commission of the predicate act. *Allum v. Valley Bank of Nev.*, 849 P.2d 297, 299 (Nev. 1993) (per curiam).  Rule 9(b)'s heightened pleading standard applies to claims under the Nevada RICO statutes. *T1 Payments LLC v. New U Life Corp.*, No. 2:19-cv-01816-APG-DJA, 2022 WL 195111, at *12 (D. Nev. Jan. 21, 2022).

    1.  *I deny the All Net defendants' motion to dismiss the Nevada RICO claim.*

    The All Net defendants argue the Nevada RICO claim against them should be dismissed because the plaintiffs knew of their injury in September 2019 when they sent the demand letter to Robinson stating the loans were in default, which is outside the limitation period.[6]  The plaintiffs argue that the limitation period started to run on January 31, 2020, the extended deadline set by the memorandum of understanding for All Net to pay the plaintiffs back on the loans, which is within the limitation period.

    The limitation period for a Nevada RICO claim is five years, which begins to run "after the violation occurs or after the injured person sustains the injury, whichever is later." NRS § 207.520.  "[T]he term 'injury' as used in NRS [§] 207.520 encompasses discovery of both an injury and the cause of that injury," which may be the defendant's alleged racketeering activity. *Siragusa v. Brown*, 971 P.2d 801, 812 (Nev. 1998).

    It is not apparent on the face of the complaint that the plaintiffs knew they were injured and that the injury was caused by the All Net defendants' racketeering activity within the limitation period.  Though the plaintiffs sent the demand letter outside that period, they entered

---

[6] Though I did not take judicial notice of the truth of whether All Net legally defaulted on the loan, I took notice of the fact that the plaintiffs stated that All Net defaulted.

into a new agreement with the defendants extending the deadline for payment until January 31, 2020, which is within the limitation period.  Until the defendants missed the January 31 deadline, it is not apparent that the plaintiffs knew that they were injured due to the defendants not paying back the loans.  The defendants argue this ruling will allow plaintiffs generally to subvert the limitation period by issuing a grace period to defaulted loans and then filing suit.  But here, the plaintiffs did not unilaterally extend the deadline.  Robinson, on behalf of himself and All Net, signed the January 2020 memorandum through which the plaintiffs agreed to extend deadline in exchange for "good and valuable consideration." ECF No. 103-1 at 180-83.  Additionally, if the cause of this injury was the defendants' racketeering activity, it is not apparent that the plaintiffs knew or should have known of the defendants' alleged fraud when they sent the demand letter. Therefore, dismissal of the Nevada RICO claim against the All Net defendants based on the defaulted loans is not appropriate at this time.

The All Net defendants further argue that the plaintiffs knew of their unpaid bond claims by October 2019, so recovery for that injury is also barred by the statute of limitations.  But the bonds were supposed to be paid out in the event All Net defaulted on the loans.  Again, the January 2020 memorandum shows it is not apparent that the plaintiffs knew they would not be paid back for the loans outside the limitation period.  Therefore, it is not apparent that the plaintiffs knew they would not be paid on the bonds until the January 2020 memorandum was breached.  Additionally, the bond issuers, AGS and Arellano, were parties to the January 2020 memorandum, further indicating to the plaintiffs that they would be paid. *Id.*  Dismissing the Nevada RICO claim seeking damages for the bond premiums based on the statute of limitations is also not appropriate at this time.

Finally, it is not apparent on the face of the complaint that the plaintiffs suffered the loss of their equitable ownership interest outside the limitation period. The plaintiffs argue the loss occurred because the defendants failed to secure funding for the arena project, which caused the Clark County Commission to shut down the project in November 2023. Thus, I decline to dismiss the plaintiffs' Nevada RICO claim against the All Net defendants to recover $100 paid in consideration for the ownership interest, trebled to $300.

The All Net defendants make no other argument why the Nevada RICO claim against them should be dismissed. I therefore decline to dismiss these claims.

2. *I grant Messner Reeves and Welch's motion to dismiss the Nevada RICO claim but grant leave to amend in part.*

Messner Reeves and Welch argue that the plaintiffs failed to allege that they engaged in any crimes related to racketeering that caused the plaintiffs' injuries. The plaintiffs respond that Messner Reeves and Welch were generally involved in "various predicate acts that caused injury" to the plaintiffs "through unpaid loans, fraudulent bonds, and the [equity investment agreement]." ECF No. 106 at 22. More specifically, the plaintiffs allege Messner Reeves and Welch profited from the scheme, were involved in financing the scheme, and created fraudulent financial institutions.

The plaintiffs' Nevada RICO claim to recover on the defaulted loans and bond premiums against Messner Reeves and Welch fails to state a claim for the same reason the federal RICO claim against them did. The plaintiffs have not alleged that Messner Reeves or Welch were involved in inducing the loans, issuing the bonds, or failing to pay out either when they came due in 2019 and 2020. Therefore, the plaintiffs have again failed to allege that Messner Reeves and

23

Welch committed a predicate act causing those injuries.  Accordingly, I dismiss the Nevada RICO claim against them for those damages with prejudice.

That leaves only the plaintiffs' loss of Limson's equitable ownership interest in the project for which they paid $100.  But the plaintiffs have not pleaded with particularity what Messner Reeves and Welch did to cause Limson to lose his ownership interest.  Alleging that Messner Reeves and Welch were involved in the scheme generally is insufficient.  The FAC lists several examples of racketeering activity under NRS § 207.400 that the "defendants" generally engaged in. ECF No. 97 at 26-27 (emphasis omitted).  But in "a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme." *Swartz*, 476 F.3d at 764-65 (simplified).  So those allegations are insufficient as well.

And the plaintiffs' allegations of specific acts committed by Messner Reeves and Welch do not sufficiently allege that either defendant committed a crime related to racketeering that caused their injury.  The plaintiffs did not specify which crimes listed in NRS § 207.360 Messner Reeves and Welch committed by receiving funds from the scheme, being involved in the scheme's financing, or creating a fraudulent business institution.  The plaintiffs also do not allege with particularity how those actions caused them to lose the ownership interest.  Therefore, I dismiss the plaintiffs' Nevada RICO claim against Messner Reeves and Welch to recover on their injury for the lost equitable ownership interest, totaling $100 trebled.  But because it is not clear that amendment would be futile, I grant the plaintiffs leave to amend the Nevada RICO claim against these defendants for this injury only.

/ / / /

/ / / /

24

*3. I dismiss the Nevada RICO claim against the All Net Land Development defendants but grant leave to amend in part.*

The All Net Land Development defendants also argue that the plaintiffs' Nevada RICO claim fails to allege with sufficient particularity that they committed any crimes related to racketeering. The plaintiffs argue that the All Net Land Development defendants were involved in the fraudulent scheme that caused the plaintiffs' injuries through unpaid loans, fraudulent bonds, and the equitable interest agreement. The plaintiffs also list various statements made by and documents prepared by Lowden to show his involvement in the scheme. ECF No. 104 at 18-19. And the plaintiffs describe racketeering activity committed by the "defendants" in the FAC. ECF No. 97 at 24.

Again, general allegations that all defendants are involved in the fraudulent scheme and that all defendants violated portions of NRS § 207.400 is not sufficiently particular under Rule 9(b). *See Swartz*, 476 F.3d at 764-65. The plaintiffs must allege each defendants' specific role in the fraud. Also, the plaintiffs did not identify which provisions of NRS § 207.360 these actions violated.

The plaintiffs' specific allegations against the All Net Land Development defendants also fail to sufficiently allege that these defendants committed crimes related to racketeering that caused the plaintiffs' injuries. The plaintiffs again do not list the specific crimes under NRS § 207.360 that these defendants committed by these actions. And each specific allegation fails Rule 9(b)'s particularity requirement in different ways. The plaintiffs do not allege when many of Lowden's statements were made or when the plaintiffs learned that Lowden prepared and signed the land use permits and leases, thus failing the particularity requirement of Rule 9(b).

25

And without that information, the plaintiffs failed to sufficiently allege any of Lowden's actions caused plaintiffs' injuries because it is unclear if his acts pre- or post-date the plaintiffs' injuries.

The plaintiffs next argue that "Lowden and others" stated publicly at Clark County Board of Commissioners meetings in 2022 and 2023 that funding for the project was imminent. ECF No. 104 at 18 (citing ECF Nos. 105-3; 105-4). This argument suffers several flaws. The plaintiffs do not explain who these "others" are and how their comments are attributable to the All Net Land Defendants. They do not cite to specific parts of the record where those comments were made. *See Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971 (9th Cir. 1994) ("[J]udges are not like pigs, hunting for truffles in briefs." (quotation omitted)). On my review of the meeting minutes, Lowden did not make those comments at those meetings. Even if he did, that would have occurred after the plaintiffs filed suit in the Central District of California seeking damages for the defaulted loans and the bonds, so these comments could not have caused those injuries. And the plaintiffs do not explain how these alleged comments caused their injury on the performance bonds or the loss of their equitable ownership interest in the project.

The allegation that Lowden discussed creative financing options for the project, like a REMIC, is not alleged in the FAC. I cannot consider new allegations made outside a complaint.

Finally, the plaintiffs allege that Lowden drafted the January 2020 memorandum of understanding extending the payment deadline for the defaulted bonds. Even if this is a crime relating to racketeering under NRS § 207.360, the plaintiffs must allege that the defendants "engag[ed] in at least two crimes related to racketeering." NRS § 207.390. This singular action by Lowden cannot state a Nevada RICO claim.

Therefore, I dismiss the Nevada RICO claim against the All Net Land Development defendants.[7] It is not clear that the plaintiffs could not allege a set of facts that these defendants committed a Nevada RICO violation causing the plaintiffs' injuries. Accordingly, I grant them leave to amend their Nevada RICO claim against All Net Land Development and Lowden.

## IV.    ORDER FOR THE PLAINTIFFS TO SHOW CAUSE

At this stage in the case, the only claim remaining is a Nevada state law RICO claim against Robinson, All Net, Dribble Dunk, and Jacobs. The plaintiffs allege that I have jurisdiction over this claim because there is complete diversity between the parties. ECF No. 97 at 4. However, the plaintiffs have not adequately identified the citizenship of all the parties, so I cannot determine if complete diversity exists. As to defendant All Net, LLC, the plaintiffs state that it is "a Nevada Limited Liability Company with its principal place of business in Las Vegas, Nevada." *Id.* at 2. And the plaintiffs state that defendant Dribble Dunk, LLC is "a Nevada Limited Liability Company with its principal place of business in Las Vegas, Nevada." *Id.* at 3. But a limited liability company (LLC) is "a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). These defendants' citizenships is thus determined by all their members. It is unclear whether these defendants have members or owners whose citizenship would destroy complete diversity. Accordingly, I order the plaintiffs to show cause why I should not dismiss this claim for lack of subject matter jurisdiction.

I have also granted the plaintiffs leave to amend to assert a Nevada RICO claim against All Net Land Development, LLC and Messner Reeves LLP. The plaintiffs' allegations in the

---

[7] Because I am dismissing all claims against the All Net Land Development defendants, I decline to address their argument for abstention under *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976).

FAC against All Net Land Development and Messner Reeves regarding their citizenships are similarly insufficient because the plaintiffs do not identify the citizenship of these defendants' members or partners. *See id.* (stating that a limited liability partnership is "a citizen of all the states of which its partners are citizens"); ECF No. 97 at 2-3.   If the plaintiffs choose to assert a Nevada RICO claim against these defendants, they must also show cause why doing so does not destroy complete diversity.

**V.     CONCLUSION**

I THEREFORE ORDER that defendants Messner Reeves LLP and Torben Welch's motion to dismiss **(ECF No. 100) is GRANTED.**  I dismiss the federal civil RICO claim against them with prejudice.

I FURTHER ORDER that defendants Jackie Robinson, All Net, LLC, Dribble Dunk, LLC, and Loring Jacob's motion to dismiss **(ECF No. 101) is GRANTED in part.**  I dismiss the federal civil RICO claim against them with prejudice.  But I decline to dismiss the Nevada RICO claim against them.

I FURTHER ORDER that defendants All Net Land Development, LLC and David Lowden's motion to dismiss **(ECF No. 102) is GRANTED in part.**  I dismiss the federal civil RICO claim against them with prejudice.

I FURTHER ORDER that the plaintiffs may file an amended complaint by August 31, 2026.  The plaintiffs may reassert a Nevada RICO claim against Robinson, All Net, Dribble Dunk, and Jacobs but may not allege new claims or damages.  The plaintiffs may assert a Nevada RICO claim against All Net Land Development and Lowden, if facts exist to do so, but may not allege damages different from those alleged in the First Amended Complaint.  The plaintiffs may assert a Nevada RICO claim against Messner Reeves and Welch to recover the

$100, trebled, for the lost equitable ownership interest if facts exist to do so.  If the plaintiffs assert a Nevada RICO claim against All Net Land Development, LLC or Messner Reeves LLP, they must properly allege diversity jurisdiction.  The plaintiffs may not add any new claims or defendants.

I FURTHER ORDER that defendants All Net Land Development and Lowden's motion for judicial notice **(ECF No. 103) is GRANTED.**

I FURTHER ORDER that plaintiffs' motions for judicial notice **(ECF Nos. 105, 107, 109) are GRANTED in part** as set forth above**.**

I FURTHER ORDER the plaintiffs to show cause why the Nevada RICO claims against Robinson; All Net, LLC; Dribble Dunk, LLC; and Jacobs should not be dismissed for lack of subject matter jurisdiction by August 14, 2026.  If the plaintiffs add All Net Land Development, LLC or Messner Reeves LLP as defendants in the amended complaint, the plaintiffs must also show cause why doing so does not destroy complete diversity.  Failure to respond to this order will result in this action being dismissed without prejudice for lack of subject matter jurisdiction. The defendants may file a response by August 28, 2026.

DATED this 30th day of July, 2026.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE

29